UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN A. ROGOWSKYJ, JR. | ) | |
| 3449 Finlaw Avenue | ) | |
| Pennsauken, NJ 08109, | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | |
| v. | ) | C.A. No. |
| | ) | |
| General MICHAEL W. HAGEE | ) | |
| Commandant of the Marine Corps | ) | |
| Headquarters, U.S. Marine Corps | ) | |
| 3000 Marine Corps Pentagon | ) | |
| Room 4E468 | ) | |
| Washington, DC 20350-3000, | ) | |
| | ) | |
| *Respondent.* | ) | |

PETITION FOR A WRIT OF HABEAS CORPUS

*Introduction*

1.  John A. Rogowskyj, Jr. ("Petitioner") seeks release from active duty in the

U.S. Marine Corps on the ground that he is a conscientious objector to participation

in war in any form (1-0 status).

*Jurisdiction and Venue*

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and

2241.  The Court has jurisdiction to issue a writ of habeas corpus and to grant relief

as law and justice require in that Petitioner is "in custody under or by color of the

authority of the United States" because he is on active duty in the Marine Corps

and is currently stationed outside of the United States.

*Parties*

3. Petitioner is a resident of Pennsauken, New Jersey. He is a lance corporal in the 4th Light Armored Reconnaissance Battalion, 4th Marine Division, U.S. Marine Corps Reserve. He was called to active duty and is currently stationed in Iraq.

4. Respondent is the Commandant of the Marine Corps. He is head of the Marine Corps, has custody of Petitioner, and is ultimately responsible for the denial of Petitioner's request for discharge as a conscientious objector.

*Facts*

5. In 2002, Petitioner enlisted in the Marine Corps Reserve for a term of eight years.

6. Petitioner was ordered to active duty in 2003.

7. In February 2006, Petitioner submitted a request for discharge from the Marine Corps on the ground of conscientious objection to participation in war in any form (1-0 status) in accordance with Marine Corps Order ("MCO") 1306.16E.

8. His request contained a multi-page question-and-answer form with detailed information about his beliefs as a conscientious objector, as required by MCO 1306.16E. Ex. 1. He also submitted a short personal statement and supporting statements from his wife, his father, and a friend. Exs. 2-5. These documents show his deeply held convictions, confirm the beginning of his spiritual beliefs, and describe the evolution to his current position as a conscientious objector.

2

9. On March 20, 2006, Captain Daniel Thompson, a Protestant Chaplain in the U.S. Air Force, interviewed Petitioner as part of the processing of his conscientious objector claim as required by 32 C.F.R. pt. 75 and MCO 1306.16E. Ex. 6.

10. On March 22, 2006, Petitioner was evaluated by a psychiatrist at the National Naval Medical Center, Bethesda, Maryland, as part of the processing of his conscientious objector claim as required by 32 C.F.R. pt. 75 and MCO 1306.16E. Ex. 7.

11. On or about March 22, 2006, the Marine Corps served Petitioner with mobilization orders. Ex. 8. The orders required Petitioner to mobilize for active duty no later than May 30, 2006. *Id.*

12. On April 10, 2006, a hearing was conducted pursuant to MCO 1306.16E before a Hearing Officer from the 4th Light Armored Reconnaissance Battalion at the Marine Corps Reserve Training Center, Fort Detrick, Maryland. Petitioner testified under oath and answered questions from the Hearing Officer. Ex. 9.

13. Following the three-hour hearing, and after reviewing all of the evidence, the Hearing Officer, a Captain of Marines, found Petitioner to be a conscientious objector. *Id.* The hearing officer "spent a considerable amount of time probing Lance Corporal Rogowskyj's personal, political, and religious beliefs." *Id.* at ¶ 8. He found that Petitioner's "testimony overall seemed sincere, thorough, and well-formulated...." *Id.* He further found that Petitioner's testimony "merely begins to

3

scratch the surface as to the depth this young Marine provided [ ] about his religious doctrine and beliefs, and how it has affected him to seek separation from the military." *Id.* He recommended that Petitioner "be processed immediately for administrative separation from the U.S. Marine Corps Reserve since his perceived personal and spiritual beliefs would prevent him from effectively discharging his duties...." *Id.* at ¶ 9.

14.    On June 16, 2006, Major M. A. Stolzenburg, Commanding Officer, Company B, 4th Light Armored Reconnaissance Battalion, concurred "with the investigation [sic] finding that Lance Corporal Rogowskyj is a conscientious objector by reason of the development of his spiritual beliefs." Ex. 10. Major Stolzenburg felt, however, that Petitioner was still deployable and stated it was his intent that he serve in a non-combat billet. *Id.* His rationale was that "Lance Corporal Rogowskyj has made a commitment by signing an enlistment contract that can be satisfied by deployment with [Dam Security Unit]-3." *Id.*

15.    Dam Security Unit ("DSU") operations are incompatible with conscientious objection. The DSU patrols dam site hydroelectric plants along the Tigris and Euphrates rivers and Lake Qadisiyah in Iraq. Ex. 11. The forty-foot-long patrol boats "mount two M240G machine guns forward and either a .50 caliber machine gun at the rear, or a Mark 19 grenade launcher." Ex. 12. They are also equipped to mount an electric powered machine gun. *Id.* Any members of this unit could be required to pick up a weapon to engage hostile forces.

4

16. On June 28, 2006, Lieutenant Colonel W. S. Nagle, Commanding Officer, 4th Light Armored Reconnaissance Battalion, provided an endorsement to the Hearing Officer's findings, stating that he found Petitioner's request "unconvincing." Ex. 13 at ¶ 3. According to Colonel Nagle, "[h]is statements are not convincing that his activity was comparable in rigor and dedication to the process by which traditional religious convictions are formulated...." *Id.* at ¶ 3.b. Colonel Nagle's conclusion was diametrically opposite to that of the Hearing Officer who extensively examined Petitioner in person and was in the best position to make a credibility assessment.

17. On August 21, 2006, Major General D. V. Odell, Jr., Commanding General, 4th Marine Division, recommended denial of Petitioner's request because "[h]e is confused theologically and does not reflect any officially recognized faith group." Ex. 14. His recommendation for denial would impermissibly require Petitioner's claim to reflect the views of some officially recognized faith group.

18. On August 30, 2006, Petitioner submitted a rebuttal to the chain of command's endorsements. Ex. 15. It (a) set out the role religious beliefs play in his daily life; (b) elaborated and expanded on his initial application; and (c) squarely contradicts the contention that his beliefs are not deeply held or sincere.

19. On September 29, 2006, a Conscientious Objector Status Screening Board convened at Headquarters, U.S. Marine Corps to review Petitioner's request. Ex. 16. The Board "unanimously decided that [Petitioner] failed to provide clear and convincing evidence that his claims of objection to war in any form were sincere

and deeply held and that they were the primary controlling force in his life." *Id.*
The board further "believed that the timing of [Petitioner's] request, coming after
notification of his unit's combat mobilization, was simply a means to avoid a combat
deployment to Iraq." *Id.*

20.  On October 6, 2006, Respondent disapproved Petitioner's request. *Id.*

21.  On November 2, 2006, Petitioner deployed to Iraq, where he currently
serves.

### Cause of Action

22.  Petitioner realleges and incorporates by reference ¶¶ 1-21 above as if
fully stated herein.

23.  A case of actual controversy within the jurisdiction of this Court exists as
to whether Petitioner qualifies as a conscientious objector.

24.  Petitioner is a conscientious objector to participation in war in any form
(1-0 status) and has a right to be released from military custody.  He has made out a
*prima facie* case for discharge from the Marine Corps, and the military has no basis
in fact upon which to deny his request.  To the contrary, the Hearing Officer found
Petitioner sincere in his beliefs; that his beliefs are based upon religious training
and belief, and that he objects to participation in war in any form; and
recommended his discharge from the Marine Corps (1-0 status).  The reasons given
for denial of the request are legally insufficient and the denial is therefore contrary
to law, arbitrary and capricious, an abuse of discretion, and unsupported by
substantial evidence on the whole record.

*Prayer*

WHEREFORE, Petitioner prays that the Court—

a.  issue a writ of habeas corpus, requiring Respondent to show cause, if any there be, for Petitioner's continued custody in the Marine Corps; and

b.  grant such other and further relief as may in the circumstances be just and proper.

Respectfully submitted,

*Eugene R. Fidell*

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, D.C. 20036
(202) 466-8960

November 13, 2006

## Verification

State of North Carolina    )
                          )   *ss.*:

County of Onslow           )

I declare under penalty of perjury that the facts stated in the foregoing Petition for Writ of Habeas Corpus are true and correct.

Executed on _October 30_, 2006.

John A. Rogowskyj, Jr.

