# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN A. ROGOWSKYJ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CA No. 06-01930 (ESH) |
| | ) |
| GENERAL JAMES T. CONWAY,[1] | ) |
| Commandant of the Marine Corps | ) |
| Respondent. | ) |
| _____ | ) |

## RESPONDENT'S OPPOSITION TO PETITIONER'S
## PETITION FOR A WRIT OF HABEAS CORPUS

## INTRODUCTION

Lance Corporal Rogowskyj ("Petitioner" or "Rogowskyj"), an enlisted member of the

United States Marine Corps, challenges the Marine Corps' denial of his application for

conscientious objector ("CO") status and requests to be discharged from his voluntary military

service obligation.  Because Rogowskyj is challenging an internal military personnel decision,

the narrow standard of review governing this type of habeas petition only requires the Marine

Corps to show that its decision had some basis in fact.  United States ex rel. Barr v. Resor, 443

F.2d 707, 708 (D.C. Cir. 1971) (whether or not there was a "basis in fact" for the administrative

decision is the accepted standard of review in cases challenging the denial of conscientious

objector status) (citing Bortree v. Resor, 445 F.2d 776 (1971)).

In this case, the record provides ample evidence to meet the basis in fact standard, and to

justify the Marine Corps' denial of Rogowskyj's conscientious objector application.  The Marine

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), General James T. Conway, who was sworn into office as the 34th Commandant of the Marine Corps on November 13, 2006, is substituted as Respondent in his official capacity for the former Commandant, General Michael W. Hagee.

Corps Conscientious Objector Status Screening Board, acting on behalf of the Commandant of the Marine Corps, correctly determined that Rogowskyj did not meet the criteria for discharge as a CO. The respondent therefore respectfully requests that Rogowskyj's petition for a writ of habeas corpus be denied.

## STATEMENT OF FACTS

### I. Conscientious Objector Application Processing

The Department of Defense has promulgated regulations regarding the procedures for processing applications for discharge on the basis of conscientious objection. See 32 C.F.R. part 75 - Conscientious Objectors. These regulations serve as the basis for Marine Corps Order ("MCO" or "Order") 1306.16E, attached hereto as Defense Exhibit ("Def. Ex.") A, which governs applications for CO status within the Marine Corps. The Order authorizes conscientious objector status for those service members, (1) who are conscientiously opposed to participation in war in any form; (2) whose opposition is founded on religious training and belief; and (3) whose position is sincere and deeply held. MCO 1306.16E ¶ 5.b.

The regulation defines conscientious objection as a "firm, fixed and sincere objection to participation in war in any form or the bearing of arms, because of religious training and belief." Religious training and belief is defined as "[b]elief in an external power or being or deeply held moral or ethical belief, to which all else is subordinate or upon which all else is ultimately dependent, and which has the power or force to affect moral well-being. . . . The term 'religious training and belief' may include solely moral or ethical beliefs even though the applicant himself may not characterize these beliefs as 'religious' in the traditional sense . . . ." Id., Enclosure (1),

¶ 3.  Marines requesting discharge on the basis of conscientious objection, known as 1-O status[2], must satisfy the additional requirement of a sincere objection to war in any form.  Id. at ¶ 4.b.  If the applicant satisfies his initial burden of demonstrating sincere opposition to war in any form, conscientious objector status will be granted unless the Government can establish a rational basis in fact for denying the application.  Id.

In order to begin the CO review process, an applicant must submit a detailed application answering questions concerning his or her beliefs, training and membership in religious organizations.  Id. at ¶ 6.a.  Applicants may also submit letters or other documents on their behalf as part of their applications.  Id.  A service member seeking conscientious objector status is then interviewed by a chaplain and either a clinical psychologist, a psychiatrist, or some other physician if a mental health specialist is not readily available.  Id. at ¶ 6.c.  The chaplain assesses the "nature and basis of the applicant's claim" and "the applicant's sincerity and depth of conviction."  Id.  The mental health evaluation confirms the presence or absence of any psychiatric or personality disorder that would warrant medical treatment or other administrative disposition.  Id.  These interviewers submit reports of their interviews, which become part of the record.  Id.

Next, the applicant's command appoints an investigating officer to hold a hearing on the application and prepare an investigative report.  Id. at ¶¶ 6.d-6.e.  At the hearing, the applicant may call witnesses, question the Government's witnesses, and present documentary evidence.  Id. at ¶ 6.e and Enclosure (7).  The investigating officer may question the applicant.  Id.  The

---

[2] A Marine may also apply for "non-combatant" or 1-A-O status.  However, Rogowskyj did not apply for this status and MCO 1306.16E ¶ 5.d precludes award of 1-A-O status as a compromise when the Marine requests 1-O status.

investigating officer will review the application, reports from the chaplain and physician, summarized transcripts from the hearing (if any) and letters of recommendation from the applicant, and attach each of these documents as part of his report.  Id. at ¶ 6.e.  The investigating officer then makes a recommendation to the commanding officer.  Id.  The applicant is allowed a period of seven days after receiving a copy of the investigating officer's report to submit a rebuttal statement.  Id.

The investigating officer's report, with enclosures, is then forwarded up the chain of command from the commanding officer who ordered the investigation to the Commandant of the Marine Corps.  Id. at ¶¶ 6.f and 6.g.  Each officer in the chain of command makes a specific recommendation concerning the disposition of the application.  Id. at ¶ 6.f.  After the last commanding officer endorses the package, but before it is sent to Headquarters Marine Corps, the applicant is allowed another seven days to review the entire endorsed package and write a rebuttal.  Id. at ¶ 6.g.

The final package is sent to the Commandant of the Marine Corps, Manpower Personnel, Management Division.  Id. at ¶¶ 6.g and 6.h.  There, the Conscientious Objector Status Screening Board reviews the application and makes a recommendation to the Commandant.  Id. at ¶ 6.h.  The MCO does not provide the applicant with the right to appeal the Commandant's decision.  Id.  As with all Marines' records, however, the applicant may appeal an adverse decision to the Board for Correction of Naval Records ("the BCNR"), which is authorized to change a service member's record to correct "an error or remove an injustice."  10 U.S.C. § 1552; Secretary of the

Navy Instruction ("SECNAVINST") 5420.193.[3]

## II.    Rogowskyj's Petition For Conscientious Objector Status

Rogowskyj voluntarily enlisted in the Marine Corps Reserve in 2002 for a period of 8 years. AR 39-40. He was ordered to active duty in 2003. Compl. ¶ 6. On February 22, 2006, just one month prior to receiving formal notification that his unit was to be deployed to Iraq, Rogowskyj applied to be discharged on the basis of conscientious objection. AR 28.

On March 20, 2006, an Air Force Chaplain, Captain Daniel W. Thompson, interviewed Rogowskyj. AR 31. He opined that Rogowskyj "appears sincere in his idea that all forms of killing are wrong." AR 31. But Chaplain Thompson also opined that "[Rogowskyj's] current beliefs . . . have transpired through topical reading over the last several months, or perhaps through the realization that he may be going to war very soon. In my professional opinion, this young Marine is very confused theologically and his philosophical thoughts are quite disjointed." Id. (emphasis added).

On March 22, 2006, two Navy psychiatrists, Lieutenant Commander Rosemary Carr Malone and Lieutenant Commander David A. Weis, interviewed Rogowskyj. AR 32-33. They assessed Rogowskyj as "sincere and credible during the interview when he described his religious convictions[,]" AR 31, and assessed him to be "psychiatrically fit and suitable for all duty[,]" AR 33.

On April 10, 2006, Marine Corps Captain Christian T. Devine, the investigating officer appointed under MCO 1306.16E, conducted a hearing to consider Rogowskyj's application. AR

---

[3] Available for review at "http://doni.daps.dla.mil/Directives." Site last accessed December 28, 2006.

17-21.  Captain Devine interviewed Rogowskyj, and noted that "[h]is testimony overall seemed sincere, thorough, and well-formulated, but also at times verged off into strange and subjective tangents that seemed to circumvent direct questioning by incorporating textbook philosophical and spiritual rhetoric."  AR 20.  Notwithstanding these observations, Captain Devine recommended approval of Rogowskyj's petition for CO status.  AR 21.

Several levels of the Marine Corps command structure reviewed and endorsed the investigating officer's report on Rogowskyj's application.  The first endorsement was prepared by Major M. A. Stolzenburg, Commanding Officer, Company B, 4th Light Armored Reconnaissance Battalion, who recommended disapproval of Rogoswkyj's request.  AR 16. Major Stolzenburg concurred that Rogowskyj is a conscientious objector, but recommended against classifying Rogowskyj as "non-deployable."  Id.  Instead, Major Stolzenburg articulated his intent to assign Rogowskyj to a non-combatant billet as a Supply Clerk.  Id.  Major Stolzenburg grounded this decision in Rogowskyj's having "acknowledged . . . that he would be able to perform this duty without contravening his belief system."  Id.

In the second endorsement, Lieutenant Colonel W. S. Nagle, Commanding Officer, 4th Light Armored Reconnaissance Battalion, also recommended denial of Rogowskyj's request. AR 13-14.  Lieutenant Colonel Nagle noted that he was not convinced that Rogowskyj's "non-traditional" method of "religious/moral/philosophical discovery . . . was comparable in rigor and dedication to the processes by which traditional religious convictions are formulated."  Id. Lieutenant Colonel Nagle also observed that "[t]he timing of [Rogowskyj's] development of beliefs and submission of application is suspiciously parallel with the unit's mobilization warning and notification . . . ."  Id.

6

In the third endorsement, Major General D. V. Odell, Commanding General, 4th Marine Division, concurred with Lieutenant Colonel Nagle's recommendation and with Chaplain Thompson's assessment.  AR 12.  Consistent with Chaplain Thompson's evaluation, Major General Odell noted that Rogowskyj "is confused theologically" and recommended denial of Rogowskyj's request for CO status.  Id.

On August 30, 2006, Rogowskyj submitted a 4-page rebuttal to challenge various statements in the endorsements.  AR 5-8.  On September 29, 2006, the Conscientious Objector Screening Board of the Marine Corps, at the direction of the Commandant of the Marine Corps, convened to consider Rogowskyj's application. AR 4.  After considering the materials submitted by Rogowskyj and the various reports and endorsements compiled during the investigative process, the Board made the following findings:

> [The Board] unanimously decided that Lance Corporal Rogowskyj failed to provide clear and convincing evidence that his claims of objection to war in any form were sincere and deeply held and that they were the primary controlling force in his life.  Further, the board believed that the timing of Lance Corporal Rogowskyj's request, coming after notification of his unit's combat mobilization, was simply a means to avoid a combat deployment to Iraq.

AR 2.  Accordingly, on October 6, 2006, the Board, on behalf of the Commandant of the Marine Corps, denied Rogowskyj's request for CO status.  Id.

## ARGUMENT

### I.    The Standard Of Review Is Narrow And Deferential

There is no constitutional right to conscientious objector status.  Gillette v. United States, 401 U.S. 437, 460-61 (1971); see also In re Summers, 325 U.S. 561 (1945) (recognizing that under the Selective Training and Service Act of 1940, conscientious objectors to participation in

war in any form are "permitted to do non-war work of national importance" only "by the grace of Congressional recognition of their beliefs.") (citation omitted).  Nor is there a statutory right to conscientious objector status.[4]  For voluntary enlistees like Rogowskyj, "discharge [of a conscientious objector] from military service is available only because of a privilege granted by the executive branch of the federal government . . . ."  See Nurnberg v. Froehlke, 489 F.2d 843, 849 (2d Cir. 1973); United States v. MacIntosh, 283 U.S. 605 (1931); DeWalt v. Commanding Officer, 476 F.2d 440, 442 (5th Cir. 1973); Brooks v. United States, 147 F.2d 134 (2d Cir.) cert. denied, 324 U.S. 878 (1945).

"The courts are ill-equipped to resolve controversies arising from the use of discretionary powers specifically designed to provide military authorities with the freedom and flexibility needed to establish and maintain a well-trained and well-disciplined armed force."  Dilley v. Alexander, Jr., 603 F.2d 914, 920 (D.C. Cir. 1979) (internal citation omitted).  Accordingly, courts afford military personnel decisions substantial deference.  See, e.g., Piersall v. Winter, 435 F.3d 319 (D.C. Cir. 2006) (review of military corrections board decision subject to a particularly deferential standard of review).  A denial of conscientious objector status is considered under the even-more-deferential "basis in fact" standard.  United States ex rel. Barr v. Resor, 443 F.2d 707, 708 (D.C. Cir. 1971).  This standard has been called the "narrowest review known to the law." Woods v. Sheehan, 987 F.2d 1454, 1456 (9th Cir. 1993).

Here, the Commandant's judgment must be sustained if the Court can discern any "basis in fact" for it.  Silverthorne v. Laird, 460 F.2d 1175, 1179 (5th Cir. 1972) (citing Estep v. United

---

[4] 50 U.S.C. Appx. 456(j) (the Selective Service statutes) exempt conscientious objectors from induction into military service.  But for volunteers, such as Rogowskyj, conscientious objector status is provided by regulation only.

States, 327 U.S. 114, 122, (1946)); see also Nicholson v. Brown, 599 F.2d 639, 646 (5th Cir. 1979) (noting that the touchstone used to measure arbitrariness is whether the decision had any "basis in fact," the "narrowest standard of review known to the law.").  Courts reviewing decisions related to conscientious objector applications are admonished not to "[substitute] their judgments on the weight of the evidence for those of the designated agencies."  Witmer v. United States, 348 U.S. 375, 380-81 (1955).  The military's denial of a request for discharge should be sustained, so long as the agency can adduce "some proof that is incompatible with the applicant's claims."  Dickinson v. United States, 346 U.S. 389, 396 (1953).  Where the issue involves the sincerity of the applicant, the record is reviewed for "some inference of insincerity or bad faith."  Witmer, 348 U.S. at 382.

## II.    The Conscientious Objector Status Screening Board's Decision, Adopted By the Commandant of the Marine Corps, Is Amply Supported By Facts in the Administrative Record.[5]

The Marine Corps' procedure for evaluating CO claims provides for the discharge of a Marine who can demonstrate, by clear and convincing evidence, the following three requirements: (1) that he is conscientiously opposed to participation in war in any form; (2) that his opposition is founded on religious training and beliefs; and (3) that his position is sincere and deeply held.  See also Gillette v. United States, 401 U.S. 437 (1971); Welsh v. United States, 398 U.S. 333 (1970); United States v. Seeger, 380 U.S. 163, (1965); Silverthorne, 460 F.2d at 1179. Here, the administrative record considered by the Board discloses several facts which, taken

---

[5] Rogowskyj only challenges the legal sufficiency of the Commandant's denial of his request for CO status.  See Petition, ¶ 24.  Rogowskyj does not challenge the validity of the procedures by which that decision was made, nor does he allege a violation of the process set forth in MCO 1306.16E.  See id.  The Respondent limits his argument accordingly.

together, provide the requisite "basis in fact" to sustain the denial of Rogowskyj's petition.

Specifically, the Board concluded that Rogowskyj had not established status as a CO by clear and

convincing evidence.  AR 1.  The Board made two findings in support of its decision:

> (1) Rogowskyj failed to provide clear and convincing evidence that his claims of objection to war in any form were sincere and deeply held, and that they were the primary controlling force in his life; [and]
>
> (2) [T]he timing of . . . Rogowsky's request, coming after notification of his unit's combat mobilization, was simply a means to avoid a combat deployment to Iraq.

AR 2.  Because both of these findings have a "basis in fact" in the record, the Board's decision

should be sustained.

Several facts and opinions articulated during the investigation of Rogowskyj's claim

support the Board's decision.  First, Chaplain Thompson noted that although Rogowskyj's

"convictions appear strong," "this young Marine is very confused theologically and his

philosophical thoughts are quite disjointed."  AR 31.  The Investigating Officer, Captain Devine,

echoed this assessment:

> [Rogowskyj's testimony overall seemed sincere, thorough, and well-formulated, but also at times verged [sic] off into strange and subjective tangents that seemed to circumvent direct questioning by incorporating textbook philosophical and spiritual rhetoric.

AR 17, ¶ 7.i.  Furthermore, Captain Devine noted that when he asked Rogowskyj how he would

react in specific life-or-death scenarios, "[Rogowskyj] did not directly choose to answer those

questions stating that he could not begin to speculate on what he would do in 'fight or flight'

situations - that he would just act pending [sic] on the situation."  Id.  Thus, the Chaplain and

Investigating Officer who discussed Rogowskyj's beliefs with him both assessed his beliefs –

though evidently sincere – as not deeply held.

