UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN A. ROGOWSKYJ, JR.,              )
                                     )
            *Petitioner*,            )
                                     )
        v.                           )        C.A. No. 06-01930 (ESH)
                                     )
General JAMES T. CONWAY,             )
                                     )
            *Respondent*.            )        Judge Huvelle


TRAVERSE TO RESPONDENT'S REPLY


Of Counsel:

Brent C. Harvey

Eugene R. Fidell (112003)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, D.C. 20036
(202) 466-8960

*Attorney for Petitioner*

January 16, 2007

Table of Contents

*Page*

Introduction ........................................................................................................ 1

Governing Law.................................................................................................... 4

Argument ............................................................................................................ 5

I.    THE COMMANDANT'S FINDING THAT PETITIONER FAILED
      TO PROVIDE CLEAR AND CONVINCING EVIDENCE THAT HIS
      CLAIMS OF OBJECTION TO WAR IN ANY FORM WERE
      SINCERE AND DEEPLY HELD AND THAT THEY WERE THE
      PRIMARY CONTROLLING FORCE IN HIS LIFE DOES NOT
      HAVE A BASIS IN FACT .............................................................................. 5

      A.    The Chaplain's Interview ............................................................... 7

      B.    The Psychiatrist's Interview ......................................................... 8

      C.    The Hearing Officer's Interview.................................................... 8

      D.    Major Stolzenburg's Endorsement .............................................. 10

      E.    Lieutenant Colonel Nagle's Endorsement ................................... 11

      F.    Major General Odell's Endorsement............................................ 14

      G.    Petitioner's Rebuttal to the Endorsements ................................ 15

      H.    Conscientious Objector Status Screening Board......................... 16

II.   THE COMMANDANT'S ADDITIONAL FINDING THAT THE
      TIMING OF PETITIONER'S REQUEST, COMING AFTER
      NOTIFICATION OF HIS UNIT'S COMBAT MOBILIZATION, WAS
      SIMPLY A MEANS TO AVOID COMBAT DEPLOYMENT DOES
      NOT HAVE A BASIS IN FACT .................................................................... 18

Conclusion.......................................................................................................... 19

Table of Citations

*Page*

Cases:

*Bortree v. Resor*, 445 F.2d 776 (D.C. Cir. 1971) .................................................. 5, 9, 13
*Dickinson v. United States,* 346 U.S. 389 (1953)............................................................. 5
*Estep v. United States,* 327 U.S. 114 (1946)................................................................... 4
*United States ex rel. Barr v. Resor,* 443 F.2d 707 (D.C. Cir. 1971)............................. 4
*United States v. French*, 429 F.2d 391 (9th Cir. 1970) ................................................. 6
*United States v. Newton*, 435 F.2d 671 (9th Cir. 1970) ............................................... 6
*United States v. Seeger*, 380 U.S. 163 (1965).................................... 5, 8, 12, 14, 16, 17
*Welsh v. United States,* 398 U.S. 333 (1970)............................................................... 14
*White v. United States*, 215 F.2d 782 (9th Cir. 1954) .................................................. 9
*Witmer v. United States,* 348 U.S. 375 (1955) ........................................................ 4, 5

Regulations:

32 C.F.R. part 75............................................................................................................. 4
Marine Corps Order 1306.16E ....................................................................... 4, 7, 8, 11

# Glossary

AR ....................................................................................Administrative Record
DSU ....................................................................................Dam Security Unit
LCpl ....................................................................................Lance Corporal
MCO ....................................................................................Marine Corps Order

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN A. ROGOWSKYJ, JR. | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-01930 (ESH) |
| | ) | |
| General JAMES T. CONWAY | ) | |
| | ) | |
| *Respondent.* | ) | Judge Huvelle |

### TRAVERSE TO RESPONDENT'S REPLY

#### *Introduction*

Petitioner, a 22-year-old enlisted member of the Marine Corps, is a conscientious objector to war in any form (1-0 status). AR 27. He applied for a conscientious objector discharge on February 24, 2006. AR 28. Respondent, the Commandant of the Marine Corps ("the Commandant"), relying on the advice of a Conscientious Objector Status Screening Board ("the Board"), denied his application on October 6, 2006. AR 4. On November 2, 2006, petitioner deployed to Iraq, where he currently serves.