1

# Exhibit 1

MCO 1306.16E
21 Nov 1986

<u>REQUIRED INFORMATION TO BE SUPPLIED BY APPLICANTS
FOR DISCHARGE OR NONCOMBATANT SERVICE</u>

Each person seeking release from active service from the
Marine Corps, or assignment to noncombatant duties, as a
conscientious objector, will provide the following information
in the format as shown below. The individual may submit such
other information as desired.

<u>A. General Information Concerning Applicant</u>
1. Full name
   1. John Anthony Rogowskyj Jr.
2. Social security number
   2.
3. Selective service number (if applicable)
   3. N/A
4. Service address
   4. 4th LAR, Co. B Fort Detrick, MD
5. Permanent home address
   5. 3449 Finlaw Ave, Pennsauken, NJ 08109
6. Name and address of each school and college
attended (after age 16) together with the dates of
attendance and the type of school (public, church,
military, commercial, etc.).
   6. UC Irvine, Irvine CA 2001-2003 - Public
      Pennsauken High School, Pennsauken, NJ 1997-2001 -- Public
7. A chronological list of all occupations, positions,
jobs, or types of work, other than as a student
in school or college (after age 16), whether for
monetary compensation or not. Include the type of
work, name of employer, address of employer, and
the from/to date for each position or job held.
   7. NJ State Aquarium, 1 River Rd. Camden, NJ 08110 08.1999 – 07.2000
      Toys R Us, El Camino Real Tustin, CA 92780 04.2002 - 01.2003
      Staffmark, 13822 Red Hill Ave Tustin, CA 92780 08.2004 - 06.2005
      Cardinal Health, Church St Moorestown, NJ 08057 08.2005 - present
8. All former addresses (after age 16) and dates of
residence at those addresses.
   8. 7449 Grant Ave. Pennsauken, NJ 08109 (October 1993 - June 2001)
      13841 Tustin E. Dr. Tustin, CA 92780 (December 2001 - April 2003)
      932 Veneto. Irvine, CA 92614 (January 2004 - June 2005)
      3001 Rte. 130 N. 48F Delran, NJ 08075 (July 2005 - September 2005)
      828 Red Lion Rd C16 Philadelphia, PA 19115 (October 2005, November 2005)
      3449 Finlaw Ave. Pennsauken, NJ 08109 (November 2005 - present)
9. Parent's names and address. Indicate whether they
are living or deceased.
   9. Father, living, 828 Red Lion Rd. C16, Philadephia, PA 19115
      Mother, living, 100 Fox Meadow Drive Maple Shade, NJ 08052
10. The religious denomination or sect of both
parents.
   10. Father- Catholic, Mother- Protestant

**Enclosure (2)**

```
11. Was application made to the Selective Service
System (local board) for classification as
conscientious objector prior to entry into the
Marine Corps? To which local board? What
decision was made by the board, if known? If
application was not made, explain why not.
```
    11. No prior application, belief in nonviolence materialised after entry into service
```
12. When the applicant has served less than 180 days
in the military service, a statement by the
applicant as to whether the applicant is willing
to perform work under the Selective Service System
civilian work program for conscientious objector.
Also a statement of the applicant as to whether
the applicant consents to the issuance of an
order for such work by the applicant's local
Selective Service Board.
```
    12. N/A


B. Training and Belief

*1. A description of the nature of the belief which requires the applicant to seek
separation from the Marine Corps or assignment to noncombatant trainingand duty for
reasons of conscience.*

I believe that God has given man Free Will. By making choices, we affect the world we
inhabit, and the mechanism that determines the impact of each decision is the will of
God. This is the way God expresses its will. Furthermore, I believe that our eternal
souls are reincarnated, in various forms of life and energy cycling throughout the
universe, born anew any time the matter inhabited by the energy of our former self is
implicit to the Universe. God gave Man Free Will because we are unique, and we
should use it to influence the world we live in, but if the means to our goals are violent or
malicious, we will in turn be faced with a future frought with violence and malice. With
the compelling moral reprecussions of violence against my fellow man looming, I see no
place for myself in further assisting any operation, the goal or means of which include
killing or harming another human being. By surrendering my will to the military, I realize
that I have wilfully propogated violence.


*2. An explanation as to how the applicant's beliefs changed or developed, to include an
explanation as to what factors (how, when, and from whom or from what source training
received and belief acquired) caused the change in or development of conscientious
objection beliefs.*

Since a young age when I rejected Catholocism and indeed all of Christianity, I have still
felt a strong need to find for myself a spiritual view that makes sense and will contribute
to better daily living. With this quest for understanding came the study of philosophy and
world religions, but mostly science. Frequently, my path the enlightenment has been
forged through conversations with fellow truth-seekers, until this led to a reprehensible
discovery, that I in my discussions with others, was causing them to believe in no
spiritual world. My only goal had been to allow them a chance to think for themselves

and decide if the religion into which tthey had been born was really what they believed, or something they followed blindly out of habit. Since then, I have not told those who were not already aware of it exactly what I believed, and in conversation only suggested at most that they should consider what they really believed and think fore themselves. I happen to be a vegetarian, a point worth noting here only insofar as it led me to read Dominion, in which I first saw the phrase of the theologian Jonah Goldberg "human compassion toward animals is an obligation of humans, not an entitlement for animals ... [W]e have a moral duty to respect the animal world as God's handiwork, treating animals with 'the mercy of our Maker'..." looking back, I see this as a fulcrum for the shift in my views since having pondered this point. The reason we should not kill is not because the physical victim deserves to live, intrinsically, but because certainly we as people with free will have the right to a life in which we are not killers. So was instilled in me the concept that I refer to here as "spiritual accountability," the belief that one's actions today affect their future actions and the actions of the world around them all through God's will, and that acting with anger or violence, will only perpetuate it and damn us to a regretable fate.

*3. An explanation as to when these beliefs became incompatible with military service, and why.*

When I realized in Fall of 2005 the concept of spiritual accountabilty, it opened new doors for my exploration of the spiritual world, and at last I was able to see that it does not matter how much violence threatens us we should not respond in kind, because by contributing to the total violence of the world we only make it a more violent place; maybe not in the short term, but in the greater story of the World. We will only see exponential increases in violence unless we stand now to stop it. At first these beliefs seemed like something that would not hamper performing military duties, and that taking a stand could wait, but with each passing month, a deeper feeling of guilt grew in my stomach as I realized I had to once again wear the marks of men, aligned on the notion that violence will make the world a better place as long as it is just, but it cannot be. I see now that I must separate from the military with all due haste, or suffer without the forgiveness of grace, for defying the truth that I see plainly before me, that violence as a means or end cannot be tolerated. To squander the free will with which I have been endowed to pursue anything less than the total cessation of violence would nbe a travesty.

*4. An explanation as to the circumstances, if any, under which the applicant believes in the use of force, and to what extent, under any foreseeable circumstances.*

Violence should never be considered a solution to a problem, however as we are all created with tendencies that cannot always be controlled, the greatest of which being the will to survive, I find it acceptable for an individual confronted with his own mortal demise to defend himself with lethal force, so long as his sole intent was self-preservation, or the preservation of his or her progeny, and only under the condition that the violent response was not premeditated, but reflexively fulfilled by the instincts with which he was born.

*5. An explanation as to how the applicant's daily life style has changed as a result of the applicant's beliefs, and what future actions are planned to continue to support these beliefs.*

I do not belong to an organized religion, greatly because of my unwavering belief that

prosteletizing one's faith is offensive to the higher being who endowed us with free will, but many of the edicts that certain mainstream religions proclaim as fact, I also believe deeply in. I believe that to tell another about what you have learned about the spiritual world will be catastrophic, because a second hand account will always lose something in translation. One cannot be told the nature of the spiritual world, only by experience and by sharing experiences can one safely know the true spiritual world. It is on this that I meditate daily in solitude. Seldom do I find one to share experiences with, who has a mind open enough to recieve them as they are intended, so to outward appearances, my rigorous commitment goes largely unnoticed by others. However, I do make every effort, as I think everyone should, to practice more than preach and be an example of the actions that will bring the world salvation. I try to help those in need where possible, and show respect for all creation. Most of these actions are local though, and center on changing the world by first changing myself. On a less pleasant note, I find of late my meditations reveal my guilt more than ever, showing me the great harm I am visiting upon myself through military participation. Thus, certainly among the most noticable changes in my daily life will be my absence from the marine corps, and though I will not promote any specific belief for another, I will demonstrate the ideals of pacifism in the hope that others will follow.

*6. An explanation as to what in the applicant's opinion most conspicuously demonstrates the consistency and depth of beliefs which gave rise to the claim.*

Since the crystalization of my belief in spiritual accountability, I have not only looked inward to remove violence and anger from my heart, but have made an effort to improve the world around me. I have been volunteering with the University City Hospital Outreach Program, an outreach for the homeless offering food and shelter. Through discussion, I have also persuaded my wife to join us on more than one occassion.