The assessment that Rogowskyj's beliefs were not deeply held was further elucidated by the endorsing officers who considered his petition. Major Stolzenburg, Rogowskyj's Company Commander, noted that although Rogowskyj "refuses to participate" in weapons training, "[h]e has acknowledged . . . that he would be able to perform [duties as a Supply Clerk] without contravening his belief system." AR 16. Rogowskyj attempted to explain away this statement in his rebuttal of August 30, 2006, stating that ". . . it did not occur to me at the time that supply is responsible for providing ammunition, which directly contributes to violence." AR 16.[6] Thus, Major Stolzenburg's comments and Rogowskyj's rebuttal illuminate an important consideration for the Board – that Rogowskyj himself believes he can serve as a Supply Clerk, so long as he is not required to issue any Marines live ammunition. Such a concession is inconsistent with deeply-held religious imperatives that are the primary controlling force in an individual's life.

Lieutenant Colonel Nagle's and Major General Odell's second and third endorsements further validate the Board's denial of Rogowskyj's request. First, in considering the demonstrable proof supporting Rogowskyj's claim of conscientious objection, Lieutenant Colonel Nagle noted that:

> Rogowskyj's most tangible evidence of the outcomes of his belief is that he now volunteers at a homeless shelter, has become a vegetarian, and intends to lobby for an expansion of conscientious objector rights. While these are significant and charitable acts, they do not clearly demonstrate that his belief is the primary controlling force in his life, per [MCO 1306.16E].

AR 13; see also AR 12 (Major General Odell notes that Rogowskyj is "confused theologically"). Second, Lieutenant Colonel Nagle assessed that Rogowskyj's assertions regarding the manner in which he had developed his religious views was not "comparable in rigor and dedication to the

---

[6] Rogowskyj also affirmed that he "had yet to issue anyone live ammunition." AR 5-6.

processes by which traditional religious convictions are formulated." AR 14. This second

assessment is consistent with the evaluations of both Chaplain Thompson[7] and the Investigating

Officer, Captain Devine.[8] Third, Lieutenant Colonel Nagle noted that "[t]he timing of

[Rogowskyj's] development of beliefs and submission of application is suspiciously parallel with

the unit's mobilization warning and notification. . . ." AR 14.[9] While the timing of a request for

discharge is not itself ground for denial of a CO claim, it may serve as evidence of insincerity on

the part of the applicant. See Dietrich v. Tarleton, 473 F.2d 177, 179 n.6 (D.C. Cir. 1972)

(quoting Bortree, 445 F.2d at 784). The second and third endorsements thus elucidate the

suspicious timing of Rogowskyj's petition, as well as the absence of facts in the record to support

his request.

　　　　The opinions and recommendations of the investigating officer and the various endorsing

officers are forwarded up the chain of command to the office of the Commandant of the Marine

Corps for final decision. MCO 1306.16E ¶ 6. Here, the Commandant – through the

Conscientious Objector Status Screening Board – properly assessed the record evidence in

denying Rogowskyj's petition. As set forth by Chaplain Thompson, Captain Devine[10], and each

---

[7] "It is apparent that [Lance Corporal] Rogowskyj's justification has been percolated from his recent investigation into Easter[n] Religions, mysticism, and animism." AR 31 ¶ 1; but see id. ¶ 4 ("[T]his young Marine is very confused theologically and his philosophical thoughts are quite disjointed.").

[8] Noting that although Rogowskyj's testimony was well-formulated, his views are the product of "continuous spiritual self-indulgence and search for a universal spiritual utopia." See AR 20.

[9] The Notification of Activation is dated March 22, 2005. See Pet. Exhibit 8.

[10] Although he recommended approval of Rogowskyj's request, Captain Devine articulated grounds to believe Rogowskyj's religious beliefs were not deeply held. See AR 20-

of the endorsing officers, Rogowskyj failed to demonstrate that his religious beliefs were deeply

held, or were the product of sufficiently rigorous study.  Moreover, as properly noted by

Lieutenant Colonel Nagle, the timing of Rogowskyj's application was suspicious.  Thus, the

Board had ample evidence in the record to support its denial of Rogowskyj's request.

Contrary to Rogowskyj's assertions, the mere fact that some of those involved in the

process express differing views does not undermine the authority or validity of the final decision.

In Woods v. Sheehan, 987 F.2d 1454, 1459 ( 9th Cir. 1993), the chaplain found the petitioner's

opposition to war to be morally grounded, and the psychologist concluded that the petitioner was

sincere in his request for conscientious objector status, yet the investigating officer recommended

the application be denied.  The Court found that the Marine Corps had a "basis in fact" for

denying application despite the assessment that the petitioner was sincere in his request.

Similarly, in Hopkins v. Schlesinger, 515 F.2d 1224 (5th Cir. 1975), the chaplain, investigating

officer, company commander and battalion commander each recommended approval of

Hopkins's request for discharge, but the Army's Conscientious Objector Review Board denied

the discharge.  Id. at 1226-1228.  Notwithstanding the recommendations of various personnel in

Hopkins's chain of command, the court found that the facts and circumstances provided a basis

in fact for the Army Board's denial.  Id. at 1228.  Under the "basis in fact" test, disagreement

among those in the investigation and review process is not dispositive, or even relevant; the

Court's focus is properly on the existence of "some proof that is incompatible with the

applicant's claims."  Koh v. Sec'y of the Air Force, 719 F.2d 1384, 1385 (9th Cir. 1983).

Consequently, any assertion Rogowskyj might advance regarding the inconsistency among the

---

21.

recommendations of the Investigating Officer and the endorsing officers is simply of no moment.

Employing the extremely deferential standard of review that applies in this case, the Marine Corps' decision to deny Rogowskyj's conscientious objector application has an ample "basis in fact," and should be sustained.

## CONCLUSION

The Marine Corps' decision to deny Lance Corporal Rogowskyj's application for conscientious objector status was not arbitrary, and had more than ample basis in fact.  His petition for a writ of habeas corpus should therefore be denied.


Respectfully Submitted,


_____/s/_____
JEFFERY A. TAYLOR., D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
DIANE SULLIVAN, D.C. Bar # 12765
Assistant United States Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C.  20530

OF COUNSEL:
Lieutenant Commander Thomas F. Leary
Department of the Navy
Office of the Judge Advocate General
General Litigation Division
1322 Patterson Avenue SE
Washington, D.C. 20374-5066







**DEPARTMENT OF THE NAVY**
**HEADQUARTERS UNITED STATES MARINE CORPS**
**WASHINGTON, DC 20380**

MCO 1306.16E
MPP-39/3
21 Nov 1986

<u>MARINE CORPS ORDER 1306.16E</u>

From:   Commandant of the Marine Corps
To:     Distribution List

Subj:   Conscientious Objectors

Ref:    (a) MCO 1900.16C
        (b) 38 U.S.C. Section 3103

Encl:   (1) Definitions
        (2) Required Information to be Supplied by Applicants
            for Discharge or Noncombatant Service
        (3) Summary Sheet for Review of Conscientious
            Objector Application
        (4) Privacy Act Statement
        (5) Counseling Concerning Veterans Administration
            Benefits
        (6) Sample Appointing Order
        (7) Guide to the Investigating Officer
        (8) Sample Investigating Officer's Report
        (9) Counseling Concerning Designation as a
            Conscientious Objector
        (10) Selective Service Procedures

1.  <u>Purpose</u>.  To provide current policy and procedures
concerning conscientious objection applicable to all Marines.

2.  <u>Cancellation</u>.  MCO 1306.16D.

3.  <u>Definitions</u>.  Definitions of specific terms used in this
Order are from the references and are found in enclosure (1).

4.  <u>Policy</u>

    a.  Conscientious objection does not exempt a Marine from
active military service.  However, to preclude a conflict
between the needs of the service and the necessity to respect
an individual's religious training and beliefs, no person with
beliefs or convictions which would interfere with unrestricted
assignments, regardless of Selective Service System
classification, will be accessed into the Marine Corps.

    b.  The person seeking conscientious objector status bears
the initial responsibility of presenting evidence which
demonstrates a sincere opposition to war in any form based upon
religious training and belief.  Once this responsibility is
met, conscientious objector status will be granted unless the
Government can establish a rational basis in fact for denying
the application.  The claimant must request either separation

PCN 102 010300 00

*Exhibit A*

MCO 1306.16E
21 Nov 1986

based on conscientious objection (1-0) or assignment to noncombatant training and service based on conscientious objection (1-A-O).

c. A Marine who possesses qualifying beliefs which became fixed or crystallized <u>before</u> entering military service is not eligible for conscientious objector status. The Government bears the responsibility of demonstrating this disqualification.

d. The administrative discharge of Marines prior to completion of an obligated term of service is at the discretion of the Commandant of the Marine Corps (CMC) based on the facts and circumstances of each case. If possible, after classification as a conscientious objector, a request for relief from, or restriction of, military duties will be approved.

e. Because of the personal and subjective nature of conscientious objection, the existence, honesty, and sincerity of asserted conscientious objector beliefs are difficult to determine using any set of rigid standards. Requests for discharge or assignment to noncombatant duties based on conscientious objection will, therefore, be handled on an individual basis with the final determination made per the facts and circumstances in the particular case and the policy and procedures set forth in this Order.

5. <u>Criteria</u>

a. The criteria set forth in this Order provide guidance in considering applications for separation or for assignment to noncombatant duties based on conscientious objection.

b. Consistent with the policy contained in the references and this Order, an application for classification as a conscientious objector may be approved for any individual:

(1) Who is conscientiously opposed to participation in war in any form;

(2) where opposition is founded on religious training and belief; and

(3) whose position is sincere and deeply held.

c. <u>Religious Training and Belief</u>

(1) The applicant may express the belief that forms the basis for the application on religious, moral, or ethical grounds. However expressed, this belief must be the primary controlling force in the applicant's life and must be of the same strength and depth as found in traditional religious convictions.

(2) The applicant must show that expediency or the avoidance of military service is not the basis of the claim. A primary factor is the sincerity with which the belief is held.

2

MCO 1306.16E
21 Nov 1986

Great care is needed in seeking to determine whether the asserted beliefs are honestly and genuinely held. Impartial evaluation of the applicant's thoughts and actions, both past and present, will help determine the sincerity of the claim. The applicant's actions in all aspects of life should be consistent with the stated beliefs.

(a) Therefore, in evaluating an application, the conduct of the applicant, in particular the outward manifestation of the beliefs asserted, will be carefully examined and given substantial weight.

(b) Relevant factors considered in determining an applicant's claim of conscientious objection include: training in the home and church; general demeanor and pattern of conduct; participation in religious activities; whether ethical or moral convictions were gained through training, study, contemplation, or other activity comparable in rigor and dedication to the processes by which traditional religious convictions are formulated; credibility of the applicant; and credibility of persons supporting the claimant.

(3) Particular care must be exercised by individuals processing applications not to deny the existence of bona fide beliefs that are incompatible with their own.

(a) Church membership or adherence to particular theological tenets is not required to warrant separation or assignment to noncombatant training and service for conscientious objectors.

(b) Mere affiliation with a church or other group which advocates conscientious objection as a tenet of its creed is not necessarily determinative of an applicant's position or belief.

(c) Conversely, affiliation with a church or group which does not teach conscientious objection does not necessarily rule out adherence to conscientious objection beliefs in any given case.

(d) Where an applicant is or has been a member of a church, religious organization, or religious sect, and where the claim of conscientious objection is related to such membership, inquiry may properly be made as to the fact of membership, and the teaching of the church, religious organization, or religious sect, as well as the applicant's religious activity. However, the fact that the applicant may disagree with, or not subscribe to, some of the tenets of the church does not necessarily discredit the claim. The personal convictions of an individual will be controlling as long as they derive from the individual's moral, ethical, or religious beliefs.

(e) Moreover, an applicant who is otherwise eligible for conscientious objector status may not be denied that status simply because the conscientious objection influences the views concerning the nation's domestic or foreign policies. The task is to decide whether the beliefs professed

MCO 1306.16E
21 Nov 1986

are sincerely held and whether they govern the claimant's actions both in word and deed. A recommendation for denial of a claimant's application should be made when it can be determined that the <u>sole</u> basis for the claim rests upon political rather than religious, moral, or ethical beliefs.

d. An applicant claiming 1-O status should not be granted 1-A-O status as a compromise. This does not prohibit the granting of 1-A-O status when the record makes it clear that such a status is appropriate, notwithstanding the Marine's initial application.

e. The provisions of the Order will not be used to effect the administrative separation of a Marine who does not qualify as a conscientious objector or in lieu of other administrative separation procedures set forth in reference (a). A Marine determined not qualified for conscientious objector status, but whose separation would otherwise appear to be in the best interest of the Marine Corps, should be considered applicable for administrative separation under the provisions of reference (a). If a negative recommendation to the claimant's application for conscientious objector status is rendered, forwarding endorsements should not contain statements concerning the type of discharge the applicant desires or the previous nature of service.

6. <u>Procedures</u>

a. Marines seeking separation or assignment to noncombatant duties because of conscientious objection will submit an application requesting such action. The application will state whether they are seeking a discharge or assignment to noncombatant duties and will include the following items:

(1) The personal information required by enclosures (2) and (3) of this Order. Before providing this information, the Marine will be advised of the Privacy Act, and will read and sign enclosure (4) of this Order.

(2) Any other items which the Marine desires to submit in support of the case.

b. Before processing the application, the Marine will be advised of the provisions of reference (b) concerning Veterans Administration (VA) benefits and will be required to sign the statement appearing in enclosure (5) (VA benefits) of this Order.

c. The applicant shall be personally interviewed by a chaplain who shall submit a written opinion as to; (1) the nature and basis of the applicant's claim, and (2) the applicant's sincerity and depth of conviction. The chaplain's report shall include specific reasons for the conclusions. In addition, the applicant will be interviewed by a clinical psychologist or psychiatrist (or a physician if neither of the preceding is reasonably available) who shall submit a written report of psychiatric evaluation indicating the presence or

MCO 1306.16E
21 Nov 1986

absence of any psychiatric disorder which would warrant
treatment or disposition through medical channels, or such
personality disorder as to warrant recommendation for
appropriate administrative action.  These reports will become
part of the application.  If the applicant refuses to participate
or is uncooperative or unresponsive in the course of the
interviews, this fact will be included in the statement and
report filed by the chaplain and clinical psychologist or
psychiatrist (or physician).

    d.  The commander exercising Special Court-Martial
jurisdiction over the applicant will appoint an officer in the
grade of captain or higher, knowledgeable in the policies and
procedures relating to conscientious objector matters, to
investigate the applicant's claim.  The investigating officer
will not be an individual in the chain of command of the
applicant.  If the applicant is a commissioned officer, the
investigating officer will be senior in both temporary and
permanent grades to the applicant.  Enclosure (6) is a sample
Appointing Order.

    e.  The investigating officer will conduct the
investigation, hold a hearing on the application, and prepare
the investigative report.  This report, along with the
individual's application, administrative documents, the
chaplain's and doctor's reports, and any other items submitted
by the applicant will constitute the record of the case.  The
investigating officer's recommendation will be based on the
entire record and not merely on the evidence produced at the
hearing.  A copy of the investigating officer's report will be
provided to the applicant when the record is forwarded to the
commander who appointed the investigating officer.  The
applicant will be informed of the right to submit a rebuttal to
the report within 7 days.  The first forwarding endorsement
will include a statement from the applicant acknowledging
receipt of a copy of the investigating officer's report and
will contain either a rebuttal to the report or a statement
that no rebuttal will be submitted.  Enclosure (7) is a guide
to the investigating officer, and enclosure (8) is a sample
Investigating Officer's Report.

    f.  The record of the case will be forwarded to the
commander who appointed the investigating officer.  It will be
reviewed for completeness and legal sufficiency.  If necessary,
the case may be returned to the investigating officer for
further action.  When the record is complete, the commander
will send it, with personal recommendation for disposition and
supporting rationale, via the chain of command to the CMC (MM)
for final determination.  Each officer in the chain of command
will provide specific recommendation.

    g.  The commanding general or commanding officer providing
the final endorsement and recommendation will refer a copy of
all material to be forwarded to the CMC (MM) to the applicant.
The applicant will be informed of the right to submit a rebuttal
to the additional material within 7 days.  On receipt of the
applicant's statement or expiration of the 7-day period, the

5

MCO 1306.16E
21 Nov 1986

package will be endorsed either "Forwarded" or "Forwarded, no comments have been received" as appropriate.

h. A final decision based on the entire record will be made by the CMC (MM). Any additional information, other than the record of the case with endorsements, and the official service record of the applicant, which is adverse to the applicant, will be made part of the record, and the applicant will be given an opportunity to refute or comment on the material before a final decision is reached. The reason for an adverse decision will be made a part of the record and will be provided to the individual.

i. Processing of applications need not be stopped by the unauthorized absence of the applicant, by the institution of disciplinary action, or by administrative separation proceedings against the applicant. An applicant whose request for classification as a conscientious objector has been approved will not be discharged until disciplinary action has been resolved.

j. Until a final decision is made by the CMC (MM) every reasonable effort will be made to assign applicants to duties within the command which conflict as little as possible with their asserted beliefs. Applicants will conform to the normal requirements of the command and perform satisfactorily such duties as they may be assigned. Applicants may be disciplined for violations of the Uniform Code of Military Justice (UCMJ) while awaiting action on their applications.

k. A Marine reservist who applies for conscientious objector status will not normally be ordered to involuntary active duty until the application is resolved. Proper resolution of the application is best accomplished within the Reserve unit. During the period of application the provisions of paragraph 7j above apply. If a reservist applies for conscientious objector status after notification of the commanding officer's intent to recommend involuntary active duty, and in the commanding officer's best judgment the application is without merit and simply a means to avoid involuntary active duty, the commanding officer may recommend to the CMC (RES) that the application be held in abeyance, and the Marine ordered to active duty. When the Marine reports as ordered, the application may be renewed and processed under this Order.