Petitioner's objection to war in any form crystallized in August 2005. AR 5, 25. His beliefs are the product of a lifetime of introspection and theological and philosophical study. AR 5-8, 24-26, 35. His faith is "so intrinsically a part of [his] life, that it is seldom discernible as an act of faith, so much as a part of [his] character." AR 6.

Petitioner was born into a Catholic family. AR 24, 35. After attending
Catholic school for less than a year, he told his father that he did not share the
views that were being taught there and asked to return to public school. AR 35.
Though he rejected Catholicism and all of Christianity, he "felt a strong need to find
for [himself] a spiritual view that makes sense and will contribute to better daily
living." AR 24. "With this quest for understanding came the study of philosophy
and world religions, but mostly science." *Id.*

Petitioner "felt obligated to join the Marines" because, to him, "they
exemplified . . . the strong nobly defending the weak." AR 5. However, in August
2005, "the sudden link between taking a human life and terminating one of God's
creations became apparent in an instant." *Id.* He described this "epiphany" in his
application:

> I happen to be a vegetarian, a point worth noting here only insofar as
> it led me to read *Dominion*, in which I first saw the phrase of the
> theologian Jonah Goldberg "human compassion toward animals is an
> obligation of humans, not an entitlement for animals . . . . [W]e have a
> moral duty to respect the animal world as God's handiwork, treating
> animals with 'the mercy of our Maker' . . . " looking back, I see this as a
> fulcrum for the shift in my views since having pondered this point.
> The reason we should not kill is not because the physical victim
> deserves to live, intrinsically, but because certainly we as people with
> free will have the right to a life in which we are not killers. So was
> instilled in me the concept that I refer to here as "spiritual
> accountability," the belief that one's actions today affect their future
> actions and the actions of the world around them all through God's
> will, and that acting with anger or violence, will only perpetuate it and
> damn us to a regretable [sic] fate.
>
> When I realized in Fall of 2005 the concept of spiritual accountability,
> it opened new doors for my exploration of the spiritual world, and at
> last I was able to see that it does not matter how much violence
> threatens us we should not respond in kind, because by contributing to

2

> the total violence of the world we only make it a more violent place;
> maybe not in the short term, but in the greater story of the World. We
> will only see exponential increases in violence unless we stand now to
> stop it.

AR 25.

Initially, petitioner did not think these beliefs would hamper his ability to serve in the military "and that taking a stand could wait." *Id.* However, after great contemplation he realized:

> . . . with each passing month, a deeper feeling of guilt grew in my
> stomach as I realized I had to once again wear the marks of men,
> aligned on the notion that violence will make the world a better place
> as long as it is just, but it cannot be. I see now that I must separate
> from the military with all due haste, or suffer without the forgiveness
> of grace, for defying the truth that I see plainly before me, that
> violence as a means or end cannot be tolerated.

*Id.*

He believes "that supporting any action to willfully take human life will result in anything less than a karmic punishment at the hands of God." AR 5. While the development of these beliefs may be difficult to grasp, his study is very similar to that which a person would undertake to understand traditional religion:

> The hours I have searched for truths that God has lain out in each of
> us may differ from the hours another theologian spends scouring
> scripture for those same clues, obscured by words and translations, but
> they are every bit as grueling, and serenely rewarding.

AR 7. As to the sincerity of his beliefs he states, "The continual search for one's own spiritual path is among the greatest daily exercises of faith I hold dear." AR 8.