In the near future, thanks to a scholarship opportunity, I intend to return to college. At present, I am investigating various schools, but do not intend to continue my previous course of study in the biological sciences, but rather may divert my education to a study of humanities, an area in which I have some background from the University of California.

Recently, I have found an opportunity to lobby Congress for an expansion of the rights of military personnel to object, and am applying to become a lobbyist in the movement. I intend to support the Center on Conscience and War in their efforts, and to donate any funds I receive from the military from this day forth to their cause.

Lastly, I would mention that the act of filing this application itself is an affirmation of my conviction. I know the road ahead will be a challenge, and I have demonstrated in the past my commitment to the Marines, but the overwhelming sense of guilt swells in me deeply enough to cause me to request separation.

C. Participation in organizations:  I have never belonged to another military organization and currently claim no membership in a religious orgainization or sect.

Enclosure (2)

D. References: Attached

**Enclosure 3**

SUMMARY SHEET FOR REVIEW OF CONSCIENTIOUS OBJECTOR APPLICATION
<u>2006 February 24</u>      <u>4TH LAR Bn Co. B</u>      Date <u>2006 02 24</u>
1. Date of Application        2. Unit
<u>LCPCL John A Rogowskyj Jr.(E3)</u>      :
3. Name and Grade              4. SSN/MOS        5. Date of Birth

6. Marital Status 7. Selective Service System No.
M __X__ S____                    __N/A__

8. Applicant Requests 1-0 Discharge  <u>Concientious Objector</u>

9. Willing to perform alternate civilian service
Yes_____ No_____X_____

__Pharmaceutical Printing Apprentice  2003 04 07__
10. Civilian Occupation 11. PEBD 12. Entered Service on

<u>2003 04 07</u> By enl.
_____ Induction
_____ Other
<u>6</u> Years <u>2</u>

<u>2003 04 07</u>              <u>33</u>                  <u>2009 04 06</u>
13. Date entered        14. Months of         15. EAS
    active duty             active duty
<u>National Defense Medal</u>
16. Decorations, Commendations

<u>Religious Humanist</u>
17. Applicant's Religion

WITNESS SIGNATURE                    APPLICANT'S SIGNATURE

<u>2006 02 22</u>
DATE

Enclosure (3)

**Enclosure 4**

PRIVACY ACT STATEMENT

DATA REQUIRED BY THE PRIVACY ACT OF 1974
(5 U.S.C. Section 552a)

PART A - GENERAL

1. Requiring Document: MCO 1306.16E
2. HQMC Sponsor Code: MPP-39
3. Descriptive Title: Conscientious Objector Information

PART B - INFORMATION TO BE FURNISHED TO INDIVIDUAL

1. Authority:
50 U.S.C. Appx section 456(j)
Executive Order 9397, 22Nov43 (Social Security Number)

2. Principal Purpose: Used by officials within the Marine Corps
to determine whether conscientious objector status is
appropriate.

3. Routine Use: The information collected will be used by
appropriate authority to grant or deny the requested
conscientious objector status.

4. Mandatory or Voluntary Disclosure and Affect on Individual
Not Providing Information:
Disclosure of information is voluntary. If information is
not furnished, applicant may not receive the sought for
status.

PART C - STATEMENT OF UNDERSTANDING

I have read and understand this statement. I understand
that I will have the opportunity to review the completed
investigation before it is submitted to the convening
authority.

2006 04 10
Date                    Signature                         SSN

Enclosure (4)

**Enclosure 5**

COUNSELING CONCERNING
VETERANS ADMINISTRATION BENEFITS
I have been advised of the provisions of 38 U.S.C. Section
3103 concerning possible nonentitlement to benefits
administered by the Veterans Administration due to discharge
from the military service as a conscientious objector under
certain conditions. I understand that a discharge as a
conscientious objector, who refuses to perform military duty or
otherwise to comply with lawful orders of competent military
authority, shall bar all rights, based upon the period of
service from which discharged, under any laws administered by
the Veterans Administration except my legal entitlement (if any)
to any war risk Government (converted) or National Service Life
Insurance. The only exception is in cases in which it is
established, to the satisfaction of the Veterans Administration,
that I was insane.

_____
WITNESS' SIGNATURE

_____
APPLICANT' S SIGNATURE

# Exhibit 2

Commanding Officer
4th LAR Bn. Co. B
United States Marine Corps


    I have become a conscientious objector to participation in war in any form. I wish
to be discharged from the military. I understand that until a final decision is made I am to
be employed in duties providing minimum conflict with my beliefs. At this time I make
no request for transfer to alternate duty except to be exempt from any exercise concerning
the handling of weapons or training in their use. I also offer at this time to make
interview arrangements with a psychiatrist and chaplain myself to expedite the process.


                    LCPL John A Rogowskyj, Jr.
                 Social security number

Enclosure (2)

# Exhibit 3

I am Regina Melinda Büttner-Rogowskyj. John Rogowskyj is my husband. I know him since March 1999. We are married since the 2nd October 2004.

I believe, that he is sincere in his claim as a conscientious objector. Since July 2005 he has been talking to me about moral accountability. He seems really not ok with the violence that his support of military action is creating.

He is more reflective lately about the worlds situation and ethics. He is volunteering in a homeless-feeding program in Philadelphia after his work and on Saturdays. He is looking on the internet for more volunteering programs that he can join, to help other people and animals.

My husband believes that continuing to support military actions is sinful. He can´t sleep in the night because he is so uncomfortable about the whole situation he is in. I believe, the only way that my husband is feeling better is if he could leave the military.

He always discusses with me things like "is there a god?", "is there a spiritual afterwold?" etc. I find notes that he was writing in his break at work, concerning these things. He feels really regretful that he is serving for the military. He wishes that he could make the decision of joining the military again, but this time not join it. In the last months he has changed to this belief and since September / October 2005 he talks to his family and friends about it too.


19th February 2006

*Regina B.-Rogowskyj*

Regina B-Rogowskyj


Enclosure (10)

# Exhibit 4

I, John Rogowskyj Sr, father of John Rogowskyj Jr, make the following statements: that our relationship has always been amicable, and that my son confides in me frequently. After less than one year attending a catholic school, into which his mother and I enrolled him, he told me that he did not share the views they were teaching, and asked to return to public school. Since this time, we have frequently discussed our respective views of the world around us and its greater meaning. Until recently his beliefs have not conflicted greatly with military service, but of late, he seems regretful of it. As I have come to understand it, he has developed a sense of empathy with the world around him, and sees his actions toward others as direct reflections of himself. Specifically it now appears that he sees violence as disgraceful, and has taken it upon himself as something of a mission to utilize his free will to reduce violence. What he once saw as protecting innocent people through military service, he now views as a false shortcut, and that ultimately, violence is self perpetuating.

Since he first began to take this view of nonviolence, he has taken a more active roll in influencing the community. He has been volunteering to help the homeless, which I admire. I know he has gotten his wife to come once or twice and he has asked me a number of times to join them, but I have not yet found the time. I truly believe that this is a sign of his commitment to the new view he has taken of the spiritual world around him, and that he would do anything to reduce the violence that he now feels so responsible for. As he has before, my son will bravely face whatever others may say or do and proclaim his views as different and in this instance incompatible with those around him.

John Rogowskyj

*John Rogowskyj*

2-21-06

Enclosure (9)

# Exhibit 5

2/21/2006

    My Name is Joshua D Wood. I have known John Rogowskyj since our first year at Pennsauken High School, back in September of 1997. We graduated in June of 2001, and we have still kept in touch these last 5 years. He seems to be one of those friends that you carry forever.

    Throughout our high school days, John and I occasionally talked about how we each see the world around us and how are actions impact others. I was very aware that he did not folllow any traditional religion, but we always seemed to discuss matters that do overlap religious notions, like the questions surrounding creation. When we graduated, John went off to college in California, while I stayed in New Jersey and attended Rutgers University.

    During one of John's breaks from school in 2003, he came back to New Jersey to visit family and friends. When I met up with him then, I was shocked to find out that he had joined the Marines. We went to a friend's house, one who had also been a part of our discussions, and he was just as shocked as I was about John joining the military.

    Last summer, John came back to live in New Jersey. I was on my summer break, and was again able to spend time with him. By the start of Fall semester, John told me that he was not sure anymore, about his decision of joining the military. He changed in his beliefs about war and violence. He disliked the whole notion of fighting. I did not question him at the time, but I knew something was coming up. When John called me and let me know of a final and difficult decision he was committing to, I accepted his offer to aid him in this. I believe that he is sincere in his decision to lead the pacifist life his moral views have been pointing toward.

    In the near 9 years that I have known John, I have never known him to anger easily, instigate, or even accept a challenge for a fight; that is just not who he is. His parents reared him to respect human life, and never to abuse anyone in any way, shape, or form. This is why I believe John when he told me he was standing as a conscientious objector. I always imagined that John would be a great scientist, inventing great objects that could help the world. I never imagined that John would enter the military, where he could be forced into killing the people I imagined him to help; that is not the way to think of him.