7. Classification

a. 1-0. An applicant requesting discharge, who is determined to be a 1-0 conscientious objector by the CMC (MM), will be discharged "For the Convenience of the Government" with an entry in the service record and on the discharge document reflecting the reason for separation as conscientious objection. The type discharge issued will be based on the applicant's service record, and the provisions of reference (b). Pending separation, the applicant will continue to be assigned duties that provide the minimum practical conflict with the professed beliefs. The applicant will conform to the

6

MCO 1306.16E
21 Nov 1986

normal requirements of the command and perform satisfactorily those duties assigned. An applicant may be discharged for violations of the UCMJ while awaiting discharge per this Order, in addition to any other disciplinary measures deemed appropriate. An applicant who is awarded a punitive discharge or who is properly processed for another type of administrative discharge, while awaiting final action on a conscientious objector application, will be given the punitive or other administrative discharge as appropriate.

    b. <u>1-A-O</u>

      (1) Applicants requesting assignment to noncombatant duties who are determined to be class 1-A-O conscientious objectors will be reassigned to appropriate duties, as indicated below, or discharged at the discretion of the CMC. Applicants will execute the statement contained in enclosure (9) of this Order.

      (2) Class 1-A-0 conscientious objectors, if retained in the service, will not be assigned to combat or combat support occupational fields. Instead, they will be assigned to appropriate duties, via on-the-job training, within the combat service support occupational fields.

      (3) After receiving the appropriate military occupational speciality (MOS), conscientious objectors will be used in that MOS or in other duties consistent with the definition of noncombatant duties provided in this Order. Determination of these duties is the responsibility of the command to which the conscientious objector is assigned. Nothing in this Order precludes the assignment of conscientious objectors to Fleet Marine Force units, overseas, or in combat areas.

      (4) The disposition of Marine officers classified as conscientious objectors will be determined by the CMC (MM).

    c. Marines assigned noncombatant duties and those assigned normal duties, by reason of the disapproval of their application, will conform to the normal requirements of their command and perform assigned duties satisfactorily. Violations of the UCMJ by these members will be treated as in any other situation.

8. <u>Selective Service System</u>. Enclosure (10) contains procedures for processing application for conscientious objector status in cases involving the Selective Service System.

9. <u>Promotion</u>. Promotion of a conscientious objector is permitted provided the Marine is otherwise qualified. A Marine's status as a conscientious objector, in itself, will not affect promotion nor will special provisions in existing promotion procedures be established.

MCO 1306.16E
21 Nov 1986

      10.  <u>Leave</u>.  An applicant who has requested conscientious objector status, either 1-0 or 1-A-0, is not eligible for appellate leave pending resolution of the application.  Annual leave may be granted per applicable directives.

      11.  <u>Reserve Applicability</u>.  This Order is applicable to the Marine Corps Reserve.

**GAIL M. REALS**
**By direction**

DISTRIBUTION:  A

    Copy to:  8145001
           7000027 (20)

MCO 1306.16E
21 Nov 1986

<u>DEFINITIONS</u>

1. <u>Conscientious Objection</u>. A firm, fixed, and sincere objection to participation in war in any form or the bearing of arms, by reason of religious, moral or ethical training, and belief.

2. <u>Conscientious Objector</u>

   a. <u>Class 1-0 Conscientious Objector</u>. A member who, by reason of conscientious objection, sincerely objects to participation of any kind in war in any form.

   b. <u>Class 1-A-0 Conscientious Objector</u>. A member who, by reason of conscientious objection, sincerely objects to participation as a combatant in war in any form, but whose convictions are such as to permit military service in a noncombatant status.

3. <u>Religious Training and Belief</u>. Belief in an external power or being or deeply held moral or ethical belief, to which all else is subordinate or upon which all else is ultimately dependent, and which has the power or force to affect moral well-being. The external power or being need not be of an orthodox deity, but may be a sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of another, or, in the case of deeply held moral or ethical beliefs, a belief held with the strength and devotion of traditional religious conviction. The term "religious training and belief" may include solely moral or ethical beliefs even though the applicant may not characterize these beliefs as "religious" in the traditional sense, or may expressly characterize them as not religious. The term "religious training and belief" does not include a belief which rests solely upon considerations of policy, pragmatism, expediency, or political views.

4. <u>War in Any Form</u>. The term "war in any form" will be interpreted in the following manner:

   a. Individuals who desire to choose the war in which they will participate are not conscientious objectors under the law. Their objection must be to all wars rather than a specific war;

   b. A belief in a theocratic or spiritual war between the powers of good and evil does not constitute a willingness to participate in "war" within the meaning of this Order;

   c. A willingness to use force to protect one's self, home, or family is not considered inconsistent with a conscientious objection to participation in wars.

5. <u>Noncombatant Service or Noncombatant Duties</u>

   a. Any other assignment, the primary function of which does not require the use of arms in combat, provided that such other assignment is acceptable to the individual concerned and

ENCLOSURE (1)

MCO 1306.16E
21 Nov 1986

does not require that individual to bear arms or to be trained in their use.

b. Service aboard an armed ship or aircraft or in a combat zone shall not be considered to be combatant duty unless the individual concerned is personally and directly involved in the operation of weapons.

6. <u>Noncombatant Training</u>. Any training which is not concerned with the study, use, or handling of arms or weapons.

ENCLOSURE (1)

2

MCO 1306.16E
21 Nov 1986

## REQUIRED INFORMATION TO BE SUPPLIED BY APPLICANTS
## FOR DISCHARGE OR NONCOMBATANT SERVICE

Each person seeking release from active service from the Marine Corps, or assignment to noncombatant duties, as a conscientious objector, will provide the following information in the format as shown below.  The individual may submit such other information as desired.

A.   General Information Concerning Applicant.

1.  Full name

2.  Social security number

3.  Selective service number (if applicable)

4.  Service address

5.  Permanent home address

6.  Name and address of each school and college attended (after age 16) together with the dates of attendance and the type of school (public, church, military, commercial, etc.).

7.  A chronological list of all occupations, positions, jobs, or types of work, other than as a student in school or college (after age 16), whether for monetary compensation or not.  Include the type of work, name of employer, address of employer, and the from/to date for each position or job held.

8.  All former addresses (after age 16) and dates of residence at those addresses.

9.  Parent's names and address.  Indicate whether they are living or deceased.

10.  The religious denomination or sect of both parents.

11.  Was application made to the Selective Service System (local board) for classification as conscientious objector prior to entry into the Marine Corps?  To which local board?  What decision was made by the board, if known?  If application was not made, explain why not.

12.  When the applicant has served less than 180 days in the military service, a statement by the applicant as to whether the applicant is willing to perform work under the Selective Service System civilian work program for conscientious objector.  Also a statement of the applicant as to whether

ENCLOSURE (2)

MCO 1306.16E
21 Nov 1986

the applicant consents to the issuance of an
order for such work by the applicant's local
Selective Service Board.

B. <u>Training and Belief</u>

1. A description of the nature of the belief which
requires the applicant to seek separation from the
Marine Corps or assignment to noncombatant training
and duty for reasons of conscience.

2. An explanation as to how the applicant's beliefs
changed or developed, to include an explanation as
to what factors (how, when, and from whom or from
what source training received and belief acquired)
caused the change in or development of
conscientious objection beliefs.

3. An explanation as to when these beliefs became
incompatible with military service, and why.

4. An explanation as to the circumstances, if any,
under which the applicant believes in the use of
force, and to what extent, under any foreseeable
circumstances.

5. An explanation as to how the applicant's daily life
style has changed as a result of the applicant's
beliefs, and what future actions are planned to
continue to support these beliefs.

6. An explanation as to what in the applicant's
opinion most conspicuously demonstrates the
consistency and depth of beliefs which gave rise
to the claim.

C. <u>Participation in Organizations</u>

1. Information as to whether applicant has ever been
a member of any military organization or
establishment before entering upon the present term
of service. If so, the name and address of such
organization will be given together with reasons
why the applicant became a member.

2. A statement as to whether applicant is a member
of a religious sect or organization. If so, the
statement will show the following:

a. The name of the sect, and the name and location
of its governing body or head, if known.

b. When, where, and how the applicant became
a member of said sect or organization.

ENCLOSURE (2)

2

MCO 1306.16E
21 Nov 1986

    c.  The name and location of any church, congregation, or meeting which the applicant customarily attends, and the extent of the applicant's active participation therein.

    d.  The name, title, and present address of the pastor or leader of such church, congregation, or meeting.

    e.  A description of the creed or official statements, if any, and if they are known to the applicant, of said religious sect or organization in relation to participation in war.

    3.  A description of applicant's relationship with and activities in all organizations with which the applicant is or has been affiliated, other than military, political, or labor organizations.

D.  <u>References</u>

Any additional information; e.g., letters, references, official statements, or organizations to which the applicant belongs or refers in the application, that the applicant desires to be considered by the authority reviewing the application.  The burden is on the applicant to obtain and forward such information.

ENCLOSURE (2)

3

MCO 1306.16E
21 Nov 1986

SUMMARY SHEET FOR REVIEW OF CONSCIENTIOUS OBJECTOR APPLICATION


_____Date_____

1.  Date of Application    2.  Unit


_____

3.  Name and Grade    4.  SSN/MOS    5.  Date of Birth


_____

6.  Marital Status    7.  Selective Service System No.
    M_____  S____

_____

8.  Applicant Requests  1-0 Discharge_____


_____

9.  Willing to perform alternate civilian service
                          Yes_____  No_____

_____

10.  Civilian Occupation    11.  PEBD    12.  Entered Service on
                                   _____  By enl
                                   _____  Induction
                                   _____  Other
                                   _____ Years _____

_____

13.  Date entered    14.  Months of    15.  EAS
     active duty          active duty


_____

16.  Decorations, Commendations


_____

17.  Applicant's Religion


_____


_____        _____
WITNESS' SIGNATURE          APPLICANT'S SIGNATURE


            _____
            DATE


                                        ENCLOSURE (3)

                    1

MCO 1306.16E
21 Nov 1986

PRIVACY ACT STATEMENT

---

DATA REQUIRED BY THE PRIVACY ACT OF 1974
(5 U.S.C. Section 552a)

---

PART A - GENERAL

---

1.  Requiring Document:  MCO 1306.16E

2.  HQMC Sponsor Code:  MPP-39

3.  Descriptive Title:  Conscientious Objector Information

---

PART B - INFORMATION TO BE FURNISHED TO INDIVIDUAL

---

1.  Authority:

    50 U.S.C. Appx section 456(j)
    Executive Order 9397, 22Nov43 (Social Security Number)

---

2.  Principal Purpose:  Used by officials within the Marine Corps
    to determine whether conscientious objector status is
    appropriate.

---

3.  Routine Use:  The information collected will be used by
    appropriate authority to grant or deny the requested
    conscientious objector status.

---

4.  Mandatory or Voluntary Disclosure and Affect on Individual
    Not Providing Information:
    Disclosure of information is voluntary.  If information is
    not furnished, applicant may not receive the sought for
    status.

---

PART C - STATEMENT OF UNDERSTANDING

---

    I have read and understand this statement.  I understand
that I will have the opportunity to review the completed
investigation before it is submitted to the convening
authority.


_____    _____        _____
Date         Signature                    SSN

ENCLOSURE (4)

1

MCO 1306.16E
21 Nov 1986

COUNSELING CONCERNING
VETERANS ADMINISTRATION BENEFITS

    I have been advised of the provisions of 38 U.S.C. Section
3103 concerning possible nonentitlement to benefits
administered by the Veterans Administration due to discharge
from the military service as a conscientious objector under
certain conditions.  I understand that a discharge as a
conscientious objector, who refuses to perform military duty or
otherwise to comply with lawful orders of competent military
authority, shall bar all rights, based upon the period of
service from which discharged, under any laws administered by
the Veterans Administration except my legal entitlement (if any)
to any war risk Government (converted) or National Service Life
Insurance.  The only exception is in cases in which it is
established, to the satisfaction of the Veterans Administration,
that I was insane.

_____                    _____
WITNESS' SIGNATURE                             APPLICANT'S SIGNATURE

ENCLOSURE (5)

1

MCO 1306.16E
21 Nov 1986

<u>SAMPLE APPOINTING ORDER</u>

HEADING

From:  Commanding Officer
To:    Captain_____000 00 00 00/0000 USMCR

Subj:  INVESTIGATION TO INQUIRE INTO THE APPLICATION FOR
       CONSCIENTIOUS OBJECTOR STATUS 1-0/1-A-O; CASE OF LANCE
       CORPORAL_____ 000 00 00 00/0000 USMC

Ref:   (a) MCO 1306.16E
       (b) MCO 1900.16C

1.  Effective this date, Captain_____, United States
Marine Corps Reserve, is appointed as Hearing Officer, for the
purpose of conducting an investigation, per the provisions
contained in references (a) and (b), to inquire into all the
circumstances connected with the claim of Lance Corporal
_____ as a conscientious objector.

2.  You are to review the regulations as set forth in
references (a) and (b) and afford the applicant every right and
assistance as set forth therein.  After conducting a thorough
investigation into all the facts concerning this case and
holding a hearing as set forth in reference (a), you will
submit your report and documentation to this Headquarters, with
conclusions and recommended disposition.

//Signature//

ENCLOSURE (6)

1

MCO 1306.16E
21 Nov 1986

GUIDE TO THE INVESTIGATING OFFICER

1.  On being appointed to investigate a claim of conscientious objection, the investigating officer will become familiar with this Order, and as necessary, obtain legal advice from the local staff judge advocate or legal officer.

2.  The investigating officer must keep in mind that the final decisions will be made without the benefit of observing either the applicant or any of the witnesses.  With this in mind, every effort should be made to compile as thorough and clearly written record as possible.

3.  As part of the investigation, the investigating officer will seek information from commanders, supervisors, co-workers, clergy, friends, records, and any other sources which may contribute to the final recommendation.  Information so obtained will be presented to the applicant at the hearing.  At a minimum, the investigating officer should include in the investigative report, and should present to the applicant at the hearing, the results of the investigating officer's conversations with the applicant's immediate work supervisor, immediate commanding officer, at least two individuals who are billeted with the applicant, if available, and the investigating officer's views on whether the service record book of the applicant contains information which either supports or tends to contradict the applicant's claim of conscientious objection.

4.  The investigating officer will conduct a hearing on the application.  The purpose of the hearing is to afford the applicant an opportunity to present any evidence desired in support of the application; to enable the investigating officer to ascertain and assemble all relevant facts; to create a comprehensive record; and to facilitate an informed recommendation by the investigating officer and an informed decision on the merits of the application by higher authority.

    a.  If applicants desire, they shall be entitled to be represented by counsel, at their own expense, who shall be permitted to be present at the hearing, assist applicants in the presentation of their cases, and examine all items in the file.

    b.  Should applicants refuse to make a statement, orally or in writing, during the conduct of the hearing, they will submit a signed statement in their own handwriting that they have been afforded the opportunity to appear in person at the hearing with counsel retained by them, if desired, and that they refuse to make a statement.

    c.  In this regard, any failure or refusal of the applicant to submit to questioning under oath or affirmation before the investigating officer may be considered by the officer making a recommendation and evaluation of the applicant's claim.

ENCLOSURE (7)

MCO 1306.16E
21 Nov 1986

    d. If applicants fail to appear at the hearing without good cause, the investigating officer may proceed in their absence and the applicants will be deemed to have waived their appearance.

    e. The hearing will be informal in character and will not be governed by the rules of evidence employed by courts-martial, except that all oral testimony presented shall be under oath or affirmation. Any relevant evidence may be received. Statements obtained from persons not present at the hearing need not be made under oath or affirmation. The hearing is not an adversary proceeding.

    f. Commanders will render all reasonable assistance in making all military members of their command, requested by the applicant, available as witnesses.

    g. A verbatim record of the hearing is not required. If applicants desire such a record and agree to provide it at their own expense, they may do so. A verbatim record must be submitted in typewritten form, identifying the persons making each question, response, or statement. Tape recordings and other electronic or mechanical recordings are not acceptable as a verbatim record. If applicants elect to provide such a record, they shall make a copy thereof available to the investigating officer, at no expense to the Government, at the conclusion of the hearing. In the absence of a verbatim record, the investigating officer will summarize the testimony of witnesses and permit the applicant and counsel to examine the summaries and note for the record their differences with the investigating officer's summary. Copies of statements and other documents received in evidence will be made a part of the hearing record. The investigating officer has the responsibility for authenticating the hearing record, and that version is final as to the record of the testimony of the witnesses.