These deeply held beliefs compelled petitioner to file an application for separation from the Marine Corps on the basis of conscientious objection to war in

3

any form. The Commandant incorporated the Board's two findings in denying the
application:

> The Conscientious Objector Status Screening Board which heard this
> case unanimously decided that Lance Corporal Rogowskyj failed to
> provide clear and convincing evidence that his claims of objection to
> war in any form were sincere and deeply held and that they were the
> primary controlling force in his life. Further, the board believed that
> the timing of Lance Corporal Rogowskyj's request, coming after
> notification of his unit's combat mobilization, was simply a means to
> avoid combat deployment to Iraq.

AR 4. The findings cited in support of the denial do not have a basis in fact. The
writ of habeas corpus should therefore be granted.

### Governing Law

In-service conscientious objector applications are governed be 32 C.F.R. part
75. Marine Corps Order ("MCO") 1306.16E, which is based on 32 C.F.R. part 75,
governs such applications within the Marine Corps. It states, "an application for
classification as a conscientious objector may be approved for any individual:

(1) who is conscientiously opposed to participation in war in any form;

(2) where opposition is founded on religious training and belief; and

(3) whose position is sincerely and deeply held." MCO 1306.16E, ¶ 5.b.

In order to prevail, the government has the burden of proving that there was
a basis in fact for its denial of petitioner's application. *Estep v. United States*, 327
U.S. 114, 122 (1946); *United States ex rel. Barr v. Resor*, 443 F.2d 707, 708 (D.C.
Cir. 1971). The reviewing court does not weigh the evidence for itself or ask
whether there is substantial evidence to support the military officials' denial of the
applicant's request for conscientious objector status. *Witmer v. United States*, 348

4

U.S. 375, 380-81 (1955). "The task of the courts . . . is to search the record for some affirmative evidence to support the government's overt or implicit finding that [the petitioner] has not painted a complete or accurate picture of his activities." *Dickinson v. United States,* 346 U.S. 389, 396 (1953). If "the issue is the [petitioner's] sincerity and good faith belief, then there must be some inference of insincerity or bad faith." *Witmer*, 348 U.S. at 382. However, the court cannot infer facts in order to support a recommendation or reason for denial, to do so would "make a farce of [the court's] review" because it "would be fashioning a basis in fact for the [Marine Corps'] decision where there may be none." *Bortree v. Resor*, 445 F.2d 776, 782-83 (D.C. Cir. 1971). "In such an intensely personal area, of course, the claim of the [petitioner] that his belief is an essential part of a religious faith must be given great weight." *United States v. Seeger*, 380 U.S. 163, 184 (1965).

*Argument*

I

THE COMMANDANT'S FINDING THAT PETITIONER
FAILED TO PROVIDE CLEAR AND CONVINCING
EVIDENCE THAT HIS CLAIMS OF OBJECTION
TO WAR IN ANY FORM WERE SINCERE AND
DEEPLY HELD AND THAT THEY WERE THE
PRIMARY CONTROLLING FORCE IN HIS
LIFE DOES NOT HAVE A BASIS IN FACT

On September 29, 2006, the Board convened at Marine Corps Headquarters to review petitioner's request. AR 1-4. The Board record consists of (1) a routing transmittal sheet; (2) a one-page document containing a summary of all command interviews and recommendations, the opinions of the Board, and a recommendation

for the Commandant; (3) a document with the signatures of all members of the board and the Director, Personnel Management Division; and (4) a denial memorandum from the Commandant. *Id.*

Brigadier General R. P. Mills, Director, Personnel Management Division, acting "by direction of the Commandant," signed a prepared memorandum denying petitioner's application. AR 4. The memorandum stated that the Commandant reviewed the application, the opinions and recommendations of the chain of command, and the opinions and recommendations of the Conscientious Objector Status Screening Board. *Id.*

But the Commandant did not provide a rationale to support his findings. AR 2. Without knowing what he found compelling in reaching his decision, petitioner requests the Court to adopt the Ninth Circuit's rule that if a recommendation to the Commandant "contains even one impermissible ground upon which [he] may have relied, the classification is without basis in fact." *United States v. Newton*, 435 F.2d 671, 674 (9th Cir. 1970) (citing *United States v. French*, 429 F.2d 391 (9th Cir. 1970)).