Sincerely,

Joshua D Wood

Enclosure (2)

# Exhibit 6



**DEPARTMENT OF THE AIR FORCE**
305TH AIR MOBILITY WING (AMC)

20 March 06

MEMORANDUM FOR INSPECTOR INSTRUCTOR MAJ KEVIN GORDON

FROM: 305th AMW/HC

SUBJECT: Conscientious Objector Status

1. LCPL John Rogowskyj was reviewed on 20 March 2006 to help to determine the legitimacy of his conscientious objection.

2. Because LCPL Rogowskyj does not hold to any specific faith or religion that would prevent him from objecting to war, there is no formal ecclesiastical or governing body that has influenced his cause for belief nor has any religious body recommended his removal from the Armed Forces. Though his convictions appear strong, they do not reflect any official recognized faith group. It is apparent that LCPL Rogowskyj's justification has been percolated from his recent investigation into Easter Religions, mysticism, and animism.

3. Through a line of questioning, LCPL Rogowskyj appears sincere in his idea that all forms of killing are wrong. When asked if he could tolerate being shifted to another department where he could be in a non-combative role, his response was "I would still be supporting the murder of human lives." According to LCPL Rogowskyj, there was no distinction between murder and killing.

4. When LCPL Rogowskyj first entered the Marine Corps he did not hold his current beliefs, they simply have transpired through topical reading over the last several months, or perhaps through the realization that he may be going to war very soon. In my professional opinion, this young Marine is very confused theologically and his philosophical thoughts are quite disjointed. He most certainly fits his developmental age bracket of challenging norms. I am not qualified to say, however, whether this phase is temporary or permanent. LCPL Rogowskyj doesn't appear to fully grasp the consequences of his decision to breach his military contract or commitment.

5. Should you need to contact me, I can be reached at DSN 650-5907 or commercial 609-754-5907 or dan.thompson3@mcguire.af.mil.

DANIEL W. THOMPSON, Ch, Capt, USAF
Protestant Chaplain

Enclosure (6)

# Exhibit 7

6320
Ser 1500
23 Mar 06

From: LCDR Rosemary Carr Malone, MD, General and Forensic Psychiatrist, National
Naval Medical Center, Department Head, Adult Inpatient Behavioral Healthcare
Department, Bethesda, MD
LCDR David A. Weis, MD, Psychiatric Resident, National Naval Medical Center,
Behavioral Health Clinic, Bethesda, MD

To:   Commanding Officer, 4th LAR, Bravo Company, Fort Detrick, Maryland

Via:  Commander, National Naval Medical Center, Bethesda, MD

Subj: CONCIENTIOUS OBJECTION MENTAL HEALTH EVALUATION IN THE
CASE OF LCPL JOHN ROGOWSKYJ, USMC,

1. The above named service member underwent a self-referred mental health evaluation
on 22 MARCH 2006 at the National Naval Medical Center Behavioral Health Clinic
by LCDR David A. Weis, Resident Psychiatrist, under the supervision of LCDR
Rosemary Carr-Malone, Staff Psychiatrist, in compliance with regulations for
conscientious objector status. The service member was informed that the results of the
evaluation would be released to his commanding officer.

2. The patient was found to be sincere and credible during the interview when he
described his religious convictions.

3. This service member does not have any Axis I or Axis II Diagnosis, but his symptoms
and behaviors due suggest a fair degree of anxiety and avoidant traits. However, since
he would not have sought a mental health evaluation for matters other than for
requirements of claiming conscientious objector status, his overall functioning does not
appear to be impaired significantly enough to warrant a formal Axis I diagnosis at this
time.

4. The Diagnoses are:

   Axis I: Rule-out Generalized Anxiety Disorder
   Axis II: Avoidant personality traits
   Axis III: None.

5. The service member did not endorse thoughts of self-harm, suicidality or demonstrate
intent to harm others. He was not actively attending to any internal or external stimuli,
and there was no evidence of other psychotic symptoms. There were no acute
indications for prescribing any psychotropic medication at this time.

Enclosure (7)

Subj:  CONCIENTIOUS OBJECTION MENTAL HEALTH EVALUATION IN THE
CASE OF LCPL JOHN ROGOWSKYJ, USMC, ;

6.  The service member is considered psychiatrically fit and suitable for full duty.
However, if his behavior or belief system begins to interfere with his performance or
interpersonal functioning in the future, the command can pursue an administrative
separation.

7.  Questions regarding this case can be directed to the undersigned at (301) 295-2479.


David A. Weis MD MS
LCDR, MC, USNR
Resident Psychiatrist

Rosemary Carr-Malone MD
LCDR, MC, USNR
Staff Psychiatrist

2

Enclosure (7)

# Exhibit 8



UNITED STATES MARINE CORPS
Company B
4th Light Armored Reconnaissance Battalion
4th Marine Division, FMF, USMC
Marine Corps Reserve Training Center
Building 1240  Fort Detrick
Frederick, Maryland 21702-5017

IN REPLY REFER TO
1300
Admin
22 Mar 05

From: Inspector-Instructor
To:

Subj: NOTIFICATION OF ACTIVATION

Ref: CMC msg 160042Z Mar 05

1. These orders constitute Original Orders. These are your no-
tification of mobilization orders that will be followed by your
actual orders upon your reporting to B Company, 4th LARBn, 4th
MarDiv, Frederick, Maryland. You are directed to report by 0800
on 31 May 2005.

2. If you do not report at the prescribed time, you will be in
violation of Article 86 (Absent Without Leave) and Article 87
(Missing Movement) of the UCMJ. You will be processed as a de-
serter and will be apprehended by appropriate authorities and
subject to disciplinary and separation proceedings.

3. Point of contact at this command is GySgt Delora II at exten-
sion (301) 619-7136.

G. L. GRUNWALD

FIRST ENDORSEMENT

From:
To:    Inspector-Instructor

Subj: NOTIFICATION OF ACTIVATION

1. Received these orders at (unit)
on (date)            at (time)

2. My permanent residence is (correct address)
               My phone number that I can be
reached at is               If this information
changes from now until the mobilization date I will contact my
administrative section immediately.

# Exhibit 9



**UNITED STATES MARINE CORPS**
Company B
4th Light Armored Reconnaissance Battalion
4th Marine Division (REIN), FMF, USMC
Marine Corps Reserve Training Center
Building 1240
Fort Detrick, Maryland 21702-5017

IN REPLY REFER TO:
1000
Admin
12 Apr 06

From: Captain Christian T. Devine
To:   Commanding General, 4th Marine Division
Via:  Commanding Officer/Inspector Instructor, 4th Light
      Armored Reconnaissance Battalion

Subj: REVIEW OF THE APPLICATION FOR CONSCIENTIOUS OBJECTOR
      STATUS; CASE OF LANCE CORPORAL JOHN A. ROGOWSKYJ
              /5711 USMCR

Ref:  (a) MCO 1306.16E
      (b) MCO 1900.16C

Encl: (1) Commanding Officer, 4th Light Armored Reconnaissance
          Battalion, 4th Marine Division, Appointing Order
      (2) General Information Sheet and Request for Discharge
          as a Conscientious Objector
      (3) Signed Summary Sheet for Review of Conscientious
          Objector Application
      (4) Signed Privacy Act Statement
      (5) Signed Counseling Concerning Veterans Administration
          Benefits
      (6) Chaplain's Interview of 20 Mar 06
      (7) Record of Psychiatric Examination of 23 Mar 06
      (8) Letter from Joshua Wood of 21 Feb 2006
      (9) Letter from John Rogowskyj, Sr. of 21 Feb 06
      (10) Letter from Regina Buttner-Rogowskyj of 19 Feb 06
      (11) Certified Copies of Lance Corporal Rogowskyj's
           service record pages 3 and 11, enlistment contract
           (to include DD Form 1966/page 2)

1. Pursuant to enclosure (1) and paragraph 6 of the reference, a
hearing of the subject application was conducted on 10 April
2006. Present at the hearing were the applicant, Lance Corporal
Rogowskyj, hearing witness, Gunnery Sergeant Hilton, and the
hearing officer, Captain Devine.

2. Applicant was advised of his rights and examined all docu-
ments or information relevant to the application, and reviewed
enclosures (2) through (11) for content and accuracy.

3. The applicant was advised of the right to counsel and ex-
pressed understanding of the right to have an attorney present
but desired to proceed with the hearing without counsel.