5. At the conclusion of the investigation, the investigating officer will prepare a written report which will contain the following:

    a. A statement as to whether the applicant appeared, whether the applicant was accompanied by counsel and, if so, the latter's identity, and whether the nature and purpose of the hearing were explained to the applicant and understood.

    b. A statement as to whether the applicant was advised of the right to have a verbatim record of the hearing, at own expense, and whether the applicant chose to or chose not to have a verbatim record of the hearing.

    c. Any documents, statements, and other material received during the investigation. These documents should include certified copies of pages 3, 5, 6, 8, 11, and 12 of the applicant's service record book.

    d. Summaries of the testimony of the witnesses presented (or a verbatim record of the testimony if such record was made).
ENCLOSURE (7)

MCO 1306.16E
21 Nov 1986

e.  A statement of the investigating officer's conclusions as to the underlying basis of the applicant's conscientious objection and the sincerity of the applicant's beliefs, including the reason for such conclusions and the facts upon which they were based.  The investigating officer should establish the presence/absence of the basic criteria listed in paragraph 5b of this Order.

f.  The investigating officer's recommendation for disposition of the case, including the reasons therefor (ensure compliance with paragraph 5e of this Order).  The actions recommended will be limited to the following:

(1) Denial of any classification as a conscientious objector; or

(2) Classification as 1-A-0 conscientious objector; or

(3) Classification as 1-0 conscientious objector.

g.  In the preparation of the investigative report, the investigating officer must keep in mind that bare conclusions regarding a particular applicant, the credibility, the sincerity or any other relevant factor, are of minimal assistance in reaching a determination whether to approve a particular application at the HQMC level.  The investigating officer should set forth observations, including a detailed statement of the efforts expended in investigating the application, to assist the ultimate decision maker in considering the application for conscientious objector status.

h.  The investigating officer's report, along with the individual's application, the chaplain's and doctor's report, and any other items submitted by the applicant in support of the case will constitute the record.  The investigating officer's conclusions and recommended disposition will be based on the entire record and not merely on the evidence produced at the hearings.  A copy of the report will be furnished to the applicant at the time it is forwarded to the commander who appointed the investigating officer, and the applicant will be informed of the right to submit a rebuttal to the report within 7 days.  The convening authority's forwarding endorsement will include a statement from the applicant acknowledging receipt of a copy of the investigating officer's report and contain either a rebuttal to the investigating officer's report or a statement that no rebuttal will be submitted.  See enclosure (8) for Sample Investigating Officer's Report.

ENCLOSURE (7)

3

MCO 1306.16E
21 Nov 1986

<u>SAMPLE INVESTIGATING OFFICER'S REPORT</u>

HEADING

<u>N O T I C E</u> - This sample is provided as a guide to the preparation of your report. It reflects the factual detail necessary to support logical conclusions. The evidence presented must support your recommendation for approval or disapproval of the application. Your recommendations will be based upon appropriate regulations and your perception of the applicant's beliefs.

From:   Captain _____ 000 00 00 00/0000 USMCR
To:     Commanding Officer, _____ , MCAS, El Toro, California 92709-6010

Subj:   REVIEW OF REQUEST FOR CONSCIENTIOUS OBJECTOR STATUS; CASE OF LANCE CORPORAL _____ 000 00 00 00/0000 USMC

Ref:    (a) MCO 1306.16E

Encl:   (1) Commanding Officer, _____ , Appointing Order
        (2) General Information Sheet and Request for Discharge as a Conscientious Objector
        (3) Chaplain's Interview dtd _____
        (4) Record of Psychiatric Examination dtd _____
        (5) Letter from _____ dtd _____
        (6) Letter from _____ dtd _____
        (7) Certified Copies of Lance Corporal _____ service record book, pages 3, 5, 6, 8, 11, and 12

1.  Pursuant to enclosure (1) and paragraph 6 of the reference, a hearing of the subject application was conducted at _____ (time/date). Present at the hearing were the applicant and the hearing officer, Captain _____, USMCR. (Name all witnesses here.)

2.  Applicant was advised of rights and examined all documents or information relevant to the application and reviewed enclosures (2) through (7) for content and accuracy.

3.  The applicant was advised of right to counsel and expressed understanding of the right to have an attorney present but desired to proceed with the hearing without counsel.

4.  The applicant was advised of the right to have a verbatim transcript of the hearing at applicant's own expense. The applicant was further advised that unless a qualified recorder was provided at the applicant's expense, the hearing would proceed and the hearing officer's version would be final as to testimony taken at the hearing. The applicant acknowledged

ENCLOSURE (8)

1


MCO 1306.16E
21 Nov 1986

understanding this right, the legal effect of proceedings
without a recorder and that the applicant wished to waive the
right to verbatim transcripts.  The applicant was advised that
the hearing could be continued to another date if additional
time was needed to obtain either counsel or a recorder.
Lance Corporal _____ again waived the right to an attorney
or a verbatim record.  The applicant was also advised and
acknowledged understanding the possible effects of discharge as
a conscientious objector.

5.  Lance Corporal _____ was thoroughly advised of the
nature and purpose of the hearing, and I am satisfied that the
applicant understood the advice.

6.  This report is submitted pursuant to paragraph 6e of the
reference.  The applicant was advised of the right to call
witnesses or present other supporting evidence as desired.  The
applicant was also advised that a delay in the hearing to
produce such witnesses could be obtained.  Lance Corporal
_____ desired to make a sworn statement on the (his/her)
behalf and answer the questions of the hearing officer (but)
and did (not) submit (any) additional evidence nor did the
applicant call any other witnesses.  (Name witnesses here.)
The statements contained in enclosures (2) through (7) were
also considered by the hearing officer in conjunction with the
hearing.

7.  A hearing was conducted in _____ in conference room on
(date) between the hours of ___ and ___.  During the hearing
the applicant expressed the reasons why a discharge was sought
from the U.S. Marine Corps.  The statement was (was not) in
consonance with opinions and background provided in enclosure
(2).  In summary (carefully summarize all evidence and the
testimony of each witness, for it is upon this information that
the applicant's case will be decided).

8.  Opinion and Conclusions.  I have arrived at the following
opinions and conclusions as a result of the hearing conducted
on (date) and based on review of the reference.

I consider Lance Corporal _____ (not) to be a conscientious
objector within the meaning of definition provided in the
reference.

    SET FORTH SPECIFIC RECOMMENDATIONS.  EACH RECOMMENDATION
SHOULD BE SUPPORTED BY SPECIFIC EVIDENCE OR TESTIMONY CITED
ABOVE.

9.  Based on the foregoing, I recommend that the applicant's
petition for discharge based on conscientious objection be
approved/disapproved.

10.  I certify that I have, this date, delivered to the
applicant a copy of the record of the case, as it now exists,
per paragraph 6e of the reference, and that the applicant has
been informed that 7 days from this date a rebuttal of the
record must be submitted to the convening authority, if

ENCLOSURE (8)

MCO 1306.16E
21 Nov 1986

desired.  (The convening authority's subsequent forwarding
endorsement on the record pursuant to paragraph 6f of the
reference, should include a signed statement from the applicant
acknowledging receipt of a copy of the investigating officer's
report with either a rebuttal to the report or a statement
that no rebuttal will be submitted.)


X.  X.  XXXXXXXXXXX


ENCLOSURE (8)

3

MCO 1306.16E
21 Nov 1986

COUNSELING CONCERNING
DESIGNATION AS A CONSCIENTIOUS OBJECTOR

    I have been counseled concerning designation as a
conscientious objector.  Based on my religious, moral or
ethical training, and belief, I consider myself to be a
conscientious objector within the meaning of statute and
regulations governing conscientious objectors and am
conscientiously opposed to participation in combatant duties
for the remainder of my term of service.  I fully understand
that on expiration of my current term of service.  I fully
understand that on expiration of my current term of service I
may not be eligible for voluntary enlistment, reenlistment,
or active service in the Armed Forces.


_____      _____
WITNESS' SIGNATURE           APPLICANT'S SIGNATURE


            _____
            DATE


ENCLOSURE (9)

1

MCO 1306.16E
21 Nov 1986

<u>SELECTIVE SERVICE PROCEDURES</u>

1.  No Marine whose beliefs existed before service is eligible
for classification as a conscientious objector if they failed
to request classification from, or if a request for
classification was denied by the Selective Service System.

2.  CMC (MM) will be notified when an inducted Marine:

    a.  Claims to have been classified as a conscientious
objector by the Selective Service System, but records do not so
indicate; or

    b.  Claims to have been erroneously denied Selective
Service System classification as a conscientious objector.

3.  In either case, CMC (MM) will contact the Selective Service
System to resolve the conflict.

4.  Pending this resolution, the commanding general of the
recruit depot will assign the Marine to a regular recruit
platoon, and the Marine will participate in all recruit
training except that about the use or handling of weapons.

5.  If the Marine's claim is true, Headquarters Marine Corps
will select either separation as an erroneous enlistment or
assignment to noncombatant duties based on the specific
circumstances of the case.

6.  If the claim is untrue, Headquarters Marine Corps will
notify the Marine through the commanding general of the recruit
depot, and the Marine will return to full training.

ENCLOSURE (10)

1

HEADQUARTERS MARINE CORPS ROUTING SHEET (5211)
NAVMC HQ – 333 (REV_M&RA)

| | 1. Date: 29 September 2006 |
|---|---|

**2. Operations Code**

| | |
|---|---|
| N - ORIGINATOR OR OFFICE AFFIXING ROUTING SHEET | G - INFORMATION |
| | H - RETURN TO: |
| A - APPROPRIATE ACTION | I - INITIAL |
| B - GUIDANCE | J - DISPOSITION |
| C - SIGNATURE | K - DECISION |
| D - COMMENT | L - RETENTION |
| E - RECOMMENDATION | O - OTHER |
| F - CONCURRENCE | |

Rm.:

**3. SUBJECT:**
REQUEST FOR CLASSIFICATION 1-0 CONSCIENTIOUS OBJECTOR STATUS FOR LANCE CORPORAL JOHN A. ROGOWSKYJ XXX XX 4016/5711 USMC

| 4. RTG | 5. OPR CODE | 6. ADDRESSEES | | 7. DATE IN | 7. DATE OUT | 8. INITIALS Concur | 8. INITIALS Non-Concur | 9. NATURE OF ACTION REQUIRED | ORIGINATORS INITIALS | DUE DATE (If any) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | COMMANDANT | CMC | | | | | ROUTINE | | |
| | | MILITARY SECT | | | | | | URGENT | | |
| | | ASST COMMANDANT | ACMC | | | | | 10. REFERENCES HELD BY (Name, Grade, Office Code, and Telephone ext.): | | |
| | | MIL ASST | ACMC | | | | | DURHAM, C., GYSGT, MMIA, 784-9211 | | |
| | | SGT MAJ MARCOR | SGTMAJ | | | | | | | |
| | | DMCS | | | | | | | | |
| | | SEC GENERAL STAFF | SGS | | | | | | | |
| | | DIR SPL PROJ | SPD | | | | | | | |
| | | DC M&RA | M&RA | | | | | | | |
| | | DC I&L | L | | | | | | | |
| | | DC PP&O | P | | | | | | | |
| | | DC AVN | A | | | | | | | |
| | | DC P&R | R | | | | | | | |
| | | DIR C4 | C4 | | | | | | | |
| | | DIR INTEL | I | | | | | | | |
| | | SJA TO CMC | JA | | | | | | | |
| | | LEGISLATIVE ASST | OLA | | | | | | | |
| | | DIR PA | PA | | | | | | | |
| | | DIR AR | AR | | | | | | | |
| | | DIR MCH&M | HD | | | | | | | |
| | | IGMC | IG | | | | | | | |
| | | COUNSEL FOR CMC | CL | | | | | | | |
| | | DIR HEALTH SERV | HS | | | | | | | |
| | | CHAPLAIN | REL | | | | | | | |
| | | MARCOR UNIF BD | MCUB | | | | | | | |
| | | CG MCCDC | MCCDC | | | | | | | |
| | | CG MCRC | MCRC | | | | | | | |
| | | COMMARCORSYSCOM | | | | | | | | | |
| | | CO HQBN | HQBN | | | | | | | |
| | | CO MARBKS | MARBKS | | | | | | | |
| | | CO MSGBN | MSGBN | | | | | | | |
| | | DIR SAFETY | SD | | | | | | | |

**DEPUTY COMMANDANT FOR MANPOWER AND RESERVE AFFAIRS (DC, M&RA)**

| 4. RTG | 5. OPR CODE | 6. ADDRESSEES | | 7. DATE IN | 7. DATE OUT | 8. Concur | 8. Non-Concur | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | DC M&RA | M&RA | | | | | | | |
| | | ASST DC M&RA | | | | | | | | | |
| | | EXECUTIVE ASST | | | | | | | | | |
| | | SGTMAJ M&RA | | | | | | | | | |
| | | ADMIN OFFICER / ADMIN CHIEF | | | | | | | | | |
| 2 | AK | DIR. PERS MANAGEMENT | MM | 10 OCT | RPh | | | | | |
| | | DIR. MANPOWER PLN &POL | MP | | | | | | | |
| | | DIR RESERVE AFFAIRS | RA | | | | | | | |
| | | DIR MPR MGMT INFO | MI | | | | | | | |
| | | DIR PERS/FAMILY RED | MR | | | | | | | |
| | | FINANCIAL MANAGEMENT | MB | | | | | | | |

**(INTRA-DIVISION ROUTING)**

| 4. RTG | 5. OPR CODE | 6. ADDRESSEES | | 7. DATE IN | 7. DATE OUT | | | |
|---|---|---|---|---|---|---|---|---|
| 2 | A | DEP DIR | MM | 6 Oct | | | | |
| 1 | GI | SGTMAJ | MM | 10/6 | | | | |
| | X | ADMINO | MMIA | 10/6 | RJS | | | |

**11. REMARKS AND SIGNATURE**

Ref:   (a) DoD Dir 1300.6
       (b) MCO 1306.16E.

1. Purpose:  To obtain the Director, Personnel Management Division's decision on LCpl Rogowskyj's request for classification 1-0 conscientious objector status.  In compliance with the provisions of references (a) and (b), the Conscientious Objector Screening Board met on 29 September 2006, to consider LCpl Rogowskyj's request for classification 1-0 conscientious objector status.  The board's recommendation is provided in paragraph 7.  A letter has been prepared expressing your decision located at Tab (A).

2. Background.  LCpl Rogowskyj's application is provided at Tab (B).

3. Discussion.  The timing of Lance Corporal Rogowskyj's request, coming after notification of his unit's combat mobilization, caused the board to believe that he was seeking conscientious objector status solely to avoid a combat deployment to Iraq.

4. Prima Facie Case. It was the opinion of the Conscientious Objector Screening Board that LCpl Rogowskyj's application did not meet the criteria for classification of 1-0 conscientious objector status.

disapprove

R. W. YODER   10/5

concure w/ the Board & the entire chain of command

AR 1   AR01

5.   Interviews and Recommendations

a.   The Chaplain, after interviewing Lance Corporal Rogowskyj, recommended that he not be granted conscientious objector status 1-0.

b.   The interviewing psychiatrist stated there were no psychiatric contraindications precluding Lance Corporal Rogowskyj pursuance of conscientious objector status 1-0.

c.   The investigating officer recommended Lance Corporal Rogowskyj's application for classification 1-0 conscientious objector status be approved.

d.   The Commanding Officer, Company B, 4th Light Armored Reconnaissance Battalion **recommended disapproval** of Lance Corporal Rogowskyj's application for classification 1-0 conscientious objector status.

e.   The Commanding Officer, 4TH Light Armored Reconnaissance Battalion **recommended disapproval** of Lance Corporal Rogowskyj's application for classification 1-0 conscientious objector status.

f.   The Commanding General, 4TH Marine Division, **recommended disapproval** of Lance Corporal Rogowskyj's application for classification 1-0 conscientious objector status.

6.   Opinions of the Conscientious Objector Screening Board

The board voted unanimously that Lance Corporal Rogowskyj failed to provide convincing evidence that his claims of objection to war in any form were sincere and deeply held and that they were the primary controlling force in his life. Further, the timing of his request, coming after notification of his unit's combat mobilization, caused the board to believe that he was seeking conscientious objector status solely to avoid a combat deployment to Iraq.

7.   Recommendation.   The board recommended Lance Corporal Rogowskyj's application for classification 1-0 conscientious objector status be disapproved.