The Commandant gave two reasons for denying petitioner's application. The first reason, "that Lance Corporal Rogowskyj failed to provide convincing evidence that his claims of objection to war in any form were sincere and deeply held and that they were the primary controlling force in his life", is preposterous. There is no basis in fact for this finding.

6

During the application process, petitioner was interviewed by an Air Force chaplain, a Navy psychiatrist, and an appointed Hearing Officer. Additionally, three officers in his command chain wrote endorsements. All of this information was before the Board for consideration.

### A. The Chaplain's Interview

The chaplain was required to inquire about (1) the nature and basis of the petitioner's claim, and (2) the petitioner's sincerity and depth of conviction. MCO 1306.16E, ¶ 6.c. A chaplain interviewed petitioner on March 20, 2006. AR 31. He found, "through a line of questioning," that petitioner "appears sincere in his idea that all forms of killing are wrong" and that "his convictions appear strong." *Id.* When he asked petitioner if he could work in a different department in a non-combat role petitioner told him, "I would still be supporting the killing of human lives." *Id.*

The chaplain found that petitioner did not hold his current beliefs when he first entered the Marine Corps; "they simply have transpired through topical reading over the last several months." *Id.* This finding is supported by the chaplain's comments that petitioner's "strong" and "sincere" beliefs "percolated from his recent investigation into Easter Religions, mysticism, and animism." *Id.* However, to hedge his analysis he left open the possibility that petitioner's beliefs transpired, "*perhaps* through the realization that he may be going to war very soon." *Id.* (emphasis added). He did not state any facts to support or explain why the beliefs may *perhaps* be due to "going to war very soon." *Id.*

7

The chaplain observed that petitioner's beliefs "do not reflect any official [sic] recognized faith group." *Id.*    Similarly he thought that petitioner was "confused theologically and his philosophical thoughts are quite disjointed." The "truth" of petitioner's beliefs are not open to question. *Seeger*, 380 U.S. at 185. What petitioner's beliefs are based on and how comprehensible a person finds them is inconsequential. *Id.* at 184-85.

The salient question is whether petitioner's beliefs are truly held and "in his own scheme of things, religious." *Id.* at 185. The chaplain found petitioner's beliefs to be "sincere" and "strong." AR 31. He did not make a recommendation to the Board. *Id.*

## B. The Psychiatrist's Interview

The psychiatrist was tasked with "indicating the presence or absence of any psychiatric disorder which would warrant treatment or disposition through medical channels, or such personality disorder as to warrant recommendation for appropriate administrative action." MCO 1306.16E, ¶ 6.c. A psychiatrist interviewed petitioner on March 22, 2006. AR 32. The psychiatrist found petitioner was "sincere and credible during the interview when he described his religious convictions." *Id.* No recommendation was made to the Board. *Id.*

## C. The Hearing Officer's Interview

On April 10, 2006, a command-appointed Hearing Officer interviewed petitioner for three hours. AR 18. He "spent a considerable amount of time probing Lance Corporal Rogowskyj's personal, political, and spiritual beliefs" and found

8

them "sincere, thorough and well formulated." AR 20. He further found that petitioner's testimony "merely begins to scratch the surface as to the depth this young Marine provided [ ] about his religious doctrine and beliefs, and how it has affected him to seek separation from the military." *Id.* Based on his thorough inquiry, with the benefit of demeanor evidence, and despite any personal reservation he may have had, the Hearing Officer recommended that the petitioner be "processed immediately for administrative separation from the U.S. Marine Corps Reserve since his perceived personal and spiritual beliefs would prevent him from effectively discharging his duties . . . ." AR 21. Petitioner's demeanor as assessed by the Hearing Officer, chaplain, and psychiatrist is entitled to great weight. As the Ninth Circuit long ago observed:

> Probing a man's conscience is, at best, a speculative venture. No one, not even his closest friends and associates, can testify to a certainty as to what he believes and feels. These, at most, can only express their opinions as to his sincerity. The best evidence on this question may well be, not the manS [sic] statements or those of other witnesses, but his credibility and demeanor in a personal appearance before the fact-finding agency.