4.  The applicant was advised of the right to have a verbatim transcript of the hearing at the applicant's own expense.  The applicant was further advised that unless a qualified recorder was provided at the applicant's expense, the hearing would proceed and the hearing officer's version would be final as to testimony taken at the hearing.  The applicant acknowledged understanding this right, the legal effect of proceedings without a recorder and that the applicant wished to waive the right to verbatim transcripts.  The applicant was advised that the hearing could be continued to another date if additional time was needed to obtain either counsel or a recorder.  Lance Corporal Rogowskyj again waived his right to an attorney or a verbatim record.  The applicant was also advised and acknowledged understanding that the possible effects of discharge as a conscientious objector.

5.  Lance Corporal Rogowskyj was thoroughly advised of the nature and purpose of the hearing, and I am satisfied that the applicant understood the advice.

6.  This report is submitted pursuant to paragraph 6e of the reference. The applicant was advised of the right to call witnesses or present other supporting evidence as desired.  The applicant was also advised that a delay in the hearing to pursue such witnesses could be obtained.  Lance Corporal Rogowskyj desired to make sworn statements on his behalf and answer the questions of the hearing officer, but did not submit any additional evidence nor did the applicant call any other witnesses.  The statements also contained in enclosures (2) through (11) were also considered by the hearing officer in conjunction with the hearing.

7.  A hearing was conducted at the Raymond Flair Reserve Training Center, Fort Detrick, MD on 10 Apr 2006 between the hours of 1230 and 1530.  During the hearing the applicant expressed his reasons why a discharge was sought from the U.S. Marine Corps.  His statements were in consonance with opinions and background provided in enclosure (2).  Provided is a summary of relevant testimony and personal observations that the hearing officer considered in recommending an appropriate disposition:

    a.  SNM was asked to reflect upon his early childhood upbringing to best explain his spiritual development throughout the years in order to ascertain the foundations of his current belief system, and to determine if his remarks were consistent with those provided in enclosure (2).

    b.  SNM discussed how his parents initially provided him with a Christian upbringing which he quickly dismissed after completing the first grade. He continued to reject traditional Judean-Christian beliefs as a young teen, and, in turn, began a more scientific approach to the possibility of a higher power (even exploring Atheism).

    c.  SNM believes that life shares both the corporal and spiritual world, and provided a detailed explanation of his be-

liefs regarding the soul, its manifestation and transcendence in all living things, and his belief in reincarnation.

d.  SNM considers his personal and spiritual belief system to be based on the ideas of pantheism.  Pantheism is a metaphysical and religious position. Broadly defined it is the view that "God is everything and everything is God … the world is either identical with God or in some way a self-expression of his nature." Similarly, it is the view that everything that exists constitutes a "unity" and this all-inclusive unity is in some sense divine.  Respect for all living things, in essence is respect for God.  Similarly, SNM is now a vegetarian as a result.

e.  SNM further believes that God (or creator) has given him the gift of free will, and through this gift—mainly via our decision making—that we have an impact on our surrounding environment, whose aggregate actions impact the world in which we live.  Accordingly, SNM believes causing harm to other living things (either directly or indirectly) would be an inappropriate use of God's gift.

f.  SNM offered that his beliefs at a younger age accepted the use of violence only as a last resort, and accordingly, war as a necessary evil. Pre-and post-enlistment beliefs followed along these lines and began to manifest and validate after 9/11, whereas, SNM believed that the sum of violent actions would be permissible to protect innocent lives from threats, and destroy enemy combatants—accepting the notions of "Peace through Violence."  SNM explained that he felt a deep sense of grief after the 9/11 attacks and overall strangely offended that these acts could be done in the name of God.

g.  SNM stated that he joined the Marine Corps to fulfill a sense of duty, to give back to society and find a greater sense of service before self.  In the post-9/11 world, SNM stated that it was important and necessary to "serve," equally as much as it was to defend innocent people from possible future attacks.  SNM described himself as an average recruit, relatively quiet, and "completely on-board with the Marine Corps mission."  I inquired as to why if he had pantheistic beliefs (even if relatively pubescent) that he would choose to join the Marine Corps as opposed to other forms of public and civil service.  His answers we not quite as direct here, except to offer once again to protect and defend innocent people from being attacked; the most productive way to meet that end (and become apart of a greater positive solution) was to become a U.S. Marine.  SNM stated that the initial grief and anger experience after 9/11 has since subsided, and now has been replaced to a total disappointment of the GWOT and its negative affect on the entire world (especially Iraq and Afghanistan) due to the circle of violence it continues to generate.  SNM stated that he now feels as though he has given God's gift of free will to the Marine Corps, who in turn continues to use him as an instrument to promulgate continued violence in their combative actions around the world.

h.  Considering his stated desired to serve, I asked him as to why he chose to submit an application for 1-0 status vice 1-A-0 and take an administrative or other non-combat role.  SNM stated that he believes that the Marine Corps mission and its associated lifestyle have become incompatible with his personal and spiritual beliefs since they have come full-circle in understanding and trying to achieve spiritual accountability.  As an example, he referred to submitting a 1-A-0 application like "buying the meat but not slaughtering the cow."  I then asked him to discuss how he has felt recently since filing the 1-0 application, and performing his duties as an NBC Defense Marine (5711)—i.e. performing duties that are defensive in nature and prepare Marines from being attacked by deadly agents.  SNM offered a rather pragmatic explanation as how he felt about performing such duties, most notable being that he currently believes that his duties cause a difficult moral conflict, whereas he believes it is good to protect and train others (fellow Marines) how to defend themselves from NBC threats, but, on the other hand, struggles with fact that he is "just helping to save the lives of future killers of others."  Likewise, he said he would be more open to training and helping all against these violent threats if that were the case, to include the Taliban and Iraqi insurgents.

i.  When asked if faced in a combat situation, if he would take up arms to defend himself or his fellow Marines, he stated that he would not without hesitation.  Furthermore, I embarked on a line of questioning to obtain his reaction what he would when faced in challenging and dire situations if he would defend himself or be killed, or not protect a loved one by performing a violent defensive act.  SNM did not directly choose to answer those questions stating that he could not begin to speculate on what he would do in "fight or flight" situations—that he would just act pending on the situation.

j.  SNM was asked to describe his feelings about whether or not the people of liberated countries such as France, Belgium, Holland, Italy, Korea, Kuwait, Afghanistan, and Iraq feel as though the use of violence in war benefited them. His response was that these benefits are merely temporary, and that war's cumulative effects become more self-evident over time—perhaps hundreds and thousands of years later.

8.  I spent a considerable amount of time probing Lance Corporal Rogowskyj's personal, political, and religious beliefs.  His testimony overall seemed sincere, thorough, and well-formulated, but also at times verged off into strange and subjective tangents that seemed to circumvent direct questioning by incorporating textbook philosophical and spiritual rhetoric. The aforementioned testimony merely begins to scratch the surface as to the depth this young Marine provided me about his religious doctrine and beliefs, and how it has affected him to seek separation from the military.  Lance Corporal Rogowskyj's continuous spiritual self-indulgence and search for a universal-spiritual utopia has created substantial personal challenges, ones that will eventually find him alone and incredibly disappointed with the imperfect

world around him.  He cares more about examining how the actions of himself and others make him feel, then to being apart of the solutions to real-life challenges.  In essence, I would classify Lance Corporal Rogowskyj as merely a spectator, sitting in the bleachers of life offering only trite, subjective, and elementary ideas on how life should be, instead of applying some initiative and fortitude to make it what it can become.

9.  In conclusion, I have arrived at the following opinion and conclusion as a result of the hearing conducted on 10 April 2006 and based on review of the references:

I consider Lance Corporal Rogowskyj to be a conscientious objector within the meaning of definition provided in the reference. Accordingly, I recommend that Lance Corporal Rogowskyj be immediately processed for administrative separation from the U.S. Marine Corps Reserve since his perceived personal and spiritual beliefs would prevent him from effectively discharging his duties, and place a considerable strain upon the safety and security of his fellow Marines.

10.  Based on the foregoing, I recommend that the applicant's petition for discharge based on conscientious objection be approved.

11.  I certify that I have, this date, delivered to the applicant a copy of the record of the case, as it now exists, per paragraph 6e of the reference (a), and that the applicant has been informed that 7 days from this date a rebuttal of the record must be submitted to the convening authority (if desired).

C. T. DEVINE

# Exhibit 10

UN-19-2006 13:11 FROM:2AABN



## UNITED STATES MARINE CORPS

### COMPANY B
4TH LIGHT ARMORED RECONNAISSANCE BATTALION, 4TH MARINE DIVISION
MARINE CORPS RESERVE TRAINING CENTER
BUILDING 1240, FORT DETRICK
FREDERICK, MARYLAND 21702-5017

5800
CO
16 Jun 06

FIRST ENDORSEMENT on LCpl Rogowskyj's request for Conscientious Objector status

From:  Commanding Officer, Company B, 4th LAR Battalion
To:    Commanding Officer, 4th LAR Battalion

Subj:  REQUEST FOR CONSCIENTIOUS OBJECTOR STATUS CASE OF; LANCE CORPORAL ROGOWSKYJ, JOHN A :

1.  I concur with the investigation finding that Lance Corporal Rogowskyj is a conscientious objector by reason of the development of his spiritual beliefs.  I do not concur that Lance Corporal Rogowskyj should be considered non-deployable. He has been mobilized and is currently participating in all aspects of training with DSU-3, except weapons training, which he refuses to participate.  He has no issues with other Marines who are aware of his case.  It is my intent that he serve the company in the capacity of Supply Clerk, a non-combatant billet. He has acknowledged to me that he would be able to perform this duty without contravening his belief system.   Lance Corporal Rogowskyj has made a commitment by signing an enlistment contract that can be satisfied by deployment with DSU-3.