POC: Durham, C. L., GYSGT, MMIA, 784-9211

A R  2

Subj:   REQUEST FOR CLASSIFICATION 1-0 CONSCIENTIOUS OBJECTOR
        STATUS FOR LANCE CORPORAL JOHN A. ROGOWSKYJ
        XXX XX 4016/5711 USMC

R. W. YODER
Col, U.S. Marine Corps
Senior Member

P. T. MORGAN
Maj, U.S. Marine Corps
Member

T. R. PARKER
Maj, U. S. Marine Corps
Member

B. G. HEATHERMAN
Capt, U.S. Marine Corps
Member

P. N. MORENO
Maj, U.S. Marine Corps
Member

S. M. RISLER
Capt, U.S. Marine Corps
Member

C. J. PRICE
Maj, U.S. Marine Corps
Member

L. P. GREENSLIT
CAPT, U.S. NAVY
Chaplain of the Marine Corps
Representative

R. A. PRICE
Maj, U.S. Marine Corps
JA Representative

RECOMMENDATION IN PARAGRAPH 7:

APPROVED:   RPM

DISAPPROVED: _____

R. P. MILLS
Brigadier General
U.S. Marine Corps
Director, Personnel Management
Division

AR 3
AR03



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
3280 RUSSELL ROAD
QUANTICO, VIRGINIA 22134-5103

IN REPLY REFER TO:
1300
MMIA

0 6 OCT 2006

From:   Commandant of the Marine Corps
To:     Commanding Officer, Company B, 4th Light Armored Reconnaissance
        Battalion
Via:    (1) Commanding General, 4th Marine Division
        (2) Commanding Officer, 4th Light Armored Reconnaissance
            Battalion

Subj:   REQUEST FOR CLASSIFICATION 1-0 CONSCIENTIOUS OBJECTOR
        STATUS FOR LANCE CORPORAL JOHN A. ROGOWSKYJ JR.
        XXX XX 4016/5711 USMCR

Ref:    (a) Capt Devine's ltr 5800 CO of 12 Apr 06
        (b) MCO 1306.16E

1.  On 29 September 2006, a Conscientious Objector Status Screening
Board convened at Headquarters, U.S. Marine Corps to review Lance
Corporal Rogowskyj's request for classification 1-0 conscientious
objector status.  The board considered Lance Corporal Rogowskyj's
request, the opinions of the interviewing psychiatrist, the
investigating officer, the chaplain, and the recommendations of the
chain of command.

2.  The Conscientious Objector Status Screening Board which heard his
case unanimously decided that Lance Corporal Rogowskyj failed to
provide clear and convincing evidence that his claims of objection to
war in any form were sincere and deeply held and that they were the
primary controlling force in his life.  Further, the board believed
that the timing of Lance Corporal Rogowskyj's request, coming after
notification of his unit's combat mobilization, was simply a means to
avoid a combat deployment to Iraq.

3.  Based on a review of Lance Corporal Rogowskyj's request, the
opinions and recommendations of the chain of command, and the opinions
and recommendations of the Conscientious Objector Status Screening
Board, Lance Corporal Rogowskyj's request provided by reference (a),
has been considered per reference (b), and is disapproved.

R. P. MILLS
By direction

Copy to:
MMSB
MMSR

AR 4 AR04

# UNITED STATES MARINE CORPS

B CO. 4THG LAR BN, 4THG MAR DIV
1120 ROCKY SPRINGS RD
FREDERICK, MD 21702

IN REPLY REFER TO:

B CO
30 August 06

From: LCPL JOHN A ROGOWSKYJ, JR - SSN███████4016 – MOS 5711
To:

Subj: CONSCIENTIOUS OBJECTOR PACKAGE FINAL REBUTTAL

I have elected to make the following rebuttal to comments made by those in my chain of command, as well as a few items to which I did not previously respond, included in the remarks of those by whom I was interviewed. I believe that no one can effectively convey the nature of a supreme power, but I do believe that each of us has a profound impact on the physical reflection of God. It is my hope that through this document, I may also better explain my beliefs than I have been previously.

Once, I saw war as a necessary act of protecting the weak and needy. It was at this time that I felt obligated to join the Marines, as they exemplified for me the strong nobly defending the weak. One year ago, I discovered a profound clarity, however, which turned that view around. I have believed for many years that killing animals is wrong. In August of 2005, I had an epiphany, and it was surprisingly simple. While my faith has evolved over time, the sudden link between taking a human life and terminating one of God's creations became apparent in an instant. I do not believe that supporting any action to willfully take human life will result in anything less than a karmic punishment at the hands of God. I hope that I have clarified, in some way, why I can no longer serve in a military organization. That said, I will attempt to eliminate some confusion regarding my beliefs that I have noticed in the endorsements from my command.

The first issue that I must address is the comment by Maj. Stolzenburg that I supposedly acknowledged that a non-combatant billet would not conflict with my belief system. Upon being offered the billet of supply clerk, I was asked and could not name any specific ways in which supplying Marines was in any way worse than support I would be asked to provide in any other position within the Marine Corps. In point of fact, it did not occur to me at the time that supply is responsible for providing ammunition, which directly contributes to violence. I cannot be blind to the fact that they will use this ammunition, not just to support their missions as a whole, which my presence in the Marine Corps does, but also to intimidate, escalate and kill others in confrontations.

My faith cannot allow me to arm those who would, even with the best of intentions, kill their fellow man. I have filled this billet since June, and it has weighed



RECEIVED
SEP 1 2 2006

AR 5 AR05

me with guilt, but I have yet to issue anyone live ammunition. I will not be able to do this, any more than I will be able to carry a weapon myself, an action which will also be demanded of me, in accordance with regulation. The heavy weight that this carries may be clearer in view of what is written by Cpl Hernandez in his statement. We have become close friends since we have been activated, and he knows me better than anyone else here. This is why I have asked him if he would like to say anything on my behalf, and I was honored to include his remarks. Please do not consider his statements professional evidence. only a statement by a friend attesting to the depths of my convictions.

Addressing concerns that the tangible evidence of my faith is sparse, I have the following to say. In my daily life, the revelation I have had about violence has had little discernible impact, because violence is not a part of my everyday life, except insofar as I am supporting troops preparing for combat, in this moment. In contrast, my faith has a strong impact on how I lead my life. Though I did not consider it pertinent to the case of conscientious objector before now, I will state that my faith prohibited me from engaging in premarital relations. It has caused me to explore the world, in search of different views and ideas; a search that has taken me from Buddhist temples to the Vatican in search of enlightenment. My faith is the cause of much discussion, and a central topic of interaction with those who become my friends. This is why Cpl Hernandez, for instance knows so much about my beliefs. It is something I discuss with people and develop friendships through. It is something that is so intrinsically a part of my life, that it is seldom discernible as an act of faith, so much as a part of my character. I treat others with love and kindness because it is the right thing to do, and I know that God sees this, and will alter the world accordingly.

I may never see firsthand the rewards for my charity, whether its giving money to a single homeless man, or helping to feed and shelter dozens, yet I know that by doing so, I make the world a better place. The correlation is not merely causal, it is in God's design, to alter ever so slightly certain aspects of the world to reflect the acts of those with choice. I once thought that an act of violence could be an act of good, if it were to protect the lives of others. In August of 2005 it became startlingly clear that I was mistaken, as I have for years known that killing animals would be met with terrible consequences by God, and had neglected to consider that the same could be said of humans.

Even if an animal kills another animal, God will not respond positively to me killing it, even if my intent is to protect the weaker animal. The fact that this logic should apply to human life in the same manner had escaped me, and so when I realized this, suddenly, I saw that the path I was leading was so far from serving God in accordance with my faith, I was disgusted. Years of self-inquiry and self-discovery had led me to this point, and in a flash I realized that I had missed one of the most fundamental points to a fulfilling relationship with the spiritual world, forgiveness for my fellow man. In cases where, through God's will, instinct causes humans, as it does any other animal, to defend themselves, they have made no choice to forsake God, and their actions will not be met with the same harshness. Those who do decide, even for lack of perceived alternatives. to perpetrate violence, especially against their fellow man, will garner a negative response from God. That response may be intangible now, and felt some later

time, but it result in the suffering of the ones who have taken lives, and they will know the pain that they have created.

Despite LtCol Nagle's opinion that my faith is based on processes less rigorous than other religions, I assure you that my faith is built on a journey of inquiry, that I believe many have taken to find their path to God. in order to formulate their own religious convictions. From Aborigines to Native Americans, the idea of finding your spiritual path through self-discovery is not unique to myself. For many is the desperate night I have sat alone and wondered to God why the world is the way it is, and what must be done to bring us a world without suffering, or if it is even God's intent that we suffer. The pain of these questions has plagued me, ever since I found myself without spiritual guidance as child, having rejected the faith into which I was born, and finding such organizations unappealing. The hours I have searched for truths that God has lain out in each of us may differ from the hours another theologian spends scouring scripture for those same clues, obscured by words and translations, but they are every bit as grueling, and serenely rewarding.

In the same paragraph as mentioned previously, LtCol. Nagle refers to my beliefs as a "desire to disengage from participation in the harsh realities of the rest of the world." I cannot say I agree with his view. I acknowledge that people are violent by choice, and that they will likely continue to be, but I am making every effort to bring some much needed peace to the world, and persuade others that they indeed have choices beyond violence. It is a very real struggle, and the uphill battle is before me, but it is a cause I have embraced. In addition to the petitioning of Congress, I have urged many with whom I have spoken to turn away from violence. I do feel that I am making an impact, and that in some small way, I may help the world live more peacefully. Additionally, I believe that the claim was made, in part, regarding the exercise of my beliefs. Meditation and introspection are essential to finding one's spirituality.

I have attended, recently, a few group prayer demonstrations and most of those in attendance were Christians. I know that they share my views on war and to an extent on violence, and as devout in their faith as I am in my own, we came together and did the same thing. The greatest struggle those seeking to spread peace will face, is a struggle of faith, in one form or another. Some may see violence as a means for peace. Effective or not, it is wrong. It is not acceptable to destroy God's creation, and God will not take lightly that many have done so. The influence of their actions will be felt, through God, but likewise will the actions of those who offer themselves before God in peace.

As Gen. Odell has cited the Chaplain's report as a recommendation for denial, I feel I must comment on it. I do not belong to any organized faith group, as both have mentioned, but such an affiliation, to my understanding, is not a requirement for conscientious objector status. Regarding some other statements made by the chaplain, I should mention that I am fully aware of the potential consequences of my decision. Furthermore, I acknowledge, to a degree the apparent confusion that may come about when I attempt to describe my beliefs. Having no formal religious education to speak of, the various words familiar to me to describe my religious experience come from a variety of sources, and do not, I feel, explain my beliefs completely. Hopefully this letter will make them somewhat clearer, as I can now see precise points where interviewers had trouble understanding what I have attempted to convey. The endorsement by LtCol Nagle and the report by the investigating officer do mention that they believe me to be

AR 7 AR07

sincere, as Maj. Stolzenburg has expressed to me in conversation on more than one occasion.

The chaplain, in his statement asserts that my beliefs developed over several months, and did not exist when I entered the Marine Corps. While it is true that I had not yet experienced the epiphany that the life of man is surely as sacred as a cow at the time of enlisting, the beliefs that I held were otherwise largely the same as today, having developed over a period of years. Discussions with others from many faiths have led me to some deep truths that I believe have been deliberately made available to us all by God, but which we must search for. The continual search for one's own spiritual path is among the greatest daily exercises of faith that I hold dear.

Between the chaplain's remark about a realization of going to war soon and LtCol Nagle's observation of conspicuous timing, it seems necessary to explain the motivation for my discharge request once again. I cannot support, through my actions, any act of premeditated killing. It is part of the mission statement of the Marine Corps rifle squad, the very body that the rest of the service is in place to facilitate. Being a Marine in light of recent revelations is an affront to God. Each day that passes, I live with the guilt of serving this purpose, and it is unacceptable. It is my intent to bring about a better world, through God and my fellow man acting together to the mutual goal of creating and sustaining life, without forsaking that creation in the process. It has become impossible to practice my religion while serving the Marine Corps, and I cannot continue to serve it.

John A. Rogowskyj, Jr.
30 August 06

August 26th, 2006

To: The Reviewing Officer with Whom This Concerns

From: Corporal Thomas V. Hernandez, DSU-3

As a friend and as a NCO serving in the same platoon as Lance Corporal Rogowskyj, I would like to personally contribute my observations towards the matter of his assessment as a conscientious objector. I am by no means a certified professional trained to evaluate him, but for what it's worth, I have a Bachelor's degree in Psychology and a considerable familiarity with the issue of conscientious objection.

During casual conversations with LCpl Rogowskyj, we have discussed his feelings about the war in Iraq and war in general. I've even asked him in a non-confrontational manner how he thinks he would react in different hostile situations and whether using violence would be justified. Based on his responses during our discussions, I believe Rogowskyj has a sincere and moral objection to war, killing and violence under all circumstances. He also seems to have a clear appreciation for preserving life and I feel his practice of being a vegetarian and volunteering at homeless shelters are good reflections of his moral character. I might add that he has maintained these viewpoints ever since the beginning of our relationship, and at no point have I ever noticed him second-guess himself or take actions that would conflict with his values. This firmness to his beliefs is what makes me feel unconfident in his abilities to perform his duties as a Marine in a combat zone. I was taught that "hesitation equals devastation" and by adhering to his beliefs, he could potentially jeopardize the lives of fellow Marines depending on him to take immediate and violent action.

I'm not exactly sure if sending him to Iraq as a non-combatant is a practical solution either, because one could argue that just by wearing the battle dress uniform he is automatically affiliating himself with American combat forces. Also by performing the role of being a supply clerk (as he is doing now), he would be directly facilitating violence by supporting the Marines going out to "locate, close with and destroy the enemy."

Another reason I think it is impractical to send him to Iraq is because he is a pacifist. I was under the impression that everyone in a war zone was supposed to have a weapon or some sort of armed escort (as is the case with most military chaplains in country). There would be times when Rogowskyj and his unit would be required to go outside the wire for various reasons, and it seems dangerous and unreasonable to risk sending him over. If the unit were to come under attack, his status as an innocent bystander would be a major liability to the unit and he could potentially become just another American casualty in an already unpopular war.

Which leads me to another matter I would be concerned with – if he gets killed in action. I don't think the American public would be fond with the idea that we are risking the lives of pacifist conscientious objectors by sending them to well-known hotbed of violence like Al Anbar province (which is where we are going). I know I would be personally devastated if I had to write the letter to a family of a deceased Marine who made his objections to violence clear but was forced to go to war anyways. But let's hope it never comes to that.

One last thing I would like to touch on is that I get a sense that Rogowskyj feels guilty, frustrated and depressed while being stationed here at Camp Lejeune. These

feelings likely stem from the fact he feels his presence here is counterproductive, because it contributes to the training of Marines going to war. He has also brought to my attention that this situation is bringing about marital problems between him and his wife because she is concerned about how the resolution of this situation will affect their future together. It is because of these stressful and emotional factors that I would highly recommend arrangements be made for him to seek some sort of professional counseling.

In closing, I would like to repeat my feelings that LCpl Rogowsky's objections to war, killing and violence appear to be sincere based on my observations while serving with him. I also feel that sending him to a war zone would likely do more harm than good and that his package for conscientious objection should be approved. I know the military needs as many able-bodied men as it can get, but the matter here is whether he meets the criteria of being a conscientious objector. If he meets the definition, as the investigating officer has concluded, he should be granted approval for separation from the military — even if that means losing a valuable asset to support the military in its mission.

Sincerely,

Corporal Thomas V. Hernandez

AR 11AR11



# UNITED STATES MARINE CORPS
4TH MARINE DIVISION
NAVAL SUPPORT ACTIVITY, EASTBANK
4400 DAUPHINE STREET
NEW ORLEANS, LOUISIANA 70146 5400

IN REPLY REFER TO:
1306
CG
AUG 2 1 2006

FINAL ENDORSEMENT on Capt C. T. Devine, Investigating Officer of
Conscientious Objector Classification ICO LCpl J.A.
Rogowskyj

From:  Commanding General
To:    Commandant of the Marine Corps (MMIA)
Via:   Commander, Marine Forces Reserve (Attn: SJA)

Subj:  CONSCIENTIOUS OBJECTOR CLASSIFICATION IN THE CASE OF LANCE
CORPORAL JOHN A. ROGOWSKYJ JR. XXX XX 4016/ 5711 USMCR

1.  Forwarded for disposition.

2.  I concur with the Battalion Officer's recommendation and
Chaplain's assessment of denying classification of 1-0.  Lance
Corporal Rogowskyj does not hold any specific faith or religion that
would prevent him from objecting to war.  He is confused theologically
and does not reflect any official recognized faith group.