*White v. United States*, 215 F.2d 782, 786 (9th Cir. 1954), *cert. denied*, 348 U.S. 970 (1955).

The Hearing Officer remarked that petitioner's testimony "at times verged off into strange and subjective tangents that seemed to circumvent direct questioning by incorporating textbook philosophical and spiritual rhetoric." AR 20. But "many sincere young men use language derived from their reading and from their moral and spiritual advisors to express their beliefs, and in so doing may give the

9

impression that their thoughts are not their own." *Bortree*, 445 F.2d at 783. This observation was obviously not found to be significant as it did not prevent the Hearing Officer from finding petitioner sincere in his beliefs. AR 20-21.

### D. Major Stolzenburg's Endorsement

Major Stolzenburg, Commanding Officer of Company B, 4th Light Armored Reconnaissance Battalion, concurred "with the investigation [sic] finding that Lance Corporal Rogowskyj is a conscientious objector by reason of the development of his spiritual beliefs." AR 11. Oddly, however, he stated, "It is my intent that he serve the company in the capacity of Supply Clerk, a non-combatant billet." *Id.* He further stated, "Lance Corporal Rogowskyj has made a commitment by signing an enlistment contract that can be satisfied by deployment with [Dam Security Unit]-3[1]." *Id.* Major Stolzenburg's intent, which was clearly founded on petitioner's enlistment contract, was an improper basis in fact for denial of petitioner's application.

Respondent argues that Major Stolzenburg's decision was due to petitioner stating that he would be able to perform the supply clerk duties without contravening his belief system. In the military, order and discipline are paramount. Junior enlisted Marines do not question their commanders. Major Stolzenburg

---

[1] Dam Security Unit ("DSU") operations are incompatible with conscientious objection. The DSU patrols dam site hydroelectric plants along the Tigris and Euphrates rivers and Lake Qadisiyah in Iraq. Pet. Ex. 11. The forty-foot-long patrol boats "mount two M240G machine guns forward and either a .50 caliber machine gun at the rear, or a Mark 19 grenade launcher." Pet. Ex. 12. They are also equipped to mount an electric powered machine gun. *Id.* Any member of this unit could be required to pick up a weapon to engage hostile forces.

asked petitioner to state with particularity how supplying Marines was in any way worse than support he would be asked to provide in any other duty assignment. AR 5. On the spot, petitioner did not provide such an explanation. *Id.* He had already told the chaplain that if he were moved into a non-combative position he "would still be supporting the murder of human lives." AR 31.

Major Stolzenburg believed petitioner was a conscientious objector with firmly held beliefs. AR 11. However, in what amounts to an impermissible compromise verdict, he tried to circumvent the application process by moving petitioner into a supply clerk billet. He did not provide a basis in fact to deny petitioner's application.

### E. Lieutenant Colonel Nagle's Endorsement

On June 28, 2006, Lieutenant Colonel W. S. Nagle, Commanding Officer of the 4th Light Armored Reconnaissance Battalion, endorsed the Hearing Officer's findings and recommended denial of petitioner's application. AR 13-14. He found petitioner's request "unconvincing, falling short of the requirements of [MCO 1306.16E] to grant conscientious objector status and *be excused from the contract he voluntarily entered and has not yet fulfilled.*" AR 13 (emphasis added).

He doubted petitioner's beliefs are sincerely and deeply held because, "Besides this application, LCpl Rogowsky's [sic] most tangible evidence of the outcomes of his belief is that he now volunteers at a homeless shelter, has become a vegetarian, and intends to lobby for an expansion of conscientious objector rights." *Id.* Colonel Nagle's rationale is itself unconvincing.