2.  Forwarded, recommending disapproval.

M. A. STOLZENBURG

# Exhibit 11

# Dam Security Unit patrols Euphrates

**Submitted by:** 2nd Marine Division (FWD)
**Story by:** Computed Name: *Cpl. Adam C. Schnell*
**Story Identification #:** 2005122023408

---

**HADITHA DAM, Iraq(Dec. 9, 2005)** -- In Iraq, a land made of mostly sand, rock, and extremely hot temperatures, the average person might not think that there was much need for boats in this austere climate.

The two major rivers that run through Iraq, Tigris and Euphrates are the life blood of this arid land. In addition to water for irrigating the crops, the rivers support several hydroelectric plants like Haditha dam and boats are an important part of keeping the dam safe from insurgents.

That's why more than 80 Marines with the Dam Security Unit patrol the waters around the hydroelectric power plant everyday. Thanks to them, the dam continues to supply power to thousands of Iraqi people and safely house Coalition Forces operating in the area.

"We patrol the water around the dam at least once or twice a day to make sure there is no illegal boat traffic or vessel-born [improvised explosive devices] that could damage the dam," said Staff Sgt. Matthew J. Lockwood, a Galveston, Texas native and section leader for the unit.

The Marines' boats operate on both sides of the dam. They have a team that operates on the Euphrates River and one that operates on the man-made reservoir called Lake Qadisiyah.

Currently attached to 3rd Battalion, 1st Marine Regiment, the unit is made up of mostly Reservists, hailing from Reserve Stations all around the country and from all different job fields, who volunteered to operate the boats.

"In this unit, we have trackers, gunners, mechanics, operators, supply guys, optics techs, lots of different talents," commented 26 year-old Lockwood. "It is great because people also use their civilian careers to help the mission. We are a self-sufficient unit."

The unit also has a few active-duty Marines that help the unit accomplish their mission. Four of them were actually part of an active-duty small craft unit that operated in Iraq before it was decommissioned a few months ago.

"The small craft guys bring expertise to the unit because they have been doing it for some time," Lockwood said. "The same guys that are here with us were ones that taught at the school where we all learned how to operate the boats."

Before the unit deployed to Iraq, they traveled from their hometowns to Marine Corps Base Camp Lejeune, N.C., for training. They spent more than three months learning how to operate, maintain, and perform missions aboard the $750,000-dollar boats.

"We learned how to perform combat missions and do evasive maneuvers with the boats," Lockwood said. "These boats are pretty amazing in the water."

The boats come with twin, turbo-charged diesel engines that give the boats more than 850

horsepower. At full throttle with a combat load, the Riverine Craft can do a speed of about 40 mph.

"Even though the boats are really heavy, we can go from full throttle to a complete stop in three boat lengths," added Lockwood

Even though everyday has become a kind of routine for the Marines, many of them really enjoy being a part of this unique unit. For Marines like Lance Cpl. Jose N. Loya, an Amarillo, Texas, native and bow gunner for the unit, coming out to Iraq to be part of the DSU has been a once in a lifetime experience.

"Who would've thought someone from Amarillo, Texas, with no bodies of water for hours, would be spend seven months in Iraq doing boat missions almost everyday," said Loya.

-30-

# Exhibit 12

IRAQ

## On the Euphrates

Riverine Warfare on the Euphrates River

By Bill Roggio

HADITHA DAM, IRAQ: The company of Marines known as the Dam Security Unit are a unique bunch. The DSU is a one of a kind unit in the Marine Corps. They are primarily made of of reservists, almost 90% of them. And they come from units across the county; Texas, Florida, Virginia, Indiana and Mississippi. Naturally there were some snags in the beginning while integrating the disparate units, but you wouldn't know it by watching them operate.

Their primary mission is to provide for security on the Haditha Dam. To acheive this, they conduct patrols and provide a quick reaction force on the river and lake. But the DSU is looking to expand its mission to support operations up and down the river.



*The Euphrates Riverine Environment.*

Their boats are called Small Marine Riverine Craft, are 40 feet long by 10 feet wide, and are powered by twin souped up 440 horsepower racing engines. The SMRC can easily exceed 40 knots, and is both quick and highly maneuverable. Because it is jet driven and not propeller

View Full

REFEREN

R
ht

FEEDBAC

The DSU

It was fu
Marine C
recently
disbande
Support
pretend

Their mi
consider
1/23, an
severely

All contents Copyright © 2005-2006, ThreatsWatch.Org | Contact | Feeds List | 🔲 | 🄴

driven, the SMRC can go into waters as shallow as 9 inches. It holds a crew of five, and can carry up to thirteen Marines for an assault.

The boat packs some serious firepower to go along with its speed. It mounts two M240G machine guns forward, and either a .50 caliber machine gun at the rear, or a or a Mark 19 grenade launcher. The boat is also equipped to mount an electric powered gatling gun.



*Small Marine Riverine Craft.*

The DSU company is commanded by Major Joe Cleary. I took a ride on the "Beefirm", whose crew is Sergeant Kevin Firmin, the boat captain; Corporal Brandon Beebe, the cockswain; "Doc" Thomas Stein, the navy corpsman; Corporal Oleg Bakalashev, the .50 cal gunner; and Lance Corporals Joseph Finchum and Bryan Kay, the M204G gunners.

Sgt. Firmin speaks highly of his crew, "I have the three best gunners in the company. Cpl. Bakalashev is a sniper on the .50, and Kay and Finchum spray and pray. Cpl. Beebe can put the boat in any space" of the size of the boat.



*The Crew of the Beefirm.*

The sunrise patrol was on Lake Haditha, and consisted of four boats. The shoreline of the lake is largely barren of vegatation, making identifying potential threats more easily than on the river downstream of the dam. The morning patrol covered half the lake in in a little more than one hour. One fishing boat was searched and two Marines from another boat dismounted to the shore to search a suspicious tent. Sgt. Firmin unwisely allowed me to take the boat for a spin at the end of the patrol, and I can attest to the boat's speed, power and quickness. We returned in one piece.

After completing the morning cruise, the boats were drawn up from the lake and loaded for transport for a three boat patrol downriver from the dam. The riverine environment downriver is markedly different than the lake. The banks are thick with reeds and palm groves, and the landscape was dotted with ancient aqueducts.

The area is ripe for ambushes by insurgents from the shore, and the DSU has taken fire from the banks in the past. Sgt. Firmin stated "the unit out here in the last rotation was in 38 firefights in 6 months." Recent patrolling has been quiet.

Since the bridges have been taken out along the Euphrates during operations over the summer, boat traffic across the river has dramatically increased. The river is shallow enough it can be walked across in many places. A boat ride across the river can take less than 2 minutes, making patrolling the rivers vital for keeping insurgents from using this mode of transportation.

The afternoon patrol lasted for about one hour, with two trips up and down the river to a point just north of Haditha. It was another quiet patrol.

Cool! My
the Dam
you his r
just ask
and see

N.B. I m
finished

*I can't bi
name, b
if anyon
which o*

Or just a
Thermop
which o
quick gri

Feedba

Major Jo
prouder
doing wh

Proud of
prayers

Fee

Thank yo
brothers
extende
trying to
dearly. F
WONDER

Fee

Thanks f
I'm so pr
wonderf
Marines

F

There is talk of disbanding the company in the near future. This would be a great mistake, as the riverine environment demands a presence on the river. Iraq is the Land of the two Rivers, and the River War is fought on the rivers as well as its banks.

December 5, 2005 4:36 PM | Permalink | Print

Thanks f
Firmin. I
guys wh
your con

Thank-yc
what our
are ok. S
extemel
doing.

Fe

Thanks f
my son i
like Kevi
so very p
with hirr
commitr
everyday

I man th
the comp
when it
of which

P.S. We
or somet
corporal
be guarc

Feedbac

God Bles
there ar

Feed

Thanks f
first and
They spe
providin
coxswair
intereste
God Bles

Fee

My son j
This is e
for right
your tim
what it
Bless.