D. V. ODELL JR.

Copy to:
CO, 4th LAR Bn

RECEIVED
AUG 2 2 2006

AR 12



# UNITED STATES MARINE CORPS
4th Light Armored Reconnaissance Battalion
4th Marine Division (Rein), FMF, USMC
Building 41407
Camp Pendleton, CA 92055

IN REPLY REFER TO:
5800
CO
28 Jun 06

SECOND ENDORSEMENT on Capt Devine ltr 1000 Admin dtd 12 Apr 06

From:   Commanding Officer
To:     Commandant of the Marine Corps (MM)
Via:    (1) Commanding General, 4th Marine Division
        (2) Commander, Marine Forces Reserve

Subj:   REQUEST FOR CONSCIENTIOUS OBJECTOR STATUS; CASE OF LANCE
        CORPORAL ROGOWSKYJ, JOHN A. ███████4016/5711 USMCR

Encl:   (1) LCpl Rogowskyj statement

1.  Readdressed and forwarded.  Enclosure (1) is attached as required
by reference (a).

2.  LCpl Rogowskyj is presently mobilized with his parent command, now
redesignated to Dam Security Unit 3 (DSU-3) and training at Camp
Lejeuene pending deployment into theater in Sep/Oct 07.  I spoke with
him via telephone on 19 Jun 06 for additional information on his
application.  DSU-3 is making reasonable efforts to assign him to
duties which conflict as little as possible with his asserted beliefs.
He is conforming to the normal requirements of the command and
performing assigned duties satisfactorily.  There is no pending
disciplinary action.

3.  In the net, I find LCpl Rogowskyj's case to be unconvincing,
falling short of the requirements of ref (a) to grant conscientious
objector status and be excused from the contract which he voluntarily
entered and has not yet fulfilled.  Therefore, I recommend
disapproval.  In my evaluation, the salient issues are:

    a.  To be eligible for conscientious objector status, the
individual's position must be sincerely and deeply held.  Besides this
application, LCpl Rogowskyj's most tangible evidence of the outcomes of
his belief is that he now volunteers at a homeless shelter, has become
a vegetarian, and intends to lobby for an expansion of conscientious
objector rights.  While these are significant and charitable acts,
they do not clearly demonstrate that his belief is the primary
controlling force in his life, per ref (a) para 5.c.(1).

    b.  LCpl Rogowskyj's application is based on non-traditional
religious / moral / philosophical discovery.  His statements are not
convincing that his activity was comparable in rigor and dedication to

AR 13

the processes by which traditional religious convictions are formulated (ref (a), para 5.c.(2)(b)), or that he has demonstrated that avoidance of military service is not the basis of his claim (ref (a), para 5.c.(2)).  Without trying to *judge* his beliefs, I find it hard to account for the significant *change* in his beliefs.  From rather nuanced self-study he has made a 180 degree change regarding the role of the military, from the pre-enlistment beliefs noted in paragraph 7.f. and g. of the inspecting officers report, to those documented elsewhere throughout but particularly in 7.j. and h.  LCpl Rogowsky echoed those sentiments in his conversation with me, and expressed his desire to disengage from participation in the harsh realities of the rest of the world (my words).  I find this to be particularly significant due to the applicant's line of reasoning regarding "free will" and comments regarding avoidance and self-indulgence in the statements from the Chaplain, Psychiatrist, and the assessment of the investigating officer in paragraph 8 of the base letter.  In my own inquiry, I concur with that assessment in paragraph 8, although I reach a different recommendation on the disposition of the application.

4.  The following information is also relevant and should be considered in the final determination.  I note that, while I believe the application is not fully supported, it is at least consistent and sincere and should be given thorough evaluation.

   a.  LCpl Rogoskyj's general demeanor and pattern of conduct is consistent with his asserted beliefs.
   b.  Concur with the inspecting officer that his beliefs seem sincere and thorough, and that his expression of them involves substantial philosophical and spiritual rhetoric.
   c.  The timing of his development of beliefs and submission of application is suspiciously parallel with the unit's mobilization warning and notification; however, there is nothing concrete to indicate that this is anything other than coincidental.
   d.  The applicant's asserted beliefs do not seem to indicate that 1-A-O status is an appropriate compromise.  However, his MOS as an NBC Defense Specialist and the availability of positions within DSU-3 make an assignment to noncombatant duties possible.

W. S. NAGLE
LtCol USMCR

JUL-06-2006 12:06 FROM:2AABN          9104507536          TO:703 527 5640          P.2/2



# UNITED STATES MARINE CORPS

B CO. 4th LAR BN, 4th MAR DIV
1120 ROCKY SPRINGS RD
FREDERICK, MD 21702

IN REPLY REFER TO:

B CO
05 July 06

From:  LCPL Rogowskyj Jr., John A.
To:

Subj:  Conscientious Objector package rebuttal

I, LCPL John A. Rogowskyj, Jr, social security number ███4016 have read all statements and endorsements regarding my conscientious objector claim, and do not wish to make any statement of rebuttal at this time. It is my understanding that I will have an opportunity to make rebuttals to any additional endorsements at a later time.

John A. Rogowskyj, Jr.

05 July 06

ENCL(1)

AR 15

JUN-19-2006 13:11 FROM:2AABN



# UNITED STATES MARINE CORPS

## COMPANY B
4TH LIGHT ARMORED RECONNAISSANCE BATTALION, 4TH MARINE DIVISION
MARINE CORPS RESERVE TRAINING CENTER
BUILDING 1240, FORT DETRICK
FREDERICK, MARYLAND 21702-5017

5800
CO
16 Jun 06

FIRST ENDORSEMENT on LCpl Rogowskyj's request for Conscientious Objector status

From:   Commanding Officer, Company B, 4th LAR Battalion
To:     Commanding Officer, 4th LAR Battalion

Subj:   REQUEST FOR CONSCIENTIOUS OBJECTOR STATUS CASE OF; LANCE CORPORAL ROGOWSKYJ, JOHN A ████4016/5711

1.  I concur with the investigation finding that Lance Corporal Rogowskyj is a conscientious objector by reason of the development of his spiritual beliefs. I do not concur that Lance Corporal Rogowskyj should be considered non-deployable. He has been mobilized and is currently participating in all aspects of training with DSU-3, except weapons training, which he refuses to participate. He has no issues with other Marines who are aware of his case. It is my intent that he serve the company in the capacity of Supply Clerk, a non-combatant billet. He has acknowledged to me that he would be able to perform this duty without contravening his belief system. Lance Corporal Rogowskyj has made a commitment by signing an enlistment contract that can be satisfied by deployment with DSU-3.

2.  Forwarded, recommending disapproval.

M. A. STOLZENBURG



**UNITED STATES MARINE CORPS**
Company B
4th Light Armored Reconnaissance Battalion
4th Marine Division (REIN), FMF, USMC
Marine Corps Reserve Training Center
Building 1240
Fort Detrick, Maryland 21702-5017

IN REPLY REFER TO:
1000
Admin
12 Apr 06

From:  Captain Christian T. Devine
To:    Commanding General, 4th Marine Division
Via:   Commanding Officer/Inspector Instructor, 4th Light
       Armored Reconnaissance Battalion

Subj:  REVIEW OF THE APPLICATION FOR CONSCIENTIOUS OBJECTOR
       STATUS; CASE OF LANCE CORPORAL JOHN A. ROGOWSKYJ
       ██████ 4016/5711 USMCR

Ref:   (a) MCO 1306.16E
       (b) MCO 1900.16C

Encl:  (1) Commanding Officer, 4th Light Armored Reconnaissance
           Battalion, 4th Marine Division, Appointing Order
       (2) General Information Sheet and Request for Discharge
           as a Conscientious Objector
       (3) Signed Summary Sheet for Review of Conscientious
           Objector Application
       (4) Signed Privacy Act Statement
       (5) Signed Counseling Concerning Veterans Administration
           Benefits
       (6) Chaplain's Interview of 20 Mar 06
       (7) Record of Psychiatric Examination of 23 Mar 06
       (8) Letter from Joshua Wood of 21 Feb 2006
       (9) Letter from John Rogowskyj, Sr. of 21 Feb 06
       (10) Letter from Regina Buttner-Rogowskyj of 19 Feb 06
       (11) Certified Copies of Lance Corporal Rogowskyj's
            service record pages 3 and 11, enlistment contract
            (to include DD Form 1966/page 2)

1.  Pursuant to enclosure (1) and paragraph 6 of the reference, a
hearing of the subject application was conducted on 10 April
2006.  Present at the hearing were the applicant, Lance Corporal
Rogowskyj, hearing witness, Gunnery Sergeant Hilton, and the
hearing officer, Captain Devine.

2.  Applicant was advised of his rights and examined all docu-
ments or information relevant to the application, and reviewed
enclosures (2) through (11) for content and accuracy.

3.  The applicant was advised of the right to counsel and ex-
pressed understanding of the right to have an attorney present
but desired to proceed with the hearing without counsel.

4.   The applicant was advised of the right to have a verbatim transcript of the hearing at the applicant's own expense.   The applicant was further advised that unless a qualified recorder was provided at the applicant's expense, the hearing would proceed and the hearing officer's version would be final as to testimony taken at the hearing.   The applicant acknowledged understanding this right, the legal effect of proceedings without a recorder and that the applicant wished to waive the right to verbatim transcripts.   The applicant was advised that the hearing could be continued to another date if additional time was needed to obtain either counsel or a recorder.   Lance Corporal Rogowskyj again waived his right to an attorney or a verbatim record.   The applicant was also advised and acknowledged understanding that the possible effects of discharge as a conscientious objector.

5.   Lance Corporal Rogowskyj was thoroughly advised of the nature and purpose of the hearing, and I am satisfied that the applicant understood the advice.

6.   This report is submitted pursuant to paragraph 6e of the reference.   The applicant was advised of the right to call witnesses or present other supporting evidence as desired.   The applicant was also advised that a delay in the hearing to pursue such witnesses could be obtained.   Lance Corporal Rogowskyj desired to make sworn statements on his behalf and answer the questions of the hearing officer, but did not submit any additional evidence nor did the applicant call any other witnesses.   The statements also contained in enclosures (2) through (11) were also considered by the hearing officer in conjunction with the hearing.

7.   A hearing was conducted at the Raymond Flair Reserve Training Center, Fort Detrick, MD on 10 Apr 2006 between the hours of 1230 and 1530.   During the hearing the applicant expressed his reasons why a discharge was sought from the U.S. Marine Corps.   His statements were in consonance with opinions and background provided in enclosure (2).   Provided is a summary of relevant testimony and personal observations that the hearing officer considered in recommending an appropriate disposition:

   a.   SNM was asked to reflect upon his early childhood upbringing to best explain his spiritual development throughout the years in order to ascertain the foundations of his current belief system, and to determine if his remarks were consistent with those provided in enclosure (2).

   b.   SNM discussed how his parents initially provided him with a Christian upbringing which he quickly dismissed after completing the first grade. He continued to reject traditional Judean-Christian beliefs as a young teen, and, in turn, began a more scientific approach to the possibility of a higher power (even exploring Atheism).

   c.   SNM believes that life shares both the corporal and spiritual world, and provided a detailed explanation of his be-

liefs regarding the soul, its manifestation and transcendence in all living things, and his belief in reincarnation.

d.  SNM considers his personal and spiritual belief system to be based on the ideas of pantheism.  Pantheism is a metaphysical and religious position.  Broadly defined it is the view that "God is everything and everything is God … the world is either identical with God or in some way a self-expression of his nature."  Similarly, it is the view that everything that exists constitutes a "unity" and this all-inclusive unity is in some sense divine.  Respect for all living things, in essence is respect for God.  Similarly, SNM is now a vegetarian as a result.

e.  SNM further believes that God (or creator) has given him the gift of free will, and through this gift—mainly via our decision making—that we have an impact on our surrounding environment, whose aggregate actions impact the world in which we live.  Accordingly, SNM believes causing harm to other living things (either directly or indirectly) would be an inappropriate use of God's gift.

f.  SNM offered that his beliefs at a younger age accepted the use of violence only as a last resort, and accordingly, war as a necessary evil.  Pre-and post-enlistment beliefs followed along these lines and began to manifest and validate after 9/11, whereas, SNM believed that the sum of violent actions would be permissible to protect innocent lives from threats, and destroy enemy combatants—accepting the notions of "Peace through Violence."  SNM explained that he felt a deep sense of grief after the 9/11 attacks and overall strangely offended that these acts could be done in the name of God.

g.  SNM stated that he joined the Marine Corps to fulfill a sense of duty, to give back to society and find a greater sense of service before self.  In the post-9/11 world, SNM stated that it was important and necessary to "serve," equally as much as it was to defend innocent people from possible future attacks.  SNM described himself as an average recruit, relatively quiet, and "completely on-board with the Marine Corps mission."  I inquired as to why if he had pantheistic beliefs (even if relatively pubescent) that he would choose to join the Marine Corps as opposed to other forms of public and civil service.  His answers we not quite as direct here, except to offer once again to protect and defend innocent people from being attacked; the most productive way to meet that end (and become apart of a greater positive solution) was to become a U.S. Marine.  SNM stated that the initial grief and anger experience after 9/11 has since subsided, and now has been replaced to a total disappointment of the GWOT and its negative affect on the entire world (especially Iraq and Afghanistan) due to the circle of violence it continues to generate.  SNM stated that he now feels as though he has given God's gift of free will to the Marine Corps, who in turn continues to use him as an instrument to promulgate continued violence in their combative actions around the world.

h.  Considering his stated desired to serve, I asked him as to why he chose to submit an application for 1-0 status vice 1-A-0 and take an administrative or other non-combat role.  SNM stated that he believes that the Marine Corps mission and its associated lifestyle have become incompatible with his personal and spiritual beliefs since they have come full-circle in understanding and trying to achieve spiritual accountability.  As an example, he referred to submitting a 1-A-0 application like "buying the meat but not slaughtering the cow."  I then asked him to discuss how he has felt recently since filing the 1-0 application, and performing his duties as an NBC Defense Marine (5711)—i.e. performing duties that are defensive in nature and prepare Marines from being attacked by deadly agents.  SNM offered a rather pragmatic explanation as how he felt about performing such duties, most notable being that he currently believes that his duties cause a difficult moral conflict, whereas he believes it is good to protect and train others (fellow Marines) how to defend themselves from NBC threats, but, on the other hand, struggles with fact that he is "just helping to save the lives of future killers of others."  Likewise, he said he would be more open to training and helping all against these violent threats if that were the case, to include the Taliban and Iraqi insurgents.

i.  When asked if faced in a combat situation, if he would take up arms to defend himself or his fellow Marines, he stated that he would not without hesitation.  Furthermore, I embarked on a line of questioning to obtain his reaction what he would when faced in challenging and dire situations if he would defend himself or be killed, or not protect a loved one by performing a violent defensive act.  SNM did not directly choose to answer those questions stating that he could not begin to speculate on what he would do in "fight or flight" situations—that he would just act pending on the situation.

j.  SNM was asked to describe his feelings about whether or not the people of liberated countries such as France, Belgium, Holland, Italy, Korea, Kuwait, Afghanistan, and Iraq feel as though the use of violence in war benefited them.  His response was that these benefits are merely temporary, and that war's cumulative effects become more self-evident over time—perhaps hundreds and thousands of years later.

8.  I spent a considerable amount of time probing Lance Corporal Rogowskyj's personal, political, and religious beliefs.  His testimony overall seemed sincere, thorough, and well-formulated, but also at times verged off into strange and subjective tangents that seemed to circumvent direct questioning by incorporating textbook philosophical and spiritual rhetoric. The aforementioned testimony merely begins to scratch the surface as to the depth this young Marine provided me about his religious doctrine and beliefs, and how it has affected him to seek separation from the military. Lance Corporal Rogowskyj's continuous spiritual self-indulgence and search for a universal-spiritual utopia has created substantial personal challenges, ones that will eventually find him alone and incredibly disappointed with the imperfect

world around him.  He cares more about examining how the actions of himself and others make him feel, then to being apart of the solutions to real-life challenges.  In essence, I would classify Lance Corporal Rogowskyj as merely a spectator, sitting in the bleachers of life offering only trite, subjective, and elementary ideas on how life should be, instead of applying some initiative and fortitude to make it what it can become.

9.  In conclusion, I have arrived at the following opinion and conclusion as a result of the hearing conducted on 10 April 2006 and based on review of the references:

I consider Lance Corporal Rogowskyj to be a conscientious objector within the meaning of definition provided in the reference. Accordingly, I recommend that Lance Corporal Rogowskyj be immediately processed for administrative separation from the U.S. Marine Corps Reserve since his perceived personal and spiritual beliefs would prevent him from effectively discharging his duties, and place a considerable strain upon the safety and security of his fellow Marines.

10.  Based on the foregoing, I recommend that the applicant's petition for discharge based on conscientious objection be approved.

11.  I certify that I have, this date, delivered to the applicant a copy of the record of the case, as it now exists, per paragraph 6e of the reference (a), and that the applicant has been informed that 7 days from this date a rebuttal of the record must be submitted to the convening authority (if desired).