His conclusions ignore the extensive record of facts presented by petitioner that illustrate the formulation and foundation of his beliefs. His endorsement recommendation contradicts his own, personal findings: (a) "LCpl Rogowskyj's general demeanor and pattern of conduct is consistent with his asserted beliefs," and (b) "Concur with the inspecting [sic] officer that his beliefs seem sincere and thorough, and that his expression of them involves substantial philosophical and spiritual rhetoric." AR 14.    Additionally, Colonel Nagle's conclusion was diametrically opposite to that of the Hearing Officer, chaplain, and psychologist, who extensively examined petitioner in person and were in the best position to make a credibility assessment.

According to Colonel Nagle, "LCpl Rogowskyj's application is based on non-traditional religious/moral/philosophical discovery. His statements are not convincing that his activity was comparable in rigor and dedication to the process by which traditional religious convictions are formulated." *Id.* While some people dedicate great time and effort reading and studying to fully understand her or his religion, others develop "traditional religious convictions" from birth as a learned behavior from their parents or social interactions. Petitioner may not be ready to graduate from seminary to instruct others in his beliefs, but he certainly sufficiently described his dedication to the development of "a spiritual view that makes sense." AR 24-25. His application shows the depth and sincerity with which he holds these beliefs.

The "truth" of petitioner's beliefs is not open to question. *Seeger*, 380 U.S. at 185. Perhaps the brief telephone conversation Colonel Nagle had with petitioner was not sufficient for him to fully understand the beliefs that had developed over many years. Conscientious objector cases are difficult "because the ultimate fact in question is a subjective belief of which there is very little objective evidence." *Bortree*, 445 F.2d at 781. However, contrary to Colonel Nagle's contention, there is significant objective evidence of petitioner's deeply held beliefs.

Regina B. Rogowskyj[2], petitioner's wife, John Rogowskyj, Sr., petitioner's father, and Joshua Wood, petitioner's friend, each prepared a statement that was included in petitioner's application. AR 34, 35. Mr. Rogowskyj, Sr.'s statement shows the lifelong evolution of petitioner's beliefs. AR 35. Early in life, petitioner told his father that he did not share the views that were being taught in the Catholic school he attended. *Id.* Mr. Wood's statement describes how petitioner, in the summer and fall of 2005, discussed how his beliefs about war and violence had changed. AR 34. These statements show the logical development of petitioner's beliefs from the questioning of traditional religious beliefs when he was younger to the crystallization of his objection to war in any form in 2005. AR 34, 35. More importantly, these statements show the sincerity of petitioner's beliefs. *Id.*

---

[2] Petitioner submitted a statement from his wife as a part of his conscientious objector application.    The statement was marked as Enclosure (10) in the investigating officer's report and is reproduced at Pet. Ex. 3.    This statement apparently inadvertently omitted from the administrative record.  Enclosure (9) to the investigating officer's report appears at AR 35.    The record then skips to Enclosure (11) at AR 36.

Colonel Nagle's endorsement did not provide a basis in fact to deny petitioner's application.

### F. Major General Odell's Endorsement

On August 21, 2006, Major General D. V. Odell, Jr., Commanding General of the 4th Marine Division, recommended denial of petitioner's request because "[h]e is confused theologically and does not reflect any officially recognized faith group." AR 12. General Odell's rationale is not that he does not believe that petitioner's beliefs are sincerely held. Rather, it is that they do not comport with General Odell's personal concept of what constitutes an accepted religion. This defect is fatal to the agency's denial of the application.

"Local boards and courts . . . are not free to reject beliefs because they consider them 'incomprehensible.' Their task is to decide whether the beliefs professed . . . are sincerely held and whether they are, in his own scheme of things, religious." *Seeger*, 380 U.S. at 184-85. "The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition." *Id.* at 176. "[T]hese sincere and meaningful beliefs that prompt the registrant's objection to all wars need not be confined in either source or content to traditional or parochial concepts of religion." *Welsh v. United States*, 398 U.S. 333, 339 (1970). What is required is "that this opposition to war stem from the registrant's moral, ethical, or religious beliefs about what is right

and wrong and that these beliefs be held with the strength of traditional religious convictions." *Id.* at 340.