———

This is G
of my re
years, a
what he
Love The

———

I just wa
story. C
not my
search o
come fr
country
but you
thank yo
Also, Fin
having a
your wif

———
                    F

Thanks f
and real
disbande

———

I need t
dam or
him, wou

———

This was
DSU 2. Is
Thanks s

———

Thanks (
you are

good wis
and defe
Keep you

Fe

SHARE FI

If you ha
use it he

(If you h
need to
commen
the entr

Name:

Email Ac

URL:

☐ Rer

Commen

Previ

# Exhibit 13



**UNITED STATES MARINE CORPS**
4th Light Armored Reconnaissance Battalion
4th Marine Division (Rein), FMF, USMC
Building 41407
Camp Pendleton, CA 92055

IN REPLY REFER TO:
5800
CO
28 Jun 06

SECOND ENDORSEMENT on Capt Devine ltr 1000 Admin dtd 12 Apr 06

From:  Commanding Officer
To:    Commandant of the Marine Corps (MM)
Via:   (1) Commanding General, 4th Marine Division
       (2) Commander, Marine Forces Reserve

Subj:  REQUEST FOR CONSCIENTIOUS OBJECTOR STATUS; CASE OF LANCE
       CORPORAL ROGOWSKYJ, JOHN A.

Encl:  (1) LCpl Rogowskyj statement

1.  Readdressed and forwarded.  Enclosure (1) is attached as required by reference (a).

2.  LCpl Rogowskyj is presently mobilized with his parent command, now redesignated to Dam Security Unit 3 (DSU-3) and training at Camp Lejeuene pending deployment into theater in Sep/Oct 07.  I spoke with him via telephone on 19 Jun 06 for additional information on his application.  DSU-3 is making reasonable efforts to assign him to duties which conflict as little as possible with his asserted beliefs.  He is conforming to the normal requirements of the command and performing assigned duties satisfactorily.  There is no pending disciplinary action.

3.  In the net, I find LCpl Rogowskyj's case to be unconvincing, falling short of the requirements of ref (a) to grant conscientious objector status and be excused from the contract which he voluntarily entered and has not yet fulfilled.  Therefore, I recommend disapproval.  In my evaluation, the salient issues are:

    a.  To be eligible for conscientious objector status, the individual's position must be sincerely and deeply held.  Besides this application, LCpl Rogowsky's most tangible evidence of the outcomes of his belief is that he now volunteers at a homeless shelter, has become a vegetarian, and intends to lobby for an expansion of conscientious objector rights.  While these are significant and charitable acts, they do not clearly demonstrate that his belief is the primary controlling force in his life, per ref (a) para 5.c.(1).

    b.  LCpl Rogowskyj's application is based on non-traditional religious / moral / philosophical discovery.  His statements are not convincing that his activity was comparable in rigor and dedication to

the processes by which traditional religious convictions are formulated (ref (a), para 5.c.(2)(b)), or that he has demonstrated that avoidance of military service is not the basis of his claim (ref (a), para 5.c.(2)). Without trying to *judge* his beliefs, I find it hard to account for the significant *change* in his beliefs. From rather nuanced self-study he has made a 180 degree change regarding the role of the military, from the pre-enlistment beliefs noted in paragraph 7.f. and g. of the inspecting officers report, to those documented elsewhere throughout but particularly in 7.j. and h. LCpl Rogowsky echoed those sentiments in his conversation with me, and expressed his desire to disengage from participation in the harsh realities of the rest of the world (my words). I find this to be particularly significant due to the applicant's line of reasoning regarding "free will" and comments regarding avoidance and self-indulgence in the statements from the Chaplain, Psychiatrist, and the assessment of the investigating officer in paragraph 8 of the base letter. In my own inquiry, I concur with that assessment in paragraph 8, although I reach a different recommendation on the disposition of the application.

4.  The following information is also relevant and should be considered in the final determination. I note that, while I believe the application is not fully supported, it is at least consistent and sincere and should be given thorough evaluation.

    a.  LCpl Rogoskyj's general demeanor and pattern of conduct is consistent with his asserted beliefs.
    b.  Concur with the inspecting officer that his beliefs seem sincere and thorough, and that his expression of them involves substantial philosophical and spiritual rhetoric.
    c.  The timing of his development of beliefs and submission of application is suspiciously parallel with the unit's mobilization warning and notification; however, there is nothing concrete to indicate that this is anything other than coincidental.
    d.  The applicant's asserted beliefs do not seem to indicate that 1-A-O status is an appropriate compromise. However, his MOS as an NBC Defense Specialist and the availability of positions within DSU-3 make an assignment to noncombatant duties possible.

W. S. NAGLE
LtCol USMCR

# Exhibit 14



**UNITED STATES MARINE CORPS**
4TH MARINE DIVISION
NAVAL SUPPORT ACTIVITY, EASTBANK
4400 DAUPHINE STREET
NEW ORLEANS, LOUISIANA 70146-5400

IN REPLY REFER TO:
1306
CG
AUG 2 1 2006

FINAL ENDORSEMENT on Capt C. T. Devine, Investigating Officer of
             Conscientious Objector Classification ICO LCpl J.A.
             Rogowskyj

From:  Commanding General
To:    Commandant of the Marine Corps (MMIA)
Via:   Commander, Marine Forces Reserve (Attn: SJA)

Subj:  CONSCIENTIOUS OBJECTOR CLASSIFICATION IN THE CASE OF LANCE
       CORPORAL JOHN A. ROGOWSKYJ JR.

1.  Forwarded for disposition.

2.  I concur with the Battalion Officer's recommendation and
Chaplain's assessment of denying classification of 1-0.  Lance
Corporal Rogowskyj does not hold any specific faith or religion that
would prevent him from objecting to war.  He is confused theologically
and does not reflect any official recognized faith group.

                                    D. V. ODELL JR.

Copy to:
CO, 4th LAR Bn

# Exhibit 15

## UNITED STATES MARINE CORPS

B CO, 4THG LAR BN, 4THG MAR DIV
1120 ROCKY SPRINGS RD
FREDERICK, MD 21702

IN REPLY REFER TO:

B CO
30 August 06

From: LCPL JOHN A ROGOWSKYJ, JR - SSN          MOS 5711
To:

Subj: CONSCIENTIOUS OBJECTOR PACKAGE FINAL REBUTTAL

I have elected to make the following rebuttal to comments made by those in my chain of command, as well as a few items to which I did not previously respond, included in the remarks of those by whom I was interviewed. I believe that no one can effectively convey the nature of a supreme power, but I do believe that each of us has a profound impact on the physical reflection of God. It is my hope that through this document, I may also better explain my beliefs than I have been previously.

Once, I saw war as a necessary act of protecting the weak and needy. It was at this time that I felt obligated to join the Marines, as they exemplified for me the strong nobly defending the weak. One year ago, I discovered a profound clarity, however, which turned that view around. I have believed for many years that killing animals is wrong. In August of 2005, I had an epiphany, and it was surprisingly simple. While my faith has evolved over time, the sudden link between taking a human life and terminating one of God's creations became apparent in an instant. I do not believe that supporting any action to willfully take human life will result in anything less than a karmic punishment at the hands of God. I hope that I have clarified, in some way, why I can no longer serve in a military organization. That said, I will attempt to eliminate some confusion regarding my beliefs that I have noticed in the endorsements from my command.

The first issue that I must address is the comment by Maj. Stolzenburg that I supposedly acknowledged that a non-combatant billet would not conflict with my belief system. Upon being offered the billet of supply clerk, I was asked and could not name any specific ways in which supplying Marines was in any way worse than support I would be asked to provide in any other position within the Marine Corps. In point of fact, it did not occur to me at the time that supply is responsible for providing ammunition, which directly contributes to violence. I cannot be blind to the fact that they will use this ammunition, not just to support their missions as a whole, which my presence in the Marine Corps does, but also to intimidate, escalate and kill others in confrontations.

My faith cannot allow me to arm those who would, even with the best of intentions, kill their fellow man. I have filled this billet since June, and it has weighed

me with guilt, but I have yet to issue anyone live ammunition. I will not be able to do this, any more than I will be able to carry a weapon myself, an action which will also be demanded of me, in accordance with regulation. The heavy weight that this carries may be clearer in view of what is written by Cpl Hernandez in his statement. We have become close friends since we have been activated, and he knows me better than anyone else here. This is why I have asked him if he would like to say anything on my behalf, and I was honored to include his remarks. Please do not consider his statements professional evidence, only a statement by a friend attesting to the depths of my convictions.

Addressing concerns that the tangible evidence of my faith is sparse, I have the following to say. In my daily life, the revelation I have had about violence has had little discernible impact, because violence is not a part of my everyday life, except insofar as I am supporting troops preparing for combat, in this moment. In contrast, my faith has a strong impact on how I lead my life. Though I did not consider it pertinent to the case of conscientious objector before now, I will state that my faith prohibited me from engaging in premarital relations. It has caused me to explore the world, in search of different views and ideas; a search that has taken me from Buddhist temples to the Vatican in search of enlightenment. My faith is the cause of much discussion, and a central topic of interaction with those who become my friends. This is why Cpl Hernandez, for instance knows so much about my beliefs. It is something I discuss with people and develop friendships through. It is something that is so intrinsically a part of my life, that it is seldom discernible as an act of faith, so much as a part of my character. I treat others with love and kindness because it is the right thing to do, and I know that God sees this, and will alter the world accordingly.