C. T. DEVINE

7 1000 /060226



# UNITED STATES MARINE CORPS
Company B
4th Light Armored Reconnaissance Battalion
4th Marine Division, FMF, USMC
Marine Corps Reserve Training Center
Building 1240, Fort Detrick
Frederick, Maryland 21702-5017

IN REPLY REFER TO:
1000
Admin
26 Feb 06

From:  Commanding Officer, 4th Light Armored Reconnaissance
       Battalion, 4th Marine Division, Camp Pendleton, CA

To:    Captain Christian T. Devine ▆▆▆▆ 9127/9910 USMCR

Subj:  INVESTIGATION TO INQUIRE INTO THE APPLICATION FOR
       CONSCIENTIOUS OBJECTOR STATUS 1-0/1-A-O; CASE OF LANCE
       CORPORAL JOHN A. ROGOWSKYJ ▆▆▆▆ 4016/5711 USMCR

Ref:   (a) MCO 1306.16E
       (b) MCO 1900.16C

1.  Effective this date, Captain Devine, United States Marine
Corps Reserve, is appointed as Hearing Officer, for the purpose
of conducting an investigation, per the provisions contained in
references (a) and (b), to inquire into all the circumstances
connected with the claim of Lance Corporal Rogowskyj as a consci-
entious objector.

2.  You are to review the regulations as set forth in references
(a) and (b) and afford the applicant every right and assistance
as set forth therein.  After conducting a thorough investigation
into all the facts concerning this case and holding a hearing as
set forth in reference (a), you will submit your report and docu-
mentation to this Headquarters, with conclusions and recommended
disposition.

W. S. NAGLE JR.

Enclosure (1)

AR 22

MCO 1306.16E
21 Nov 1986

## REQUIRED INFORMATION TO BE SUPPLIED BY APPLICANTS
## FOR DISCHARGE OR NONCOMBATANT SERVICE

Each person seeking release from active service from the
Marine Corps, or assignment to noncombatant duties, as a
conscientious objector, will provide the following information
in the format as shown below. The individual may submit such
other information as desired.

A. General Information Concerning Applicant
1. Full name
   1.  John Anthony Rogowskyj Jr.
2. Social security number
   2.  ████4016
3. Selective service number (if applicable)
   3.  N/A
4. Service address
   4.  4th LAR, Co. B Fort Detrick, MD
5. Permanent home address
   5.  3449 Finlaw Ave, Pennsauken, NJ 08109
6. Name and address of each school and college
attended (after age 16) together with the dates of
attendance and the type of school (public, church,
military, commercial, etc.).
   6.  UC Irvine, Irvine CA 2001-2003 - Public
      Pennsauken High School, Pennsauken, NJ 1997-2001 — Public
7. A chronological list of all occupations, positions,
jobs, or types of work, other than as a student
in school or college (after age 16), whether for
monetary compensation or not. Include the type of
work, name of employer, address of employer, and
the from/to date for each position or job held.
   7.  NJ State Aquarium, 1 River Rd. Camden, NJ 08110 08.1999 – 07.2000
      Toys R Us, El Camino Real Tustin, CA 92780  04.2002 - 01.2003
      Staffmark, 13822 Red Hill Ave Tustin, CA 92780 08.2004 - 06.2005
      Cardinal Health, Church St Moorestown, NJ 08057 08.2005 - present
8. All former addresses (after age 16) and dates of
residence at those addresses.
   8.  7449 Grant Ave. Pennsauken, NJ 08109 (October 1993 - June 2001)
      13841 Tustin E. Dr. Tustin, CA 92780 (December 2001 - April 2003)
      932 Veneto. Irvine, CA 92614 (January 2004 - June 2005)
      3001 Rte. 130 N. 48F Delran, NJ 08075 (July 2005 - September 2005)
      828 Red Lion Rd C16 Philadephia, PA 19115 (October 2005, November 2005)
      3449 Finlaw Ave. Pennsauken, NJ 08109 (November 2005 - present)
9. Parent's names and address. Indicate whether they
are living or deceased.
   9.  Father, living, 828 Red Lion Rd. C16, Philadephia, PA 19115
      Mother, living, 100 Fox Meadow Drive Maple Shade, NJ 08052
10. The religious denomination or sect of both
parents.
   10.  Father- Catholic, Mother- Protestant

**Enclosure (2)**

AR 23

```
11. Was application made to the Selective Service
System (local board) for classification as
conscientious objector prior to entry into the
Marine Corps? To which local board? What
decision was made by the board, if known? If
application was not made, explain why not.
```

    11. No prior application, belief in nonviolence materialised after entry into service

```
12. When the applicant has served less than 180 days
in the military service, a statement by the
applicant as to whether the applicant is willing
to perform work under the Selective Service System
civilian work program for conscientious objector.
Also a statement of the applicant as to whether
the applicant consents to the issuance of an
order for such work by the applicant's local
Selective Service Board.
```

    12. N/A

## B. Training and Belief

*1. A description of the nature of the belief which requires the applicant to seek separation from the Marine Corps or assignment to noncombatant training and duty for reasons of conscience.*

I believe that God has given man Free Will. By making choices, we affect the world we inhabit, and the mechanism that determines the impact of each decision is the will of God. This is the way God expresses its will. Furthermore, I believe that our eternal souls are reincarnated, in various forms of life and energy cycling throughout the universe, born anew any time the matter inhabited by the energy of our former self is implicit to the Universe. God gave Man Free Will because we are unique, and we should use it to influence the world we live in, but if the means to our goals are violent or malicious, we will in turn be faced with a future frought with violence and malice. With the compelling moral reprecussions of violence against my fellow man looming, I see no place for myself in further assisting any operation, the goal or means of which include killing or harming another human being. By surrendering my will to the military, I realize that I have wilfully propogated violence.

*2. An explanation as to how the applicant's beliefs changed or developed, to include an explanation as to what factors (how, when, and from whom or from what source training received and belief acquired) caused the change in or development of conscientious objection beliefs.*

Since a young age when I rejected Catholocism and indeed all of Christianity, I have still felt a strong need to find for myself a spiritual view that makes sense and will contribute to better daily living. With this quest for understanding came the study of philosophy and world religions, but mostly science. Frequently, my path the enlightenment has been forged through conversations with fellow truth-seekers, until this led to a reprehensible discovery, that I in my discussions with others, was causing them to believe in no spiritual world. My only goal had been to allow them a chance to think for themselves

AR 24

and decide if the religion into which tthey had been born was really what they believed, or something they followed blindly out of habit. Since then, I have not told those who were not already aware of it exactly what I believed, and in conversation only suggested at most that they should consider what they really believed and think fore themselves. I happen to be a vegetarian, a point worth noting here only insofar as it led me to read Dominion, in which I first saw the phrase of the theologian Jonah Goldberg "human compassion toward animals is an obligation of humans, not an entitlement for animals ... [W]e have a moral duty to respect the animal world as God's handiwork, treating animals with 'the mercy of our Maker'..." looking back, I see this as a fulcrum for the shift in my views since having pondered this point. The reason we should not kill is not because the physical victim deserves to live, intrinsically, but because certainly we as people with free will have the right to a life in which we are not killers. So was instilled in me the concept that I refer to here as "spiritual accountability," the belief that one's actions today affect their future actions and the actions of the world around them all through God's will, and that acting with anger or violence, will only perpetuate it and damn us to a regretable fate.

*3. An explanation as to when these beliefs became incompatible with military service, and why.*

When I realized in Fall of 2005 the concept of spiritual accountabilty, it opened new doors for my exploration of the spiritual world, and at last I was able to see that it does not matter how much violence threatens us we should not respond in kind, because by contributing to the total violence of the world we only make it a more violent place; maybe not in the short term, but in the greater story of the World. We will only see exponential increases in violence unless we stand now to stop it. At first these beliefs seemed like something that would not hamper performing military duties, and that taking a stand could wait, but with each passing month, a deeper feeling of guilt grew in my stomach as I realized I had to once again wear the marks of men, aligned on the notion that violence will make the world a better place as long as it is just, but it cannot be. I see now that I must separate from the military with all due haste, or suffer without the forgiveness of grace, for defying the truth that I see plainly before me, that violence as a means or end cannot be tolerated. To squander the free will with which I have been endowed to pursue anything less than the total cessation of violence would nbe a travesty.

*4. An explanation as to the circumstances, if any, under which the applicant believes In the use of force, and to what extent, under any foreseeable circumstances.*

Violence should never be considered a solution to a problem, however as we are all created with tendencies that cannot always be controlled, the greatest of which being the will to survive, I find it acceptable for an individual confronted with his own mortal demise to defend himself with lethal force, so long as his sole intent was self-preservation, or the preservation of his or her progeny, and only under the condition that the violent response was not premeditated, but reflexively fulfilled by the instincts with which he was born.

*5. An explanation as to how the applicant's daily life style has changed as a result of the applicant's beliefs, and what future actions are planned to continue to support these beliefs.*

I do not belong to an organized religion, greatly because of my unwaivering belief that

prosteletizing one's faith is offensive to the higher being who endowed us with free will, but many of the edicts that certain mainstream religions proclaim as fact, I also believe deeply in. I believe that to tell another about what you have learned about the spiritual world will be catastrophic, because a second hand account will always lose something in translation. One cannot be told the nature of the spiritual world, only by experience and by sharing experiences can one safely know the true spiritual world. It is on this that I meditate daily in solitude. Seldom do I find one to share experiences with, who has a mind open enough to recieve them as they are intended, so to outward appearances, my rigorous commitment goes largely unnoticed by others. However, I do make every effort, as I think everyone should, to practice more than preach and be an example of the actions that will bring the world salvation. I try to help those in need where possible, and show respect for all creation. Most of these actions are local though, and center on changing the world by first changing myself. On a less pleasant note, I find of late my meditations reveal my guilt more than ever, showing me the great harm I am visiting upon myself through military participation. Thus, certainly among the most noticable changes in my daily life will be my absence from the marine corps, and though I will not promote any specific belief for another, I will demonstrate the ideals of pacifism in the hope that others will follow.

6. *An explanation as to what in the applicant's opinion most conspicuously demonstrates the consistency and depth of beliefs which gave rise to the claim.*

Since the crystalization of my belief in spiritual accountability, I have not only looked inward to remove violence and anger from my heart, but have made an effort to improve the world around me. I have been volunteering with the University City Hospital Outreach Program, an outreach for the homeless offering food and shelter. Through discussion, I have also persuaded my wife to join us on more than one occassion.

In the near future, thanks to a scholarship opportunity, I intend to return to college. At present, I am investigating various schools, but do not intend to continue my previous course of study in the biological sciences, but rather may divert my education to a study of humanities, an area in which I have some background from the University of California.

Recently, I have found an opportunity to lobby Congress for an expansion of the rights of military personnel to object, and am applying to become a lobbyist in the movement. I intend to support the Center on Conscience and War in their efforts, and to donate any funds I receive from the military from this day forth to their cause.

Lastly, I would mention that the act of filing this application itself is an affirmation of my conviction. I know the road ahead will be a challenge, and I have demonstrated in the past my commitment to the Marines, but the overwhelming sense of guilt swells in me deeply enough to cause me to request separation.

C. Participation in organizations:  I have never belonged to another military organization and currently claim no membership in a religious orgainization or sect.

Enclosure (2)

AR 26

Commanding Officer
4th LAR Bn. Co. B
United States Marine Corps


    I have become a conscientious objector to participation in war in any form. I wish to be discharged from the military. I understand that until a final decision is made I am to be employed in duties providing minimum conflict with my beliefs. At this time I make no request for transfer to alternate duty except to be exempt from any exercise concerning the handling of weapons or training in their use. I also offer at this time to make interview arrangements with a psychiatrist and chaplain myself to expedite the process.


                    LCPL John A Rogowskyj, Jr.
                    Social security number 162704016


**Enclosure (2)**

AR 27

D. References: Attached

Enclosure 3

SUMMARY SHEET FOR REVIEW OF CONSCIENTIOUS OBJECTOR APPLICATION

<u>2006 February 24</u>     <u>4TH LAR Bn Co. B</u>     Date <u>2006 02 24</u>
1. Date of Application     2. Unit

<u>LCPCL John A Rogowskyj Jr. (E3)</u>     ████4016     <u>1984 01 27</u>
3. Name and Grade     4. SSN/MOS     5. Date of Birth

6. Marital Status 7. Selective Service System No.
M__X__ S__ __     N/A

8. Applicant Requests 1-0 Discharge   <u>Concientious Objector</u>

9. Willing to perform alternate civilian service
Yes_____ No_____X_____

<u>Pharmaceutical Printing Apprentice</u>  <u>2003 04 07</u>
10. Civilian Occupation 11. PEBD 12. Entered Service on

<u>2003 04 07</u> By enl
_____ Induction
_____ Other
<u>6</u> Years _<u>2</u>

<u>2003 04 07</u>     <u>33</u>     <u>2009 04 06</u>
13. Date entered     14. Months of     15. EAS
   active duty        active duty

<u>National Defense Medal</u>
16. Decorations, Commendations

<u>Religious Humanist</u>
17. Applicant's Religion

WITNESS SIGNATURE     APPLICANT'S SIGNATURE

<u>2006 02 22</u>
DATE

Enclosure (3)

AR 28

**Enclosure 4**

PRIVACY ACT STATEMENT

DATA REQUIRED BY THE PRIVACY ACT OF 1974
(5 U.S.C. Section 552a)

PART A - GENERAL

1. Requiring Document: MCO 1306.16E
2. HQMC Sponsor Code: MPP-39
3. Descriptive Title: Conscientious Objector Information

PART B - INFORMATION TO BE FURNISHED TO INDIVIDUAL

1. Authority:
50 U.S.C. Appx section 456(j)
Executive Order 9397, 22Nov43 (Social Security Number)

2. Principal Purpose: Used by officials within the Marine Corps
to determine whether conscientious objector status is
appropriate.

3. Routine Use: The information collected will be used by
appropriate authority to grant or deny the requested
conscientious objector status.

4. Mandatory or Voluntary Disclosure and Affect on Individual
Not Providing Information:
Disclosure of information is voluntary. If information is
not furnished, applicant may not receive the sought for
status.

PART C - STATEMENT OF UNDERSTANDING

I have read and understand this statement. I understand
that I will have the opportunity to review the completed
investigation before it is submitted to the convening
authority.

| 2006 04 10 | _[signature]_ | _[redacted]_ 4016 |
|---|---|---|
| Date | Signature | SSN |

Enclosure (4)

AR 29

**Enclosure 5**

COUNSELING CONCERNING
VETERANS ADMINISTRATION BENEFITS
I have been advised of the provisions of 38 U.S.C. Section
3103 concerning possible nonentitlement to benefits
administered by the Veterans Administration due to discharge
from the military service as a conscientious objector under
certain conditions. I understand that a discharge as a
conscientious objector, who refuses to perform military duty or
otherwise to comply with lawful orders of competent military
authority, shall bar all rights, based upon the period of
service from which discharged, under any laws administered by
the Veterans Administration except my legal entitlement (if any)
to any war risk Government (converted) or National Service Life
Insurance. The only exception is in cases in which it is
established, to the satisfaction of the Veterans Administration,
that I was insane.


_____                    _____
WITNESS' SIGNATURE                             APPLICANT'S SIGNATURE


Enclosure (5)

AR 30



**DEPARTMENT OF THE AIR FORCE**
305TH AIR MOBILITY WING (AMC)

20 March 06

MEMORANDUM FOR INSPECTOR INSTRUCTOR MAJ KEVIN GORDON

FROM: 305th AMW/HC

SUBJECT: Conscientious Objector Status

1. LCPL John Rogowskyj was reviewed on 20 March 2006 to help to determine the legitimacy of his conscientious objection.

2. Because LCPL Rogowskyj does not hold to any specific faith or religion that would prevent him from objecting to war, there is no formal ecclesiastical or governing body that has influenced his cause for belief nor has any religious body recommended his removal from the Armed Forces. Though his convictions appear strong, they do not reflect any official recognized faith group. It is apparent that LCPL Rogowskyj's justification has been percolated from his recent investigation into Easter Religions, mysticism, and animism.

3. Through a line of questioning, LCPL Rogowskyj appears sincere in his idea that all forms of killing are wrong. When asked if he could tolerate being shifted to another department where he could be in a non-combative role, his response was "I would still be supporting the murder of human lives." According to LCPL Rogowskyj, there was no distinction between murder and killing.

4. When LCPL Rogowskyj first entered the Marine Corps he did not hold his current beliefs, they simply have transpired through topical reading over the last several months, or perhaps through the realization that he may be going to war very soon. In my professional opinion, this young Marine is very confused theologically and his philosophical thoughts are quite disjointed. He most certainly fits his developmental age bracket of challenging norms. I am not qualified to say, however, whether this phase is temporary or permanent. LCPL Rogowskyj doesn't appear to fully grasp the consequences of his decision to breach his military contract or commitment.

5. Should you need to contact me, I can be reached at DSN 650-5907 or commercial 609-754-5907 or dan.thompson3@mcguire.af.mil.