A citizen can be confused theologically[3] and still qualify as a conscientious objector. He does not have to know the meaning of life. Petitioner's firmly held objection to war which was developed after years of self-study is all that is required. General Odell in effect required petitioner to reflect the tenets of an "officially recognized faith group" in order for the application to succeed. There is no such requirement. This endorsement therefore does not enjoy a basis in fact.

### G. Petitioner's Rebuttal to the Endorsements

On August 30, 2006, petitioner submitted a rebuttal to the chain of command's endorsements. AR 5-8. He stated that his beliefs crystallized in August 2005. AR 5. His faith "is something that is so intrinsically a part of [his] life, that it is seldom discernable as an act of faith, so much as a part of my character." AR 6. " . . . [M]y faith has a strong impact on how I lead my life." *Id.* Petitioner recognized, "to a degree the apparent confusion that may come about when I attempt to describe my beliefs." AR 7. "Having no formal religious education to speak of, the various words familiar to me to describe my religious experience come from a variety of sources, and do not, I feel, explain my beliefs completely." *Id.* Thus, he tried to elaborate in his rebuttal, "Years of self-inquiry and self-discovery had lead me to this point, and in a flash I realized that I had missed one of the most

---

[3] The history of religion is rife with examples of one faith group viewing another's tenets as the product of confusion. Sectarian hostility in contemporary Iraq provides a tragic but irrefutable example.

15

fundamental points to a fulfilling relationship with the spiritual world, forgiveness for my fellow man." AR 6.    He also clarified the concerns of the chaplain and his command chain.  AR 7-8.  Mr. Justice Clark recognized in *Seeger* the difficulty posed by explaining one's beliefs: "Few would quarrel, we think, with the proposition that in no field of human endeavor has the tool of language proved so inadequate in the communication of ideas as it has in dealing with the fundamental questions of man's predicament in life, in death or in final judgment and retribution." *Seeger*, 380 U.S. at 174.

On August 26, 2006, Corporal Thomas Hernandez wrote a letter that was submitted as a part of petitioner's rebuttal.  AR 9-11.  Corporal Hernandez is a noncommissioned officer serving in the same platoon as petitioner.  AR 9.  Corporal Hernandez stated that he believed petitioner "has a sincere and moral objection to war, killing and violence under all circumstances." *Id.*  Corporal Hernandez further stated that petitioner "has maintained these viewpoints ever since the beginning of our relationship, and at no point have I ever noticed him second-guess himself or take actions that would conflict with his values." *Id.*

Petitioner's rebuttal was fully consistent with his statements to the Hearing Officer and chaplain.  His application expressed a sincere and deeply held objection to war in any form.

### H.  Conscientious Objector Status Screening Board

The Board record contains critical errors indicating improper grounds were relied upon to deny petitioner's application.    The summary of the chaplain's

16

interview states that he recommended that petitioner not be granted conscientious objector status. AR 2. The chaplain made no recommendation as to either approval or denial of the application. Additionally, the second reason given for denial of petitioner's application states, erroneously, that petitioner filed his application after notification of his unit's combat mobilization. AR 1-2. We address this incorrect assertion in Point II *infra*.

* * *

Petitioner was thoroughly questioned, in person, by a command appointed Hearing Officer, a chaplain, and a psychiatrist. His explanation and demeanor proved to each the depth and sincerity of his beliefs. AR 17-21. The Hearing Officer recommended approval of his application. AR 21. While the Hearing Officer, the chaplain, Colonel Nagle, and General Odell may not have fully understood petitioner's beliefs, that is not a basis in fact to deny his petition. *See Seeger*, 380 U.S. at 184-85 ("Local boards and courts . . . are not free to reject beliefs because they consider them 'incomprehensible'"). Often many years of study are required before the beliefs of most religions are understood. The pertinent concepts may be elusive or hard to verbalize, particularly by a person whose training is as a Marine rather than as a seminarian. Be that as it may, through his in-depth discussions, petitioner showed his beliefs to be sincerely and deeply held through the study of theological and philosophical principles over the course of his life. The record contains no basis in fact to support a finding that he was not sincere, that his views

17

were not deeply held, or that his views are not the primary, controlling force in his life.