I may never see firsthand the rewards for my charity, whether its giving money to a single homeless man, or helping to feed and shelter dozens, yet I know that by doing so, I make the world a better place. The correlation is not merely causal, it is in God's design, to alter ever so slightly certain aspects of the world to reflect the acts of those with choice. I once thought that an act of violence could be an act of good, if it were to protect the lives of others. In August of 2005 it became startlingly clear that I was mistaken, as I have for years known that killing animals would be met with terrible consequences by God, and had neglected to consider that the same could be said of humans.

Even if an animal kills another animal, God will not respond positively to me killing it, even if my intent is to protect the weaker animal. The fact that this logic should apply to human life in the same manner had escaped me, and so when I realized this, suddenly, I saw that the path I was leading was so far from serving God in accordance with my faith, I was disgusted. Years of self-inquiry and self-discovery had led me to this point, and in a flash I realized that I had missed one of the most fundamental points to a fulfilling relationship with the spiritual world, forgiveness for my fellow man. In cases where, through God's will, instinct causes humans, as it does any other animal, to defend themselves, they have made no choice to forsake God, and their actions will not be met with the same harshness. Those who do decide, even for lack of perceived alternatives, to perpetrate violence, especially against their fellow man, will garner a negative response from God. That response may be intangible now, and felt some later

time, but it result in the suffering of the ones who have taken lives, and they will know the pain that they have created.

Despite LtCol Nagle's opinion that my faith is based on processes less rigorous than other religions, I assure you that my faith is built on a journey of inquiry, that I believe many have taken to find their path to God, in order to formulate their own religious convictions. From Aborigines to Native Americans, the idea of finding your spiritual path through self-discovery is not unique to myself. For many is the desperate night I have sat alone and wondered to God why the world is the way it is, and what must be done to bring us a world without suffering, or if it is even God's intent that we suffer. The pain of these questions has plagued me, ever since I found myself without spiritual guidance as child, having rejected the faith into which I was born, and finding such organizations unappealing. The hours I have searched for truths that God has lain out in each of us may differ from the hours another theologian spends scouring scripture for those same clues, obscured by words and translations, but they are every bit as grueling, and serenely rewarding.

In the same paragraph as mentioned previously, LtCol. Nagle refers to my beliefs as a "desire to disengage from participation in the harsh realities of the rest of the world." I cannot say I agree with his view. I acknowledge that people are violent by choice, and that they will likely continue to be, but I am making every effort to bring some much needed peace to the world, and persuade others that they indeed have choices beyond violence. It is a very real struggle, and the uphill battle is before me, but it is a cause I have embraced. In addition to the petitioning of Congress, I have urged many with whom I have spoken to turn away from violence. I do feel that I am making an impact, and that in some small way, I may help the world live more peacefully. Additionally, I believe that the claim was made, in part, regarding the exercise of my beliefs. Meditation and introspection are essential to finding one's spirituality.

I have attended, recently, a few group prayer demonstrations and most of those in attendance were Christians. I know that they share my views on war and to an extent on violence, and as devout in their faith as I am in my own, we came together and did the same thing. The greatest struggle those seeking to spread peace will face, is a struggle of faith, in one form or another. Some may see violence as a means for peace. Effective or not, it is wrong. It is not acceptable to destroy God's creation, and God will not take lightly that many have done so. The influence of their actions will be felt, through God, but likewise will the actions of those who offer themselves before God in peace.

As Gen. Odell has cited the Chaplain's report as a recommendation for denial, I feel I must comment on it. I do not belong to any organized faith group, as both have mentioned, but such an affiliation, to my understanding, is not a requirement for conscientious objector status. Regarding some other statements made by the chaplain, I should mention that I am fully aware of the potential consequences of my decision. Furthermore, I acknowledge, to a degree the apparent confusion that may come about when I attempt to describe my beliefs. Having no formal religious education to speak of, the various words familiar to me to describe my religious experience come from a variety of sources, and do not, I feel, explain my beliefs completely. Hopefully this letter will make them somewhat clearer, as I can now see precise points where interviewers had trouble understanding what I have attempted to convey. The endorsement by LtCol Nagle and the report by the investigating officer do mention that they believe me to be

sincere, as Maj. Stolzenburg has expressed to me in conversation on more than one occasion.

The chaplain, in his statement asserts that my beliefs developed over several months, and did not exist when I entered the Marine Corps. While it is true that I had not yet experienced the epiphany that the life of man is surely as sacred as a cow at the time of enlisting, the beliefs that I held were otherwise largely the same as today, having developed over a period of years. Discussions with others from many faiths have led me to some deep truths that I believe have been deliberately made available to us all by God, but which we must search for. The continual search for one's own spiritual path is among the greatest daily exercises of faith that I hold dear.

Between the chaplain's remark about a realization of going to war soon and LtCol Nagle's observation of conspicuous timing, it seems necessary to explain the motivation for my discharge request once again. I cannot support, through my actions, any act of premeditated killing. It is part of the mission statement of the Marine Corps rifle squad, the very body that the rest of the service is in place to facilitate. Being a Marine in light of recent revelations is an affront to God. Each day that passes, I live with the guilt of serving this purpose, and it is unacceptable. It is my intent to bring about a better world, through God and my fellow man acting together to the mutual goal of creating and sustaining life, without forsaking that creation in the process. It has become impossible to practice my religion while serving the Marine Corps, and I cannot continue to serve it.

John A. Rogowskyj, Jr.
30 August 06

# Exhibit 16



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
3280 RUSSELL ROAD
QUANTICO, VIRGINIA 22134-5103

IN REPLY REFER TO:
1300
MMIA
0 6 OCT 2006

From:   Commandant of the Marine Corps
To:     Commanding Officer, Company B, 4th Light Armored Reconnaissance
        Battalion
Via:    (1) Commanding General, 4th Marine Division
        (2) Commanding Officer, 4th Light Armored Reconnaissance
            Battalion

Subj:   REQUEST FOR CLASSIFICATION 1-0 CONSCIENTIOUS OBJECTOR
        STATUS FOR LANCE CORPORAL JOHN A. ROGOWSKYJ JR.

Ref:    (a) Capt Devine's ltr 5800 CO of 12 Apr 06
        (b) MCO 1306.16E

1.  On 29 September 2006, a Conscientious Objector Status Screening
Board convened at Headquarters, U.S. Marine Corps to review Lance
Corporal Rogowskyj's request for classification 1-0 conscientious
objector status.  The board considered Lance Corporal Rogowskyj's
request, the opinions of the interviewing psychiatrist, the
investigating officer, the chaplain, and the recommendations of the
chain of command.

2.  The Conscientious Objector Status Screening Board which heard his
case unanimously decided that Lance Corporal Rogowskyj failed to
provide clear and convincing evidence that his claims of objection to
war in any form were sincere and deeply held and that they were the
primary controlling force in his life.  Further, the board believed
that the timing of Lance Corporal Rogowskyj's request, coming after
notification of his unit's combat mobilization, was simply a means to
avoid a combat deployment to Iraq.

3.  Based on a review of Lance Corporal Rogowskyj's request, the
opinions and recommendations of the chain of command, and the opinions
and recommendations of the Conscientious Objector Status Screening
Board, Lance Corporal Rogowskyj's request provided by reference (a),
has been considered per reference (b), and is disapproved.

R. P. MILLS
By direction

Copy to:
MMSB
MMSR

G
06 - 1930
ESH

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

**I (a) PLAINTIFFS**

JOHN A. ROGOWSKYJ, JR.
13449 Finlaw Avenue
Pennsauken, NJ 08109,

88056

**DEFENDANTS**

General MICHAEL W. HAGEE
Commandant of the Marine Corps
Headquarters, U.S. Marine Corps
3000 Marine Corps Pentagon
Room 4E468
Washington, DC 20350-3000,

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Camden
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Eugene R. Fidell
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W., Second Floor
Washington, DC 20036
(202)466-8960

CASE NUMBER    1:06CV01930

JUDGE: Ellen Segal Huvelle

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 11/13/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZE...
FOR PLAINT...

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

— o —

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☒ 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities-Employment <br> ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. § 2241, Failure of Commandant of the U.S. Marine Corps to recognize Petitioner's Conscientious Objector status

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____ Check YES only if demanded in complaint   **JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE November 13, 2006   SIGNATURE OF ATTORNEY OF RECORD *Eugene R. Fidell*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.