DANIEL W. THOMPSON, Ch, Capt, USAF
Protestant Chaplain

Enclosure (6)

AR 31

U4/U8/2UU0 SAT  11:49  FAX 2955907                                              @UUZ/UU3

6320
Ser 1500
23 Mar 06

From: LCDR Rosemary Carr Malone, MD, General and Forensic Psychiatrist, National
        Naval Medical Center, Department Head, Adult Inpatient Behavioral Healthcare
        Department, Bethesda, MD
        LCDR David A. Weis, MD, Psychiatric Resident, National Naval Medical Center,
        Behavioral Health Clinic, Bethesda, MD
To:     Commanding Officer, 4th LAR, Bravo Company, Fort Detrick, Maryland
Via:    Commander, National Naval Medical Center, Bethesda, MD

Subj:  CONCIENTIOUS OBJECTION MENTAL HEALTH EVALUATION IN THE
        CASE OF LCPL JOHN ROGOWSKYJ, USMC, ██████4016

1.  The above named service member underwent a self-referred mental health evaluation
    on 22 MARCH 2006 at the National Naval Medical Center Behavioral Health Clinic
    by LCDR David A. Weis, Resident Psychiatrist, under the supervision of LCDR
    Rosemary Carr-Malone, Staff Psychiatrist, in compliance with regulations for
    conscientious objector status. The service member was informed that the results of the
    evaluation would be released to his commanding officer.

2.  The patient was found to be sincere and credible during the interview when he
    described his religious convictions.

3.  This service member does not have any Axis I or Axis II Diagnosis, but his symptoms
    and behaviors due suggest a fair degree of anxiety and avoidant traits. However, since
    he would not have sought a mental health evaluation for matters other than for
    requirements of claiming conscientious objector status, his overall functioning does not
    appear to be impaired significantly enough to warrant a formal Axis I diagnosis at this
    time.

4.  The Diagnoses are:

            Axis  I:  Rule-out Generalized Anxiety Disorder
            Axis  II: Avoidant personality traits
            Axis III: None.

5.  The service member did not endorse thoughts of self-harm, suicidality or demonstrate
    intent to harm others. He was not actively attending to any internal or external stimuli,
    and there was no evidence of other psychotic symptoms. There were no acute
    indications for prescribing any psychotropic medication at this time.

Enclosure (7)

AR 32

04/03/2006 BAT 7:49  FAX 2955987                                                              ☒005/005

Subj:   CONCIENTIOUS OBJECTION MENTAL HEALTH EVALUATION IN THE
CASE OF LCPL JOHN ROGOWSKYJ, USMC, ▮▮▮▮4016

6.  The service member is considered psychiatrically fit and suitable for full duty.
However, if his behavior or belief system begins to interfere with his performance or
interpersonal functioning in the future, the command can pursue an administrative
separation.

7.  Questions regarding this case can be directed to the undersigned at (301) 295-2479.


David A. Weis MD MS
LCDR, MC, USNR
Resident Psychiatrist

Rosemary Carr-Malone MD
LCDR, MC, USNR
Staff Psychiatrist

2

Enclosure (7)

AR 33

2/21/2006

My Name is Joshua D Wood. I have known John Rogowskyj since our first year at Pennsauken High School, back in September of 1997. We graduated in June of 2001, and we have still kept in touch these last 5 years. He seems to be one of those friends that you carry forever.

Throughout our high school days, John and I occasionally talked about how we each see the world around us and how are actions impact others. I was very aware that he did not folllow any traditional religion, but we always seemed to discuss matters that do overlap religious notions, like the questions surrounding creation. When we graduated, John went off to college in California, while I stayed in New Jersey and attended Rutgers University.

During one of John's breaks from school in 2003, he came back to New Jersey to visit family and friends. When I met up with him then, I was shocked to find out that he had joined the Marines. We went to a friend's house, one who had also been a part of our discussions, and he was just as shocked as I was about John joining the military.

Last summer, John came back to live in New Jersey. I was on my summer break, and was again able to spend time with him. By the start of Fall semester, John told me that he was not sure anymore, about his decision of joining the military. He changed in his beliefs about war and violence. He disliked the whole notion of fighting. I did not question him at the time, but I knew something was coming up. When John called me and let me know of a final and difficult decision he was committing to, I accepted his offer to aid him in this. I believe that he is sincere in his decision to lead the pacifist life his moral views have been pointing toward.

In the near 9 years that I have known John, I have never known him to anger easily, instigate, or even accept a challenge for a fight; that is just not who he is. His parents reared him to respect human life, and never to abuse anyone in any way, shape, or form. This is why I believe John when he told me he was standing as a conscientious objector. I always imagined that John would be a great scientist, inventing great objects that could help the world. I never imagined that John would enter the military, where he could be forced into killing the people I imagined him to help; that is not the way to think of him.

Sincerely,

Joshua D Wood

Enclosure (2)

AR 34

I, John Rogowskyj Sr, father of John Rogowskyj Jr, make the following statements: that our relationship has always been amicable, and that my son confides in me frequently. After less than one year attending a catholic school, into which his mother and I enrolled him, he told me that he did not share the views they were teaching, and asked to return to public school. Since this time, we have frequently discussed our respective views of the world around us and its greater meaning. Until recently his beliefs have not conflicted greatly with military service, but of late, he seems regretful of it. As I have come to understand it, he has developed a sense of empathy with the world around him, and sees his actions toward others as direct reflections of himself. Specifically it now appears that he sees violence as disgraceful, and has taken it upon himself as something of a mission to utilize his free will to reduce violence. What he once saw as protecting innocent people through military service, he now views as a false shortcut, and that ultimately, violence is self perpetuating.

Since he first began to take this view of nonviolence, he has taken a more active roll in influencing the community. He has been volunteering to help the homeless, which I admire. I know he has gotten his wife to come once or twice and he has asked me a number of times to join them, but I have not yet found the time. I truly believe that this is a sign of his commitment to the new view he has taken of the spiritual world around him, and that he would do anything to reduce the violence that he now feels so responsible for. As he has before, my son will bravely face whatever others may say or do and proclaim his views as different and in this instance incompatible with those around him.

John Rogowskyj

*John Rogowskyj*

2-21-06

AR 35



**CHRONOLOGICAL RECORD** (1070)

| Unit/Organization | Primary Duty | Remarks |
|---|---|---|
| 2nd RTBN, RTR<br>MCRD San Diego<br>RUC 34022  MCC 017 | **Recruit**<br>(9971) | 20030407 ___ JD for Rec Trng ___ 20030702<br>(Date)                                        (Date)<br>TR TO ___ CG MCB CAMPEN CA (JBY) ___ For DU<br>(MCC) |
| | | ___ TR TO<br>MCC ___  FOR TEMINS |
| MARINE CORPS DETACHMENT<br>FT LEONARD WOOD MO 65473<br>JC 54063  MCC K68 | STUDENT<br>5700 | |
| HQSVCCO 4THLARBN 4TH MARDIV<br>MCB CAMP PENDLETON CA<br>RUC 14031 | NBC SPLST<br>(5711) ( ) | 031219 ___ JD For DU |
| | | 040726 TO 040809 AT<br>CAMP PENDLETON, CA<br><br>20051107  TR  TO  CO  B  4THLAR  SP4<br>                         FOR  DU<br>051111  JD  FOR  DU |
| B CO 4THLARBN 4THMARDIV<br>FT DETRICK FREDERICK MD<br>RUC 14033     MCC SP7 | NBC SPLST<br>(5711) ( ) | |

| ROGOWSKYJ | JOHN | A | ████016 | | |
|---|---|---|---|---|---|
| Name (Last, First, Middle) | | | | SSN | Date Prepared |

NAVMC 118(3)(Rev. 6-78)                                                                                            Enclosure (4)

AR 316

**G**

MINISTRATIVE REMARKS   (1070)

| Date: ___20030407___ | Date: _____ |
|---|---|
| Articles UCMJ explained to me this date as required by Article 137.UCMJ. | Articles UCMJ explained to me this date as required by Article 137.UCMJ. |
| (Signature) | (Signature) |

ROGOWSKYJ        JOHN        A        ████4016

Name (Last, First, Middle)                    SSN                    Date Prepared

NAVMC 118(11)(Rev. 3-82)                              Enclosure (1)

AR 37

| 20. NAME (Last, First, Middle Initial) | 21. SOCIAL SECURITY NUMBER |
|---|---|
| ROGOWSKYJ JOHN ANTHONY JR | ▓▓▓▓4016 |

## SECTION III - OTHER PERSONAL DATA

**22. EDUCATION**

a. List all high schools and colleges attended. (List dates in YYYYMM format.)

| (1) FROM | (2) TO | (3) NAME OF SCHOOL | (4) LOCATION | (5) GRADUATE YES | NO |
|---|---|---|---|---|---|
| 200109 | 200303 | UNIVERSITY OF IRVINE | CAMPUS DRIVE IRVINE CA 92602 | | /R |
| 199409 | 199906 | PENNSAUKEN HIGH | 800 AYLTON ROAD PENNSAUKEN NJ 08110 | /R | |
| | | | | | |
| | | | | | |
| | | | | | |

| | YES | NO |
|---|---|---|
| b. Have your ever been enrolled in ROTC, Junior ROTC, Sea Cadet Program or Civil Air Patrol? | | /R |

**23. MARITAL/DEPENDENCY STATUS AND FAMILY DATA** (If "Yes," explain in Section VI, "Remarks")

| | YES | NO |
|---|---|---|
| a. Is anyone dependent upon you for support? | | /R |
| b. Is there any court order or judgment in effect that directs you to provide alimony or support for children? | | /R |
| c. Do you have an immediate relative (father, mother, brother, or sister) who: (1) is now a prisoner of war or is missing in action (MIA); or (2) died or became 100% permanently disabled while serving in the Armed Services? | | /R |
| d. Are you the only living child in your immediate family? | | /R |

**24. PREVIOUS MILITARY SERVICE OR EMPLOYMENT WITH THE U.S. GOVERNMENT** (If "Yes," explain in Section VI, "Remarks.")

| | YES | NO |
|---|---|---|
| a. Are you now or have you ever been in any regular or reserve branch of the Armed Forces or in the Army National Guard or Air National Guard? | | /R |
| b. Have you ever been rejected for enlistment, reenlistment, or induction by any branch of the Armed Forces of the United States? | | /R |
| c. Are you now or have you ever been a deserter from any branch of the Armed Forces of the United States? | | /R |
| d. Have you ever been employed by the United States Government? | | /R |
| e. Are you now drawing, or do you have an application pending, or approval for: retired pay, disability allowance, severance pay, or a pension from any agency of the government of the United States? | | /R |

**25. ABILITY TO PERFORM MILITARY DUTIES** (If "Yes," explain in Section VI, "Remarks.")

| | YES | NO |
|---|---|---|
| a. Are you now or have you ever been a conscientious objector? (That is, do you have, or have you ever had, a firm, fixed, and sincere objection to participation in war in any form or to the bearing of arms because of religious belief or training?) | | /R |
| b. Have you ever been discharged by any branch of the Armed Forces of the United States for reasons pertaining to being a conscientious objector? | | /R |
| c. Is there anything which would preclude you from performing military duties or participating in military activities whenever necessary (i.e., do you have any personal restrictions or religious practices which would restrict your availability)? | | /R |

**26. DRUG USE AND ABUSE** (If "Yes," explain in Section VI, "Remarks.") Have you ever tried or used or possessed any narcotic (to include heroin or cocaine), depressant (to include quaaludes), stimulant, hallucinogen (to include LSD or PCP), or cannabis (to include marijuana or hashish), or any mind-altering substance (to include glue or paint), or anabolic steroid, except as prescribed by a licensed physician? /R

DD FORM 1922/2, JAN 2003

PAGE 2

Enclosure (1)

AR 38



## ENLISTMENT/REENLISTMENT DOCUME...
## ARMED FORCES OF THE UNITED STATES

### PRIVACY ACT STATEMENT

**AUTHORITY:** 5 USC 3331; 32 USC 708; 44 USC 708 and 3101; 10 USC 133, 265, 275, 504, 508, 510, 591, 672(d), 678, 837, 1007, 1071 through 1087, 1168, 1169, 1475 through 1480, 1553, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411; 14 USC 351 and 632; and Executive Order 9397, November 1943 (SSN).

**PRINCIPAL PURPOSE(S):** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USE(S):** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application.

### A. ENLISTEE/REENLISTEE IDENTIFICATION DATA

| 1. NAME *(Last, First, Middle)* | 2. SOCIAL SECURITY NUMBER |
|---|---|
| ROGOWSKYJ JOHN ANTHONY JR | ████4016 |

| 3. HOME OF RECORD *(Street, City, State, ZIP Code)* | 4. PLACE OF ENLISTMENT/REENLISTMENT *(Mil. Installation, City, State)* |
|---|---|
| 13841 TUSTIN EAST DR 148<br>TUSTIN, CA 92780 | LOS ANGELES MEPS<br>LOS ANGELES, CA 90016-4791 |

| 5. DATE OF ENLISTMENT/ REENLISTMENT *(YYYYMMDD)* | 6. DATE OF BIRTH *(YYYYMMDD)* | 7. PREV MIL SVC UPON ENL/REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 20020827 | 19840127 | a. TOTAL ACTIVE MILITARY SERVICE | | | |
| | | b. TOTAL INACTIVE MILITARY SERVICE | | | |

### B. AGREEMENTS

8. I am enlisting/reenlisting in the United States *(list branch of service)* __MARINE CORPS RESERVE__ this date for __8__ years and __00__ weeks beginning in pay grade __E-1__ The additional details of my enlistment/reenlistment are in Section C and Annex(es) __A B__

**a. FOR ENLISTMENT IN A DELAYED ENTRY/ENLISTMENT PROGRAM (DEP):**

I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by *(list date (YYYYMMDD))* _____ for enlistment in the Regular component of the United States *(list branch of service)* _____ for not less than _____ years and _____ weeks. My enlistment in the DEP is in a nonpay status. I understand my period of time in the DEP is **NOT** creditable for pay purposes upon entry into a pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

**b. REMARKS:** *(If none, so state.)*      NONE

**c.** The agreements in this section and attached annex(es) are all the promises made to me by the Government. **ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.** Enclosure (1)

*(Initials of Enlistee/Reenlistee)* _____

*(Continued on reverse side.)*

DD FORM 4/1, JAN 2001      PREVIOUS EDITION MAY BE USED.



| NAME OF ENLISTEE/REENLISTEE *(Last, First, Middle)* | | SO| SECURITY NO OF ENLISTEE/REENLISTEE |
|---|---|---|---|
| ROGOWSKYJ JOHN ANTHONY JR | | | ░░░4016 |

## D. CERTIFICATION AND ACCEPTANCE

**13a.**  My acceptance for enlistment is based on the information I have given in my application for enlistment.  If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT. ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION. I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED.   ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW: *(If none, X "NONE" and initial.)*     [X] NONE *(initials of enlistee/reenlistee)*

| b. SIGNATURE OF ENLISTEE/REENLISTEE | c. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| *(signature)* | 20020827 |

## 14. SERVICE REPRESENTATIVE CERTIFICATION

a.  On behalf of the United States *(list branch of service)* ___ MARINE CORPS ___
I accept this applicant for enlistment.  I have witnessed the signature in item 13b to this document. I certify that I have explained that only those agreements in Section B of this form and in the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| LEINEN JASON J  FR.2 | E-6 | USMC RCTG STA ORANGE |
| e. SIGNATURE | f. DATE SIGNED *(YYYYMMDD)* | g. UNIT/COMMAND ADDRESS *(City, State, ZIP Code)* |
| *(signature)* | 20020827 | LOS ANGELES CA  90016-4791 |

## E. CONFIRMATION OF ENLISTMENT OR REENLISTMENT

**15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):**
I, JOHN ANTHONY ROGOWSKYJ JR _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

**16. IN THE NATIONAL GUARD (ARMY OR AIR):**
I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of _____ against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of _____ and the orders of the officers appointed over me, according to law and regulations.  So help me God.

**17. IN THE NATIONAL GUARD (ARMY OR AIR):**
I do hereby acknowledge to have voluntarily enlisted/reenlisted this _____ day of _____, in the _____ National Guard and as a Reserve of the United States *(list branch of service)* _____ with membership in the _____ National Guard of the United States for a period of _____ years, _____ months, _____ days, under the conditions prescribed by law, unless sooner discharged by proper authority.a

| 18a. SIGNATURE OF ENLISTEE/REENLISTEE | b. DATE SIGNED *(YYYYMMDD)* |
|---|---|
| *(signature)* | 20020827 |

## 19. ENLISTMENT/REENLISTMENT OFFICER CERTIFICATION

a.  The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

| b. NAME *(Last, First, Middle)* | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| KIDD ELLIOTT | O-3 | LOS ANGELES MEPS |
| e. SIGNATURE | f. DATE SIGNED *(YYYYMMDD)* | g. UNIT/COMMAND ADDRESS *(City, State, ZIP Code)* |
| *(signature)* | 20020827 | LOS ANGELES  **Enclosure (1/)** CA  9C016-4791 |

DD Form 4/2, JAN 2001          PREVIOUS EDITION MAY BE USED.

AR 40  AR40