II

THE COMMANDANT'S ADDITIONAL FINDING THAT
THE TIMING OF PETITIONER'S REQUEST, COMING
AFTER NOTIFICATION OF HIS UNIT'S COMBAT
MOBILIZATION, WAS SIMPLY A MEANS TO
AVOID COMBAT DEPLOYMENT DOES NOT
HAVE A BASIS IN FACT

The Marine Corps' alternative finding that petitioner filed his application after notification of his unit's combat mobilization is simply erroneous as a factual matter. He submitted his application on February 24, 2006, a month before he was notified that his unit would be deployed to Iraq. AR 28, Pet. Ex. 8. This directly refutes this alternative basis for the Boards recommendation for denial.

It is unclear from the record how the Board came to such a conclusion. Colonel Nagle stated, "The timing of his development of beliefs and submission of application is suspiciously parallel with the unit's mobilization warning and notification; however *there is nothing concrete to indicate that this is anything other than coincidental*." AR 14 (emphasis added). This was pure speculation. He conceded that there was nothing concrete to suggest it was anything other than pure coincidence. The chaplain stated that petitioner's beliefs transpired, "*perhaps through the realization that he may be going to war very soon.*" AR 31 (emphasis added). As stated previously, he did not state any facts to support or explain why the beliefs may *perhaps* be due to "going to war very soon." *Id.*

18

The claim that petitioner's application was simply a means to avoid combat has no basis in fact to support this second reason for denial.

*Conclusion*

There is no basis in fact for a finding of insincerity. Petitioner's demeanor and answers revealed his deeply held beliefs to the Hearing Officer, the chaplain, and the psychiatrist. He provided statements from four individuals to support his application. The personal interviews by the Hearing Officer, chaplain, and psychologist reveal nothing that is mechanical or rehearsed about petitioner's expression of his beliefs. In the absence of specific instances of dissembling or evasion, conclusory opinions such as those present here cannot serve as a basis in fact for a finding of insincerity.

Petitioner fully described the maturation of his beliefs. He did not become a conscientious objector either on a whim or to avoid hazardous duty. He is in Iraq now. His beliefs developed through years of study. The specificity and consistency in which he described his beliefs show how deeply they are held. They are the guiding factors in how he lives his life.

Petitioner submitted his application a month before he was notified he would be mobilized to go to Iraq. There is no basis for deeming him insincere from this perspective.

Petitioner showed he is a conscientious objector to war in any form (1-0 status). The Marine Corps denied his application without a basis in fact.

For the foregoing reasons and those previously stated, the petition should be granted. A proposed order is submitted herewith.

Respectfully submitted,

*Eugene R Fidell*

Of Counsel:

Brent C. Harvey

Eugene R. Fidell (112003)
Feldesman Tucker Leifer Fidell LLP
2001 L Street, N.W.
Second Floor
Washington, D.C. 20036
(202) 466-8960

*Attorney for Petitioner*

January 16, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN A. ROGOWSKYJ, JR.,            )
                                   )
            *Petitioner,*          )
                                   )
      v.                           )      C.A. No. 06-01930 (ESH)
                                   )
General JAMES T. CONWAY,           )
                                   )
            *Respondent.*          )


## ORDER

On consideration of the petition for a writ of habeas corpus, respondent's opposition thereto, petitioner's traverse, and the entire record, it is, by the Court, this ____ day of _____, 2007,

ORDERED that that the petition be, and the same hereby is, GRANTED. Respondent shall discharge petitioner as a conscientious objector (1-0 status) forthwith.


United States District Judge